## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| KATERRA INC., *et al.*,[1] | ) Case No. 21-31861 (DRJ) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR
## ENTRY OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
## TO OPERATE THEIR CASH MANAGEMENT SYSTEM
## AND MAINTAIN EXISTING BANK ACCOUNTS, (B) MAINTAIN
## EXISTING BOOKS AND RECORDS, AND (C) CONTINUE TO PERFORM
## INTERCOMPANY TRANSACTIONS AND (II) GRANTING RELATED RELIEF

---

**Emergency relief has been requested. A hearing will be conducted on this matter on June 7, 2021, at 3:30 p.m. (prevailing Central Time), in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002. You may participate in the hearing either in person or via audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691.**

**You may view video via GoToMeeting. The Court recommends that you download the free GoToMeeting application to use GoToMeeting. Enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones' home page on the Southern District of Texas website in order to connect to the hearing. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. You can make your electronic appearance on the Southern District of Texas website, selecting "Bankruptcy Court" from the top menu. Select "Judges' Procedures" then "View Home Page" for Judge Jones. Under "Electronic Appearance," select "Click here to submit Electronic Appearance." Select the case name, complete the required fields, and then click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than June 7, 2021.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto, respectively, authorizing the Debtors to:  (a) operate their cash management system, as described herein and as illustrated on **Exhibit A** attached hereto, and maintain their existing bank accounts, including honoring certain prepetition obligations related thereto; (b) continue intercompany transactions and funding consistent with the Debtors' historical practices, subject to the terms described herein; and (c) granting related relief.

2.      In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The bases for the relief requested herein are sections 105, 345, 362, 363, and 553 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

6.     Katerra Inc., together with its Debtor and non-Debtor subsidiaries ("Katerra"), is a technology-driven construction company that develops, manufactures, and markets products and services in the commercial and residential construction spaces.  Katerra delivers a comprehensive suite of products and services for its clients through a distinct model that combines end-to-end integration with significant investment in technological and design innovation.  Katerra offers services to its clients through three distinct offerings:  (a) end-to-end new build; (b) construction services; and (c) renovations.  Katerra has approximately 6,400 employees who are primarily located in nine countries.  In the year ending 2020, Katerra's operations generated revenue of approximately $1.75 billion.

7.     On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Marc Liebman in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] and the *Declaration of Matthew R. Niemann in Support of (A) DIP Financing and (B) All First Day Relief* filed contemporaneously with this Motion and incorporated by reference herein.  As described in more detail in the First Day Declaration, the Debtors commenced these chapter 11 cases in the face of a

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in this Motion or the First Day Declaration, as applicable.

liquidity crisis and with the goal of facilitating a marketing and sale process for their assets to maximize value and creditor recoveries.

8.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Cash Management System

### I.      Overview.

9.      In the ordinary course of business, the Debtors maintain an integrated, centralized cash management system (the "Cash Management System") comparable to the centralized cash management systems used by similarly situated companies to manage the cash of operating units in a cost-effective, efficient manner.  The Debtors use the Cash Management System in the ordinary course of business to collect, transfer, and disburse funds generated from operations and to facilitate cash monitoring, forecasting, and reporting.  The Cash Management System allows the Debtors to control funds, ensure cash availability for each operating entity, and reduce administrative costs by facilitating the movement of funds among multiple entities.  The Debtors' treasury department maintains daily oversight over the Cash Management System and implements cash management controls for entering, processing, and releasing funds, including in connection with Intercompany Transactions (as defined below).

10.      Given the economic and operational scale of the Debtors' businesses, any disruption to the Cash Management System would have an immediate and significant adverse effect on the Debtors' businesses and operations to the detriment of their estates and numerous

stakeholders.  Accordingly, to minimize the disruption caused by these chapter 11 cases and to maximize the value of the Debtors' estates, the Debtors request authority to continue to use their existing Cash Management System during the pendency of these chapter 11 cases, subject to the terms described herein.

