**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| KATERRA INC., *et al.*,[1] | Case No. 21-31861 (DRJ) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING
THE DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN
EXISTING BANK ACCOUNTS, (B) MAINTAIN EXISTING BUSINESS
FORMS AND BOOKS AND RECORDS, AND (C) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order (this "Interim Order") authorizing the Debtors to (a) continue to operate their cash management system and maintain their existing bank accounts, including honoring certain prepetition obligations related thereto and (b) continue intercompany transactions and funding consistent with historical practice, as modified herein, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2021, at__:__ _.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2021. In the event no objections to entry of the final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

2.     Subject to the limitations of this Interim Order, the Debtors are authorized, but not directed, to:  (a) continue using the Cash Management System in the ordinary course of business and honor any prepetition obligations related to the use thereof; (b) designate, maintain, close, and continue to use on an interim basis any or all of their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on Exhibit B attached to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, electronic fund transfers, ACH transfers, and other debits or electronic means; (d) treat their prepetition Bank Accounts for all purposes as debtor in possession accounts; and (e) open new debtor-in-possession

Bank Accounts; *provided* that in the case of each of (a) through (e), such action is taken in the ordinary course of business and consistent with prepetition practices; *provided, further,* that, up and until the obligations under the DIP Facility[3] are indefeasibly paid in full, the Debtors may open or close a Bank Account during these chapter 11 cases only with the prior written consent of SB Investment Advisors (UK) Limited (the "DIP Lender"), which consent shall not be unreasonably withheld, conditioned, or delayed.

3.       The Debtors are authorized to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, and maintain and continue using, in their present form, the Books and Records; *provided* that once the Debtors have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor in Possession" as soon as it is reasonably practicable to do so.  To the extent the Debtors print any new checks or use any electronic Business Forms, they will include the designation "Debtor in Possession" and the corresponding bankruptcy number on all such checks within ten (10) days.

4.       If any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have forty-five (45) days from the Petition Date, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an

---

[3]   "DIP Facility" means the proposed postpetition financing under the *Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (C) Modifying the Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief*.

agreement cannot be reached; *provided, further*, that, up and until the obligations under the DIP Facility are indefeasibly paid in full, the Debtors may make changes to the existing Cash Management System under this paragraph only with the prior written consent of the DIP Lender, which consent shall not be unreasonably withheld, conditioned, or delayed.  The Debtors may obtain a further extension of the period referenced above by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

5.      The relief granted in this Interim Order is extended to any new bank account opened by the Debtors subject to the terms of this Interim Order, in the ordinary course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank."

6.      The Debtors are authorized to open new bank accounts so long as (a) any such new account is with one of the Debtors' existing Cash Management Banks or with a bank that is (i) insured with the FDIC or the Federal Savings and Loan Insurance Corporation, (ii) designated as an authorized depository by the U.S. Trustee, and (iii) with a bank that agrees to be bound by the terms of this Interim Order, (b) the Debtors provide notice to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases; *provided* that all such accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Interim Order, be deemed a Bank Account as if it had been listed on Exhibit B attached to the Motion; *provided, further*, that, up and until the obligations under the DIP Facility are indefeasibly paid in full, the Debtors may open new bank accounts under this paragraph only with the prior written consent of the DIP Lender, which consent shall not be unreasonably withheld, conditioned, or delayed.

7.      Nothing contained herein shall prevent the Debtors from closing, with the prior written consent of the DIP Lender, which consent shall not be unreasonably withheld, conditioned, or delayed, up and until the obligations under the DIP Facility are indefeasibly paid in full, any Bank Accounts as they may deem necessary and appropriate, to the extent consistent with any orders of this Court relating thereto, any relevant bank is authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall provide reasonable prior written notice of the closure of any account to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases.

