# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KATERRA INC., *et al.*,[1] | ) | Case No. 21-31861 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER APPROVING CONTINUATION OF THE SURETY BOND PROGRAM

**Emergency relief has been requested. A hearing will be conducted on this matter on June 7, 2021 at 3:30 pm (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested not later than June 7, 2021.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):

## Relief Requested

1.      The Debtors seek entry of an order substantially in the form attached hereto (the "Order") authorizing the Debtors to maintain, renew, and modify their surety bond program—including, but not limited to, the procurement of new sureties—in the ordinary course of business on a postpetition basis and to pay outstanding prepetition amounts related thereto.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 364, and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

5.      Katerra Inc., together with its Debtor and non-Debtor subsidiaries ("Katerra"), is a technology-driven construction company that develops, manufactures, and markets products and services in the commercial and residential construction spaces.  Katerra delivers a comprehensive suite of products and services for its clients through a distinct model that combines end-to-end integration with significant investment in technological and design innovation.  Katerra offers

services to its clients through three distinct offerings:  (a) end-to-end new build; (b) construction services; and (c) renovations.  Katerra has approximately 6,400 employees who are primarily located in nine countries.  In the year ending 2020, Katerra's operations generated revenue of approximately $1.75 billion.

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Marc Liebman in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] and in the *Declaration of Matthew R. Niemann in Support of (A) DIP Financing and (B) All First Day Relief* filed contemporaneously with this Motion and incorporated by reference herein.  As described in more detail in the First Day Declaration, the Debtors commenced these chapter 11 cases in the face of a liquidity crisis and with the goal of facilitating a marketing and sale process for their assets to maximize value and creditor recoveries.

7.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in this Motion or the First Day Declaration, as applicable.

### The Surety Bond Program

8.     In the ordinary course of business, the Debtors are required to provide surety bonds or other forms of credit support (collectively, "Surety Bonds") to certain third parties to secure the payment or performance of certain obligations related to their construction projects (the "Surety Bond Program").   These obligations include, among others, performance and payment bonds, license and permit bonds, and lien release bonds.   Inability to maintain the Surety Bond Program will limit the Debtors' ability to access bonds required to secure work on projects on a go-forward basis and to provide project owners with a guarantee that the Debtors will complete the applicable project.   This, in turn, will impact the Debtors' ability to market and sell their assets.   As of the Petition Date, the Debtors have approximately 157 Surety Bonds outstanding, comprising a principal amount of approximately $677.0 million in aggregate Surety Bond coverage.   The Debtors have posted approximately $9.6 million in cash to collateralize certain of the Surety Bonds.  A schedule of the Surety Bonds currently maintained by the Debtors is attached hereto as Exhibit 1 to the Order and is incorporated herein by reference.[3]

9.     Certain statutes or ordinances require the Debtors to post Surety Bonds to secure these obligations.  Failing to provide, maintain, or timely replace their Surety Bonds may prevent the Debtors from undertaking essential functions related to their operations.   To continue their business operations during this restructuring, the Debtors must provide financial assurance to certain third parties.  This, in turn, requires the Debtors to maintain the existing Surety Bond Program, including paying Surety Premiums (as defined below) as they come due, providing the Sureties (as defined below) with collateral, renewing or potentially acquiring additional bonding

---

[3]     To the extent that the Debtors inadvertently omitted any Surety Bonds from Exhibit 1 to the Order, the Debtors request that any relief granted under this Motion apply to all Surety Bonds, regardless of whether any such Surety Bond is specifically identified on Exhibit 1 to the Order.

capacity as needed in the ordinary course of business, and executing other agreements, as appropriate, in connection with the Surety Bond Program.

10.     The Debtors are also parties to, or may become parties to, certain indemnity agreements that set forth the Sureties' rights to recover from the Debtors (each a "Surety Indemnity Agreement" and collectively, the "Surety Indemnity Agreements").  The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment from an obligee to a surety.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal.  To that end, certain of the Debtors are parties to Surety Indemnity Agreements with each of Crum & Forster Insurance, Liberty Mutual Insurance Company, Everest Reinsurance Company, Zurich American Insurance Company, International Fidelity Insurance Company, Harco National Insurance Company, Capitol Indemnity Corporation, Merchants Bonding Company (Mutual), Old Republic General Insurance Group, One Beacon Surety Group, and Travelers Casualty and Surety Company of America (each a "Surety" and collectively, the "Sureties").  Pursuant to the Surety Indemnity Agreements, the Debtors agree to indemnify each Surety from any loss, cost, or expense that such Surety may incur on account of the issuance of any bonds on behalf of the Debtors.  In addition, the Surety Indemnity Agreements allow the Sureties to request collateral security from the Debtors from time to time.