## II.     The Bank Accounts.

11.     The Debtors' Cash Management System is comprised of 44 bank accounts (each, a "Bank Account" and, collectively, the "Bank Accounts"), each of which is identified on **Exhibit B** attached hereto.  The Debtors' Bank Accounts are held with seven banks (such banks, collectively, the "Cash Management Banks").  Funds are transferred between Debtor Bank Accounts in the ordinary course of business to satisfy accounts payable, including taxes, employee payroll, and other operational expenses.

12.     The following Bank Accounts are held by Debtor entities:

- 13 Bank Accounts owned by Katerra Construction LLC;

- 12 Bank Accounts owned by Katerra Inc. (Delaware);

- 6 Bank Accounts owned by Dangoo Electronics (USA) Co., Ltd.;

- 5 Bank Accounts owned by Katerra Architecture LLC;

- 4 Bank Accounts owned by Skyview Concrete LLC;

- 1 Bank Account owned by Katerra Inc. (Cayman);

- 1 Bank Account owned by Lord, Aeck & Sargent, Inc.; and

- 2 Bank Accounts owned by UEB Builders, Inc.

13.     The Bank Accounts generally fall into one of a number of categories, each of which is briefly described in the following table:[3]

---

[3]     These descriptions of Bank Account types are for illustrative purposes only.  A single Bank Account may fall into more than one of the categories described above.

| Accounts | Description of Accounts |
|---|---|
| **Concentration Accounts**<br><br>Wells Fargo<br>x5536<br>x1068<br>x1010 | The Debtors currently maintain three Bank Accounts at Wells Fargo Bank, N.A. ("Wells Fargo") that serve as concentration accounts for the Debtors' customer receipts (collectively, the "Concentration Accounts"). Cash moves throughout the Cash Management System into the Concentration Accounts. Debtor Katerra Inc. (Delaware) maintains the main Concentration Account ending in 5536 (the "Delaware Concentration Account"). The other Concentration Accounts are maintained by Debtors Katerra Construction LLC and Katerra Architecture LLC. |
| **Cayman Account**<br><br>Wells Fargo<br>x5544 | The Debtors currently maintain one account at Wells Fargo that has historically received distributions from SB Investment Advisors (UK) Limited (the "Cayman Account"). Funds held in the Cayman Account are transferred into the Delaware Concentration Account as needed to fund the Debtors' operations. |
| **Collection Accounts** | At almost every business unit, the Debtors maintain Bank Accounts that collect and hold the Debtors' receivables from operations (the "Collection Accounts"). Typically, revenue collected from customer payments in the Collection Accounts is automatically swept into the Concentration Accounts on a daily basis. Revenue held in the Collection Account maintained by Debtor UEB Builders, Inc. is manually deposited into Concentration Accounts on a daily basis. |
| **Accounts Payable** | At almost every business unit, the Debtors maintain Bank Accounts that disburse funds related to the Debtors' operations, including via electronic transactions, wire, and check, on account of operating expenses, materials, supplies, subcontractor payments, taxes, general corporate overhead expenses, and bank fees and expenses. |
| **Payroll Account**<br><br>Wells Fargo<br>x0847 | The Debtors maintain a Bank Account that funds payroll expenses for the Debtors' employees (the "Payroll Account"). |
| **Insurance Benefits Account**<br><br>Wells Fargo<br>x4459 | The Debtors maintain one Bank Account that funds claims associated with the Debtors' health benefits through Collective Health. |

## III.   Bank Fees.

14.    The Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System ("Bank Fees"). The majority of the Bank Fees are due and paid to the Cash Management Banks on a monthly basis and any meaningful fluctuations are determined by the wire activity of the month prior. Other Bank Fees are charged per transaction

at the time the transaction takes place.  While these fees fluctuate month to month, on average the Debtors pay approximately $15,000 to $20,000 per month in Bank Fees.  As of the Petition Date, the Debtors estimate they owe approximately $20,000 in Bank Fees to the Cash Management Banks, all of which will come due and payable within the first twenty-one days of the Debtors' chapter 11 cases.  Accordingly, the Debtors seek authority to continue paying Bank Fees, including any Bank Fees that are owed as of the Petition Date, in the ordinary course on a postpetition basis, consistent with historical practices.