8.      Those certain prepetition deposit, cash management, and treasury services agreements, if any, existing between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Cash Management Bank (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Cash Management Bank agree otherwise in the ordinary course of business consistent with prepetition practices (provided that any such changes are in accordance with the terms of this Interim Order, and are made, up and until the obligations under the DIP Facility are indefeasibly paid in full, with the prior written consent of the DIP Lender, which consent shall not be unreasonably withheld, conditioned, or

delayed), and any other legal rights and remedies afforded to the Cash Management Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

9.     Except as otherwise expressly provided in this Interim Order and only to the extent sufficient funds are available in each applicable Bank Account, all Cash Management Banks at which the Bank Accounts are maintained are authorized to continue to administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with prepetition practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wire transfers, and ACH and other transfers issued, whether before or after the Petition Date, including any transfers drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that the Debtors will instruct the Cash Management Banks as to which checks, drafts, wire, or other transfers (excluding any wire transfers or ACH transactions that the Cash Management Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored.  Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date.  All such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

10.     The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for:  (a) all checks drawn on the Debtors' accounts that are cashed at such Cash Management Bank's counters or

exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' accounts with such Cash Management Bank prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System.

11.     Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire payment or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors any such prepetition payment drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

12.     All banks maintaining any of the Bank Accounts that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.  The Cash Management Banks may rely, without a duty of inquiry, upon the failure of the Debtors to issue a stop payment

order with respect to any item, whether such item is issued prepetition or postpetition, as a direction by the Debtors that such item be paid.

13.     Subject to compliance with the DIP Order, the Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts that are authorized to be paid under an order of the Court.

14.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

15.     Except as otherwise provided in this Interim Order, the Cash Management Banks are authorized to charge, and the Debtors are authorized, but not directed, to pay, honor, or allow prepetition and postpetition Bank Fees, whether such items were deposited prepetition or postpetition, to the Bank Accounts in the ordinary course of business consistent with prepetition practices.  Any such postpetition Bank Fees that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

16.     The Debtors are authorized, but not directed, to continue the Fuel Cards in the ordinary course of business consistent with prepetition practices and pay any postpetition amounts due on account of the Fuel Cards.

17.     The Debtors are authorized, but not directed, to honor prepetition and postpetition Subcontractor Payments in the ordinary course of business consistent with historical practice.

18.     The Debtors are authorized, but not directed, to continue operating the Joint Checking Agreements in the ordinary course of business consistent with historical practice.

19.     The Debtors are authorized, but not directed, to continue Intercompany Transactions, pay Intercompany Claims, and to take any actions related thereto so long as such Intercompany Transactions, the payment of such Intercompany Claims and such other related actions are on the same terms as, and materially consistent with, the Debtors' operation of the business in the ordinary course during the prepetition period.  The Debtors shall maintain accurate, current, and detailed records of all transfers, including Intercompany Transactions and the payment of Intercompany Claims, so that all transactions may be readily ascertained, traced, recorded properly on applicable intercompany accounts, and distinguished between prepetition and postpetition transactions.  The Debtors shall make such records available upon request by the U.S. Trustee, the DIP Lender, or any statutory committee appointed in these chapter 11 cases.

20.     The Debtors shall provide reasonable notice to the U.S. Trustee, counsel to the DIP Lender, and any statutory committee appointed in the chapter 11 cases of material changes to the Cash Management System and procedures.

21.     Pursuant to section 503(b)(1) of the Bankruptcy Code, all postpetition payments on account of an Intercompany Transaction made by a Debtor to another Debtor, shall, in each case, be accorded administrative expense status subject and junior to the carve out and the claims in connection with the debtor-in-possession financing facility and in accordance with the DIP Orders (as defined below).

22.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

23.     This Interim Order permits the use of cash only to the extent authorized under this Court's applicable orders authorizing debtor-in-possession financing, including the Budget (as defined therein) (the "DIP Orders").  In the event of any inconsistency between this Interim Order and the DIP Orders, the DIP Orders shall control.

24.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

25.     Nothing contained in the Motion or this Interim Order, nor any action taken by the Debtors pursuant to this Interim Order, shall be (a) deemed a waiver of the rights of any Debtor or other party-in-interest to dispute the amount of, basis for, validity, or treatment of any Intercompany Claim or the allocation of expenses or other costs between Debtor entities or (b) construed to (i) create or perfect, in favor of any person or entity, any interest in cash of a

Debtor that did not exist as of the Petition Date or (ii) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

26.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27.     As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on each Cash Management Bank.

28.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

30.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Houston, Texas
Dated: _____, 2021

_____
UNITED STATES BANKRUPTCY JUDGE