11.     Historically, the Sureties have provided Surety Bonds for the Debtors.  The Debtors' operations likely would suffer serious consequences if they failed to maintain appropriate Surety Bonds, including a complete forced cessation of certain projects, which are substantial in number.  As of the Petition Date, the Debtors do not believe they are required to post any prepetition amounts on account of additional collateral in connection with the Surety Indemnity Agreements.  Nevertheless, out of an abundance of caution, the Debtors request authorization to

pay any direct and/or indirect prepetition amounts due and owing in connection with the Surety Indemnity Agreements and continue paying amounts, including posting new collateral as required by the Sureties, owed in connection with the Surety Indemnity Agreements as they come due in the ordinary course of business on a postpetition basis.

12.     To continue their ongoing projects, the Debtors must be able to provide financial assurance to government and regulatory agencies, and other third parties.  In turn, the Debtors must be able to maintain the existing Surety Bond Program, including, among other things:  (a) paying the Surety Premiums, Broker Fees, and other related fees as they come due; (b) providing the Sureties with collateral as required; (c) honoring Surety Indemnification Agreements; (d) canceling, renewing, and/or supplementing the Surety Bonds; and (e) executing agreements in connection with the Surety Bond Program.  Failing to continue the Surety Bond Program will prevent the Debtors from complying with their legal obligations, and consequently prevent them from undertaking essential functions related to their operations.

**I.     Surety Premiums.**

13.     The Debtors receive the benefits of the Surety Bonds (*e.g.*, the ability to operate and/or contract with third parties due to such financial assurance) in exchange for the payment of premiums to the Sureties (the "Surety Premiums").  The Surety Premiums generally are determined on an annual basis and are paid by the Debtors when the bonds are issued and annually upon renewal.  For the calendar year 2020, the Surety Premiums totaled approximately $262,000. As of the Petition Date, the Debtors estimate that approximately $173,000 is outstanding and will become payable postpetition on account of Surety Premiums.  To ensure uninterrupted coverage under the Surety Bond Program, the Debtors seek authority to honor any prepetition amounts owed

on account of the Surety Premiums and to pay any Surety Premiums that may arise on a postpetition basis in the ordinary course of business.

**II.     Surety Broker.**

14.     The Debtors obtain Surety Bonds primarily through their broker, Alliant Insurance Services (the "Broker").  The Broker assists the Debtors in obtaining comprehensive Surety Bond coverage for their operations in the most cost-effective manner, negotiating Surety Bond terms, provisions, and premiums, and providing ongoing support throughout the applicable bonding periods.   The Broker collects fees directly from the Sureties for services rendered (the "Broker Fees") as part of the Surety Premiums paid by the Debtors.  As of the Petition Date, the Debtors do not believe they owe any amounts on account of the Broker Fees.  Nevertheless, out of an abundance of caution, the Debtors request authorization to pay any direct and/or indirect prepetition amounts due and owing on account of the Broker Fees and continue honoring the Broker Fees on a postpetition basis in the ordinary course of business to ensure uninterrupted coverage under the Surety Bond Program.

## Basis for Relief

**I.     The Surety Bond Program Is Maintained in the Ordinary Course of the Debtors' Business.**

15.     Pursuant to section 363(c)(1) of the Bankruptcy Code, a debtor in possession may "enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).   The Bankruptcy Code does not define "ordinary course of business." Courts in the Fifth Circuit apply a two-part test to determine whether a transaction is in the ordinary course of a debtor's business.  The test analyzes the transaction on both a horizontal and a vertical basis—the horizontal inquiry focusing on whether the transaction is common to the debtor's

industry and the vertical inquiry focusing on comparing the proposed transaction to the debtor's prepetition practices. *See, e.g.*, *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013).

16.     Continuance of the Surety Bond Program is consistent with the Debtors' prepetition practice and common among companies in the construction industry.  As a result, creditors will not be subjected to unexpected or different economic risks than existed when the creditors originally extended the credit.  Continuation of the Surety Bond Program is an ordinary course transaction and should be authorized on a postpetition basis.