**IV.    Fuel Cards.**

15.    As part of the Cash Management System, the Debtors provide certain employees with credit cards to cover expenses incurred in the ordinary course of business in connection with their employment.  Specifically, the Debtors have historically maintained a handful of fuel cards (collectively, the "Fuel Cards") that are legacy cards from previous acquisitions.  The Fuel Cards are typically used by employees for fuel costs incurred while working on certain projects.  The Fuel Cards accrue a de minimis amount each month.  Such expenses are billed directly to the Debtors and do not pass through the applicable employee's personal financial account.

16.    The Fuel Cards are an integral part of the Debtors' cash management and account functions.  The ability of the Debtors to use the Fuel Cards are essential to the continued operation of the Debtors' business, corporate administration thereof, and related-travel obligations. Accordingly, the Debtors' inability to maintain the Fuel Cards would result in unnecessary hardship on the continued operation of the Debtors' business during this critical juncture.

17.    Out an abundance of caution, the Debtors seek authorization to continue honoring obligations under the Fuel Cards on a postpetition basis in the ordinary course of business consistent with prepetition practices.  For the avoidance of doubt, the Debtors do not seek authority to pay any prepetition amounts owed under the Fuel Cards.

## V.      Compliance with the U.S. Trustee Guidelines and the Bankruptcy Code.

### A.  U.S. Trustee Authorized Depositaries.

18.     The *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee").  Three of the Cash Management Banks, including Bank of America, N.A., Citibank, N.A., and Wells Fargo, where the Debtors maintain 38 of their Bank Accounts—have branches that are authorized depositories under the U.S. Trustee Guidelines, while the remaining Cash Management Banks and branches—at which the Debtors maintain six of the Bank Accounts[4]—do not.

19.     The Cash Management System holds funds at seven different banks.  The vast majority of the Bank Accounts are maintained at highly rated, global financial institutions that are widely recognized as well-capitalized and financially stable.  The principal basis for the exclusion of certain of these financial institutions from the U.S. Trustee Guidelines is location, not financial soundness or stability.  The Debtors believe that these financial institutions are well-positioned to perform the depository and cash management functions during the chapter 11 cases.  Given the global scope of the Debtors' operations and cash management requirements, it is not feasible to consolidate all cash activities to the narrow group of financial institutions approved in the U.S. Trustee Guidelines.  The Cash Management System is complex and critical to the ongoing stability of the Debtors' businesses and transition into chapter 11.  Requiring the Debtors to transfer any of

---

[4]    These Cash Management Banks include Bridge Bank, N.A., HSBC Holdings PLC, Institutional Cash Distributors LLC (ICD), and TD Bank, N.A.

the above-described Bank Accounts to a designated authorized depository would place a needless and excessive administrative burden on the Debtors and impose significant, value destructive costs to the Debtors' estates.  Accordingly, cause exists to allow the Debtors to continue using the existing Bank Accounts consistent with historical practices.  The Debtors will work in good faith with the U.S. Trustee to address any concerns regarding the continued use of these accounts on a postpetition basis.

**B.  Business Forms and Books and Records.**

20.     As part of the Cash Management System, the Debtors use a variety of preprinted business forms (including checks, letterhead, correspondence forms, invoices, and other business forms) in the ordinary course of business (collectively, the "Business Forms").  The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records").  To avoid a significant disruption to their ongoing projects and Cash Management System and to avoid unnecessary expense, the Debtors request authorization, subject to the limitations set forth in the Interim Order and Final Order, to continue using all of the Business Forms and Books and Records in use immediately before the Petition Date, including with respect to the Debtors' ability to update authorized signatories and services, as needed—without reference to the Debtors' status as chapter 11 debtors in possession—rather than requiring the Debtors to incur the expense and delay of ordering new Business Forms and creating new Books and Records.

**VI.    Subcontractor Payments.**

21.     In the ordinary course of business, the Debtors engage subcontractors to provide goods and services necessary for completion of the Debtors' ongoing construction projects.  In turn, the Debtors pay the subcontractors with funds received from the project owners (the "Subcontractor Payments").  Subcontractor Payments cannot be made unless and until the

customer pays the Debtors.  When the Debtors receive the Subcontractor Payments, until those funds are paid to the applicable subcontractor, the Debtors hold those funds in constructive trust, either pursuant to the contract or statute.[5]  Consequently, the Subcontractor Payments are not property of the Debtors' estates, and the Debtors therefore believe they are allowed to make the Subcontractor Payments in the ordinary course.  However, out of an abundance of caution, the Debtors seek authority to continue Subcontractor Payments postpetition consistent with prepetition practices.

22.     On certain of the Debtors' projects, the Debtors have joint checking agreements that allow for funds to enter certain bank accounts that are not controlled by the Debtors (the "Joint Checking Agreements").  As work related to the projects is completed, both the project owners and the Debtors deposit funds on account of their respective obligations.  Such funds are then released to the subcontractors, the Debtors, and other counterparties working on the relevant project.  The Debtors seek authority to continue operating under these Joint Checking Agreements on a postpetition basis.

**VII.    The Debtors' Intercompany Transactions.**

23.     In the ordinary course of business, the Debtors maintain routine business relationships with other Debtor entities (the transactions pursuant to such relationships, the "Intercompany Transactions"), which result in intercompany receivables and payables owing between Debtors (collectively, the "Intercompany Claims").  Intercompany Transactions span a number of categories, including:  (a) intercompany cash sweeps, including sweeps to and from the Concentration Accounts; (b) intercompany funding, including intercompany equity loans, equity contributions, JV contributions, and dividends; (c) corporate allocations, including general

---

[5]     *See e.g.* Ariz. Rev. Stat. § 33-1005 (2000); Colo. Rev. Stat. § 38-22-127(1).

insurance, workers compensation, IT services, and rent; (d) payroll, related benefits, and credit cards; (e) transfer pricing agreements; and (f) trade agreements.

24.     In connection with the daily operation of the Cash Management System, as funds are swept and disbursed throughout the Cash Management System and as business is transacted between the Debtors, Intercompany Claims may be owing by one Debtor to another Debtor. Intercompany Claims are not regularly settled in cash but rather are reflected as journal entry receivables and payables, as applicable, in the respective Debtors' accounting system.   The Debtors track all fund transfers through their accounting system and can ascertain, trace, and account for all Intercompany Transactions.   If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations would be disrupted unnecessarily to the detriment of the Debtors, their creditors, and other stakeholders.[6]

25.     The Intercompany Transactions are an essential component of the Debtors' complex global operations, and they are crucial for the Debtors' ability to process payroll and payments to third-party vendors, provide enterprise-wide management and support services, and otherwise facilitate operations on a daily basis.   The Debtors will be able to closely monitor and record the Intercompany Transactions with the Cash Management System.   For the avoidance of doubt, the Debtors are not seeking relief with respect to any Intercompany Transactions between a Debtor and non-Debtor except in compliance with any orders authorizing debtor-in-possession financing.

---

[6]     This Motion provides an overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this Motion.  To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations.

26.     The Debtors would be unduly burdened both financially and logistically if the Debtors were required to halt Intercompany Transactions or otherwise make material changes to the Cash Management System.  If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations would be disrupted unnecessarily to the detriment of the Debtors, their creditors, and other stakeholders.  The Debtors seek the authority— and, to the extent applicable, relief from the automatic stay—to continue the Intercompany Transactions in the ordinary course of business consistent with past practice.

## Basis for Relief

**I.     The Court Should Approve the Debtors' Continued Use of the Cash Management System as Essential to the Debtors' Operations and Restructuring Efforts.**

27.     The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for payment of taxes including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor-in-possession status of the chapter 11 debtor, including checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement.  *See Region 7 Guidelines for Debtors-in-Possession*.  These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.  Considering, however, the breadth and complexity of the Debtors' international businesses and financial affairs and the sheer volume of collections, disbursements, and movement of funds through the Cash

Management System on a daily basis, enforcement of these provisions of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt, if not cripple, the Debtors' worldwide operations.  Accordingly, the Debtors request that the Court allow them to operate each of the Bank Accounts that comprise the Cash Management System as each was maintained in the ordinary course of business before the Petition Date and as described herein.

28.     Continuation of the Cash Management System, including the Fuel Cards, is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter," *see In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987), and have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys. Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

29.     Here, requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' worldwide operations.  Importantly, the Cash Management System provides the Debtors with the ability to, among other things, quickly assess the location and amount of funds,

which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds.  Disruption of the Cash Management System could have an adverse effect on the Debtors' restructuring efforts, the cost of which would ultimately be borne by the Debtors' creditors and other stakeholders.  By contrast, maintaining the current Cash Management System (including the Fuel Cards) will facilitate the Debtors' smooth transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.  Finally, maintaining the current Cash Management System will allow the Debtors' treasury and accounting employees to focus on their daily responsibilities as opposed to the non-accretive task of reconstructing the Cash Management System.

30.     Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that Debtor entities will not make unauthorized payments on account of prepetition obligations.  In light of such protective measures, maintaining the Cash Management System is in the best interests of their estates and creditors.

**II.    The Court Should Authorize (A) the Debtors to Continue Using Debit, Wire, and ACH Transfers and (B) the Cash Management Banks to Continue Processing Checks, Wire, and ACH Transfers.**

31.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  In particular the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  As discussed above, in the ordinary course of business, the Debtors conduct transactions through wires, ACH transactions, direct deposits, credit, and other similar methods.  If the Debtors' ability to conduct

14

transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts, their ongoing projects may be unnecessarily disrupted, and their estates will incur additional costs.

32.     The Debtors further request that the Court authorize and direct the Cash Management Banks to receive, process, honor, and pay, to the extent funds are available in each applicable Bank Account, any and all checks, electronic funds transfers, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic funds transfers, credit card, or ACH payments are dated prior or subsequent to the Petition Date.  The Debtors also request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition.  Such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.

33.     Considering the breadth and complexity of their international operations, the Debtors need to conduct transactions by debit, electronic fund, ACH payments, and other similar methods.  If the Debtors are denied the opportunity to conduct transactions by debit, credit, electronic funds transfers, ACH payments, or other methods used in the ordinary course of business, the Debtors likely would have difficulty performing on their contracts and the Debtors'

ongoing projects would be disrupted unnecessarily, burdening the Debtors and their creditors with additional costs.

### III.   The Court Should Authorize Payment of Fees and Prepetition Obligations Related to the Bank Accounts.

34.   Courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

35.   Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also In re Equalnet Commc'ns Corp.*, 285 B.R. 368, 269 (Bankr. S.D. Tex. 2000) (noting that courts authorize debtors to pay, outside of a plan, prepetition claims from "business transactions which are at once individually minute but collectively immense and critical to the survival of the business of the debtor.").

36.   Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent

equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See Just for Feet*, 242 B.R. at 825−26.  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *In re CoServ*, 273 B.R. at 497.

37.     These standards are satisfied here because the payment of fees and related prepetition obligations are necessary to maintain the Cash Management System and avoid any disruption in the administration of the Bank Accounts.  The Debtors request that the Court authorize the Debtors to continue to pay the Bank Fees, including any prepetition Bank Fees.  In light of the material benefit of maintaining the Cash Management System in order to avoid unnecessary disruption and costly delay, especially as compared to the relatively modest amount of the Bank Fees, the relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003.

### IV.     The Debtors Should Be Granted Authority to Use Existing Business Forms.

38.     To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use their Business Forms, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors

in possession.  Given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing forms such as letterhead would be an unnecessary additional expense and unduly burdensome.

**V.      The Court Should Authorize the Debtors to Continue Engaging in Postpetition Intercompany Transactions and Grant Administrative Expense Status to Postpetition Intercompany Transactions.**

39.     As part of the Cash Management System, the Intercompany Transactions are made between and among Debtor affiliates in the ordinary course.  Allowing the Debtors to engage in postpetition Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to continue such Intercompany Transactions postpetition. The Debtors will continue to maintain records of Intercompany Transactions, including records of all current intercompany accounts receivables and payables.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and their estates' detriment.  In addition, a number of critical services currently provided to Debtor entities on an intercompany basis would be interrupted.  Continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors.   Accordingly, the Debtors request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order.

40.     The Debtors further request that pursuant to section 503(b)(1) of the Bankruptcy Code, all postpetition payments between or among Debtors on account of an Intercompany Transaction be accorded administrative expense status.  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such

transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

41.    The Debtors request that transfers made by either a Debtor to an affiliate or by an affiliate to a Debtor, pursuant to a postpetition Intercompany Transaction, be deemed a claim against and loan to such affiliate or Debtor, rather than a contribution of capital, except to the extent such postpetition Intercompany Transactions are on account of antecedent debts.  Such relief is necessary to ensure that a particular Debtor's estate will not be required to fund the operations of other Debtors and affiliates without adequate recompense.  For the avoidance of doubt, the relief requested herein with respect to the postpetition Intercompany Transactions and the intercompany balances resulting therefrom shall not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition intercompany balance or the Intercompany Transaction(s) from which such intercompany balance may have arisen.

## VI.    Cause Exists for Waiving the U.S. Trustee Guidelines Regarding Authorized Depositories on an Interim and Final Basis.

42.    The Debtors further seek a waiver of the deposit and investment requirements set forth in section 345 of the Bankruptcy Code, which authorizes deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise."   Additionally, under the U.S. Trustee Guidelines, debtors in

possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more Authorized Depositories.

43.     Courts may waive compliance with the Bankruptcy Code section 345 and the U.S. Trustee Guidelines for "cause."  In evaluating whether "cause" exists, courts have considered a number of factors such as:

    i.      the sophistication of the debtor's business;

    ii.      the size of the debtor's business operations;

    iii.      the amount of the investments involved;

    iv.      the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

    v.      the complexity of the case;

    vi.      the safeguards in place within the debtor's own business for ensuring the safety of the funds;

    vii.      the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

    viii.      the benefit to the debtor;

    ix.      the harm, if any, to the debtor;

    x.      the harm, if any, to the estate; and

    xi.      the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

See In re Serv. Merch. Co., Inc., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

44.     Because the Bank Accounts are vital to the Cash Management System, requiring the Debtors to transfer funds to other banks would be unduly burdensome to the Debtors' operations and potentially cause severe tax consequences to the detriment of the Debtors' estates. In addition, the vast majority of the Bank Accounts are maintained at well-capitalized, highly rated

banks or only hold *de minimis* cash amounts.  Therefore, cause exists to waive the U.S. Trustee Guidelines and allow the Debtors to continue to maintain the Bank Accounts in the ordinary course of business.

### Emergency Consideration

45.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  The failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

46.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

47.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy

law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

48.     The Debtors will provide notice of this Motion to the following parties or their counsel:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) Weil, Gotshal & Manges LLP as counsel to the DIP Lender; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the

Debtors conduct business; (i) Cash Management Banks; (j) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no further notice is required.

The Debtors request that the Court enter the interim and final orders, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
June 7, 2021

/s/ *Christine A. Okike*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                christine.okike@kirkland.com


*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Christine A. Okike*
Christine A. Okike, P.C.

## **Certificate of Service**

I certify that on June 7, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Christine A. Okike*
Christine A. Okike, P.C.

# EXHIBIT A

**Cash Management System Schematic**



## Katerra Inc.
Simplified Cash Management System Schematic

* Katerra Architecture LLC is generally inactive and does not interact with other accounts on a regular basis

## EXHIBIT B

**Bank Accounts**

| Legal Entity | Bank Name | Last 4 Digits of Account Number | Account Type |
|---|---|---|---|
| Dangoo Electronics (USA) Co., Ltd. | Bank of America | 9526 | Accounts Receivable |
| Dangoo Electronics (USA) Co., Ltd. | Bridge Bank | 3909 | Accounts Receivable |
| Katerra Construction LLC | Citibank, N.A. | 6418 | Accounts Receivable |
| Katerra Architecture LLC | Citibank, N.A. | 6426 | Accounts Receivable |
| Skyview Concrete LLC | Citibank, N.A. | 6434 | Accounts Receivable |
| Katerra Inc. (Delaware) | Citibank, N.A. | 6442 | Accounts Receivable |
| Dangoo Electronics (USA) Co., Ltd. | Citibank, N.A. | 5672 | Operating Account |
| Katerra Inc. (Delaware) | Citibank, N.A. | 0187 | Payroll Account |
| Katerra Construction LLC | Citibank, N.A. | 2332 | Accounts Payable |
| Katerra Architecture LLC | Citibank, N.A. | 2367 | Accounts Payable |
| Katerra Inc. (Delaware) | Citibank, N.A. | 2375 | Accounts Payable |
| Skyview Concrete LLC | Citibank, N.A. | 2383 | Accounts Payable |
| Dangoo Electronics (USA) Co., Ltd. | Citibank, N.A. | 0908 | Accounts Receivable |

| Legal Entity | Bank Name | Last 4 Digits of Account Number | Account Type |
|---|---|---|---|
| Katerra Inc. (Delaware) | HSBC Holdings PLC | 1031 | Operating Account |
| Katerra Inc. (Delaware) | HSBC Holdings PLC | 0311 | Business Savings Account |
| Katerra Inc. (Delaware) | Institutional Cash Distributors LLC (ICD) | 1081 | Money Market Fund |
| Katerra Construction LLC | TD Bank, N.A. | 9427 | Checking Account |
| Katerra Construction LLC | TD Bank, N.A. | 3219 | Operating Account |
| Katerra Architecture LLC | Wells Fargo Bank, N.A. | 1010 | Concentration Account |
| Katerra Inc. (Delaware) | Wells Fargo Bank, N.A. | 4459 | Collective Health |
| Katerra Inc. (Delaware) | Wells Fargo Bank, N.A. | 5536 | Concentration Account |
| Katerra Inc. (Cayman) | Wells Fargo Bank, N.A. | 5544 | Holding Account |
| Lord Aeck & Sargent, Inc. | Wells Fargo Bank, N.A. | 0699 | Accounts Payable |
| Katerra Inc. (Delaware) | Wells Fargo Bank, N.A. | 8990 | Accounts Receivable |
| Katerra Inc. (Delaware) | Wells Fargo Bank, N.A. | 9006 | FSA Account |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 8404 | Accounts Receivable |

| Legal Entity | Bank Name | Last 4 Digits of Account Number | Account Type |
|---|---|---|---|
| Katerra Architecture LLC | Wells Fargo Bank, N.A. | 6953 | Accounts Receivable |
| Dangoo Electronics (USA) Co., Ltd. | Wells Fargo Bank, N.A. | 4305 | Accounts Receivable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 1068 | Concentration Account |
| Skyview Concrete LLC | Wells Fargo Bank, N.A. | 5815 | Accounts Receivable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 1733 | Accounts Receivable |
| UEB Builders, Inc. | Wells Fargo Bank, N.A. | 2012 | Accounts Receivable |
| Dangoo Electronics (USA) Co., Ltd. | Wells Fargo Bank, N.A. | 6809 | Accounts Receivable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 2783 | Accounts Receivable |
| Katerra Inc. (Delaware) | Wells Fargo Bank, N.A. | 0847 | Payroll Account |
| Katerra Architecture LLC | Wells Fargo Bank, N.A. | 0862 | Accounts Payable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 0880 | Accounts Payable |
| Katerra Inc. (Delaware) | Wells Fargo Bank, N.A. | 0898 | Accounts Payable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 1104 | Accounts Payable |

| Legal Entity | Bank Name | Last 4 Digits of Account Number | Account Type |
|---|---|---|---|
| Skyview Concrete LLC | Wells Fargo Bank, N.A. | 1108 | Accounts Payable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 1124 | Accounts Payable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 1132 | Accounts Payable |
| UEB Builders, Inc. | Wells Fargo Bank, N.A. | 1015 | Accounts Payable |
| Katerra Construction LLC | Wells Fargo Bank, N.A. | 8727 | Accounts Payable |