17.     The Debtors believe that they are authorized, without further order of the Court, to honor their obligations and perform in the ordinary course of business on a postpetition basis pursuant to section 363(c)(1) of the Bankruptcy Code.  Such obligations include, among other things, maintaining existing Surety Bonds, renewing Surety Bonds as they expire, acquiring new Surety Bonds as needed in the ordinary course of business, posting new or additional collateral or issuing letters of credit, and paying applicable postpetition premiums to the extent they arise, including amounts arising under the Surety Indemnity Agreements and Broker Fees.  The Debtors submit that they may maintain and continue the Surety Bond Program in the ordinary course of business on a postpetition basis.

**II.     The Debtors Should Be Authorized to Continue the Surety Bond Program in Accordance with Prepetition Practice Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

18.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business

reasons.  *See, e.g.*, *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

19.     Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  Courts apply section 105(a) of the Bankruptcy Code pursuant to the "doctrine of necessity," which functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  The doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11."  *In re Ionosphere Clubs*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

20.     Certain of the Debtors' Surety Bonds are required by statute, and in other instances, surety bonds may be required by contract or regulation.  The Debtors' failure to provide, maintain, or timely replace the Surety Bonds may therefore jeopardize the Debtors' ability to conduct their operations.  Continuing the Surety Bond Program is necessary to maintain the Debtors' current business operations, as well as the Debtors' existing relationships with the Sureties.  Based on the Debtors' current circumstances, it is not likely that the Debtors will be able to renew, or obtain replacement of, existing bonds on terms more favorable than those offered by the Sureties.  The process of establishing a new Surety Bond Program would be burdensome to the Debtors, and it is doubtful that the Debtors could replace all of the Surety Bonds in time to avoid defaults or other consequences of the applicable obligations.

21.     The Debtors submit that maintaining the Surety Bond Program, including making additional Surety Premium payments or other payments thereunder, should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.

**III.     To the Extent the Court Determines that the Surety Bond Program Is a Secured Extension of Credit, Relief Is Appropriate under Section 364 of the Bankruptcy Code.**

22.     Under section 364(c) of the Bankruptcy Code, the Debtor may obtain unsecured credit in the ordinary course of business or obtain secured credit (a) with priority over administrative expenses, (b) secured by a lien on unencumbered estate assets, or (c) secured by a junior lien on previously encumbered assets. 11 U.S.C. § 364(c). To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Given the Debtors' current financial circumstances, the Debtors may not be able to obtain financial accommodations comparable to those offered by the Sureties on an unsecured basis or administrative expense basis. To the extent a Surety Bond is deemed an extension of credit, section 364 of the Bankruptcy Code provides the Debtors ample authority to renew existing Surety Bonds and procure new ones, whether on an unsecured basis or, if necessary, on a secured basis.

23.     Continuing the Surety Bond Program, including paying outstanding prepetition amounts thereunder in the ordinary course of business on a postpetition basis, is necessary to maintain the Debtors' current business operations. The Debtors are required to provide Surety Bonds or other forms of credit support to certain third parties to secure the payment or performance of certain obligations. Failure to provide, maintain, or timely replace the Surety Bonds may jeopardize the Debtors' ability to operate their business. Therefore, the Debtors seek

authority, but not direction, to pay prepetition amounts and furnish collateral to the Sureties with respect to existing Surety Bonds, Surety Bond renewals, or any new Surety Bonds or forms of credit support.

## Emergency Consideration

24.      The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, request that the Court approve the relief requested in this Motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25.      To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

26.      Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy

law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## <u>Notice</u>

27.     The Debtors will provide notice of this Motion to the following parties or their counsel:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) the lender under the Debtors' debtor-in-possession facility and counsel thereto; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies

for states in which the Debtors conduct business; (i) Sureties and Brokers; (j) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no further notice is required.

The Debtors request that the Court enter the Order, granting the relief requested in this

Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
June 7, 2021

/s/ Matthew D. Cavenaugh

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   (713) 752-4200
Facsimile:   (713) 752-4221
Email:          mcavenaugh@jw.com
                    jwertz@jw.com
                    mstull@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                    christine.okike@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**<u>Certificate of Service</u>**

I certify that on June 7, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh