## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KATERRA INC., *et al.*,[1] | ) Case No. 21-31861 (DRJ) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) (Emergency Relief Requested) |

### DEBTORS' <u>EMERGENCY</u> MOTION SEEKING ENTRY
### OF AN ORDER AUTHORIZING AND APPROVING
### PROCEDURES TO REJECT, ASSUME, OR ASSUME AND
### ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> **Emergency relief has been requested. A hearing will be conducted on this matter on June 7, 2021 at 3:30 pm (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than June 7, 2021.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (this "<u>Motion</u>"):

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "<u>Order</u>"):  (a) authorizing and approving procedures for rejecting, assuming, or assuming and assigning executory contracts and unexpired leases (collectively, the "<u>Contracts</u>");  and (b) granting related relief.  The Debtors also request authority, but not direction, to remove or abandon personal property of the Debtors, including, without limitation, equipment, fixtures, furniture, and other personal property that may be located on, or have been installed in, leased premises that are rejected after the effective date of any proposed rejection.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 365, and 554 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 6007, and rules 2002-1(a)(2) and 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>").

**Background**

5.      Katerra Inc., together with its Debtor and non-Debtor subsidiaries ("<u>Katerra</u>"), is a technology-driven construction company that develops, manufactures, and markets products and

2

services in the commercial and residential construction spaces.  Katerra delivers a comprehensive suite of products and services for its clients through a distinct model that combines end-to-end integration with significant investment in technological and design innovation.  Katerra offers services to its clients through three distinct offerings:  (a) end-to-end new build; (b) construction services; and (c) renovations.  Katerra has approximately 6,400 employees who are primarily located in nine countries.  In the year ending 2020, Katerra's operations generated revenue of approximately $1.75 billion.

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Marc Liebman in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] and in the *Declaration of Matthew R. Niemann in Support of (A) DIP Financing and (B) All First Day Relief* filed contemporaneously with this Motion and incorporated by reference herein.  As described in more detail in the First Day Declaration, the Debtors commenced these chapter 11 cases in the face of a liquidity crisis and with the goal of facilitating a marketing and sale process for their assets to maximize value and creditor recoveries.

7.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

---

[2]      Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in this Motion or the First Day Declaration, as applicable.

No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### The Debtors' Executory Contracts and Unexpired Leases

8.      The Debtors are party to thousands of Contracts, which include agreements with vendors for the supply of goods and services, other contracts related to the Debtors' business, and leases with respect to real and personal property.  Approximately 41 of these Contracts may be considered non-residential real property leases subject to section 365(d)(4) of the Bankruptcy Code, which provides that, absent agreement with the non-Debtor counterparty, such Contracts will be deemed rejected unless they are assumed, or assumed and assigned, within 210 days from the Petition Date.

9.      The Debtors are in the process of evaluating all of their Contracts to determine whether such Contracts should be (a) rejected as unfavorable to the Debtors or (b) assumed or assumed and assigned, including those Contracts to be assumed as amended through consensual negotiations with the relevant counterparties.  Contemporaneously herewith, the Debtors filed five contract rejection motions,[3] (collectively, the "Contract Rejection Motions"), which seek authority to reject certain contracts and leases that the Debtors have determined, in their business judgment, to have high administrative costs that, in the absence of rejection, would act as an unnecessary

---

[3]      The Debtors filed the following contract rejection motions:  (a) the *Debtors' First Omnibus Motion for Entry of an Order Authorizing (I) the Rejection of Certain Unexpired Leases and (II) the Rejection of Certain Executory Contracts, Each Effective as of the Petition Date, and (III) Granting Related Relief*; (b) the *Debtors' Second Omnibus Motion for Entry of an Order Authorizing (I) the Rejection of Certain Unexpired Leases and (II) the Rejection of Certain Executory Contracts, Each Effective as of the Petition Date, and (III) Granting Related Relief*; (c) the *Debtors' Third Omnibus Motion for Entry of an Order Authorizing (I) the Rejection of Certain Unexpired Leases and (II) the Rejection of Certain Executory Contracts, Each Effective as of the Petition Date, and (III) Granting Related Relief*; (d) the *Debtors' Fourth Omnibus Motion for Entry of an Order Authorizing (I) the Rejection of Certain Unexpired Leases and (II) the Rejection of Certain Executory Contracts, Each Effective as of the Petition Date, and (III) Granting Related Relief*; and (e) the *Debtors' Fifth Omnibus Motion for Entry of an Order Authorizing (I) the Rejection of Certain Unexpired Leases and (II) the Rejection of Certain Executory Contracts, Each Effective as of the Petition Date, and (III) Granting Related Relief.*

drain on the Debtors' already limited resources or are no longer needed given the Debtors' decision to wind-down certain business operations. During the pendency of these chapter 11 cases, the Debtors may, on a consensual or non-consensual basis, seek to assume, assume and assign, or reject any of the Contracts.

10.    Absent the relief requested in this Motion, the Debtors would be required to file separate motions to reject, assume, or assume and assign each individual Contract, resulting in substantial costs to, and administrative burdens on, the Debtors' estates, in addition to the additional burden such an approach would place on the Court's docket.

11.    For the reasons discussed above and as further set forth herein, the Debtors hereby request approval of the Contract Procedures (as defined herein) to minimize such costs and burdens.

## The Proposed Rejection Procedures

12.    The Debtors seek entry of the Order authorizing and approving the following rejection procedures with respect to rejection of the Contracts (the "Rejection Procedures"):

a.    ***Rejection Notice***.  The Debtors shall file a notice substantially in the form annexed as Annex 1 to the Order (the "Rejection Notice") to reject a Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things:  (i) the Contract or Contracts to be rejected; (ii) the Debtor or Debtors party to such Contract; (iii) the names and addresses of the counterparties to such Contracts (each a "Rejection Counterparty"); (iv) the proposed effective date of rejection for such Contracts, which, for non-residential real property leases, shall be the later of (A) the proposed effective date of the rejection for such Contract, or (B) if applicable, the date upon which the Debtors in writing (email sufficient) surrender the premises to the landlord and return the keys, key codes, or security codes, as applicable (the "Rejection Date"); (v) if any such Contract is a lease, the personal property to be abandoned (the "Abandoned Property"), if any, and an estimate of the book value of such property, if practicable; and (vi) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).    The Rejection Notice may list multiple Contracts, *provided* that the number of counterparties to Contracts listed on each Rejection Notice shall be limited to no more than 100.

b.  ***Service of the Rejection Notice***.   The Debtors will cause the Rejection Notice to be served by:  (i) overnight delivery service upon the Rejection Counterparties affected by the Rejection Notice at the notice address provided in the applicable Contract (and upon such Rejection Counterparty's counsel, if known); and (ii) first class mail, email, or fax, upon (A) the United States Trustee for the Southern District of Texas; (B) counsel to the DIP Lender; (C) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (D) the United States Attorney's Office for the Southern District of Texas; (E) the Internal Revenue Service; (F) the state attorneys general for all states in which the Debtors conduct business; and (G) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Master Notice Parties").

c.  ***Objection Procedures***.  Parties objecting to a proposed rejection must file and serve a written objection[4] so that such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is ***actually received*** by the following parties (collectively, the "Objection Service Parties") no later than twenty-one (21) days after the date the Debtors file and serve the relevant Rejection Notice (the "Rejection Objection Deadline"):  (i) the Debtors, 9305 E. Via Ventura, Scottsdale, Arizona 85258, Attn: Marc Liebman; (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. and Christine A. Okike, P.C., and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Dan Latona; (iii) proposed co-counsel to the Debtors, Jackson Walker LLP, Attn: Matthew D. Cavenaugh, Jennifer F. Wertz, and J. Machir Stull; (iv) the United States Trustee, 515 Rusk, Suite 3516, Houston, Texas 77002; (v) counsel to the DIP Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Gary Holtzer, Jessica Liou, David J. Cohen, and Scott Bowling, and 700 Louisiana Street, Houston, Texas 77002-275, Attn: Alfredo Pérez.

d.  ***No Objection Timely Filed***.  If no objection to the rejection of any Contract is timely filed, each Contract listed in the applicable Rejection Notice shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date on which the Debtors and the applicable Rejection Counterparty agree; *provided* that the Rejection Date for a rejection of a lease of non-residential real property shall not occur until the later of (i) the Rejection Date set forth in the Rejection Notice and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or

---

4  An objection to the rejection of a particular Contract listed on a Rejection Notice shall not constitute an objection to the rejection of any other Contract listed on such Rejection Notice.

(B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available but the landlord may rekey the leased premises; *provided* that the Rejection Date for a lease of non-residential real property rejected pursuant to these Rejection Procedures shall not occur earlier than the date the Debtors filed and served the applicable Rejection Notice.

e.   ***Unresolved Timely Objection***.  If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall  request the Court schedule a hearing on such objection and shall provide at least ten (10) days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties.  If such objection is overruled or withdrawn, such Contract shall be rejected as of the applicable Rejection Date set forth in the applicable Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty have agreed or that is ordered by the Court.  In the case of a rejection of a lease of non-residential real property, such rejection shall not occur until the later of (i) the Rejection Date set forth in the Rejection Notice, (ii) the date the Debtors relinquished control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises, and (iii) such other date to which the Debtors and the applicable Rejection Counterparty have agreed or that is ordered by the Court; *provided* that the Rejection Date for a lease of non-residential real property rejected pursuant to these Rejection Procedures shall not occur earlier than the date the Debtors filed and served the applicable Rejection Notice.

f.   ***Deposits***.   If the Debtors have deposited monies with a Rejection Counterparty as a security deposit or other arrangement, such Rejection Counterparty may not set off or recoup or otherwise use such deposit without the prior approval of the Court, unless the Debtors and the applicable Rejection Counterparty otherwise agree.

g.   ***Modifications to Rejection Notice***.  The Debtors reserve the right to remove any Contract from a Rejection Notice at any time prior to the Rejection Date.

h.   ***Abandoned Property***.  The Debtors are authorized, but not directed, at any time on or before the applicable Rejection Date, to remove or abandon any of the Debtors' personal property that may be located on the Debtors' leased premises that pertain to a rejected Contract.  The Debtors shall generally describe the property in the Rejection Notice and their intent to abandon such property.  Absent a timely objection, any and all property located on the Debtors' leased premises on the Rejection Date of the applicable lease

of non-residential real property shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date. Landlords may, in their sole discretion and without further notice or order of the Court, utilize and/or dispose of such Abandoned Property without liability to the Debtors or third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.[5]  The rights of the counterparty to each Contract to assert claims for the disposition of the Abandoned Property are reserved, as are all parties' rights to object to such claims.

i.       ***Proofs of Claim.***  Claims arising out of the rejection of Contracts, if any, must be filed on or before the later of (i) the deadline for filing proofs of claim established in these chapter 11 cases, if any, and (ii) thirty (30) days after the later of (A) the Rejection Objection Deadline, if no objection is filed, and (B) the date that all such filed objections have either been overruled or withdrawn.  If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on such a claim that may be made in connection with these chapter 11 cases.

## The Proposed Assumption Procedures

13.       The Debtors seek the entry of the Order authorizing and approving the following assumption procedures with respect to the assumption of Contracts (the "Assumption Procedures" and, together with the Rejection Procedures, the "Contract Procedures"):

a.       ***Assumption Notice***.  The Debtors shall file a notice, substantially in the form annexed as Annex 2 to the Order (the "Assumption Notice"), indicating the Debtors' intent to assume or assume and assign a Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things:  (i) the Contract or Contracts to be assumed or assumed and assigned; (ii) the Debtor or Debtors party to such Contract; (iii) the names and addresses of the counterparties to such Contracts (each an "Assumption Counterparty"); (iv) the identity of the proposed assignee of such Contracts (the "Assignee"), if applicable; (v) the proposed effective date of the assumption for each such Contract (the "Assumption Date"); (vi) the proposed cure amount, if any, for each such Contract; (vii) a description of any material amendments to the Contract made outside of the ordinary course of business; and (viii) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below).  The Assumption Notice may list multiple Contracts; *provided* that the

---

[5]    If the Rejection Date specified on the Rejection Notice predated the removal of any property not otherwise generally described in the abandonment schedule to the Rejection Notice, the Rejection Date will not become effective until the date such property is removed from the premises.

number of counterparties to Contracts listed on each Assumption Notice shall be limited to no more than 100.

b. ***Service of the Assumption Notice and Evidence of Adequate Assurance***. The Debtors will cause the Assumption Notice to be served by (i) overnight delivery upon the Assumption Counterparties affected by the Assumption Notice and each Assignee, if applicable, at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known) and (ii) first class mail, email, or fax upon the Objection Service Parties. To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known, by electronic mail).[6]

c. ***Objection Procedures***. Parties objecting to a proposed assumption or assumption and assignment (including as to the cure amount), as applicable, of a Contract must file and serve a written objection[7] so that such objection is filed with the Court no later than twenty-one (21) days after the date the Debtors file and serve the relevant Assumption Notice and promptly serve such objection on the Objection Service Parties.

d. ***No Objection***. If no objection to the assumption or assumption and assignment of any Contract is timely filed, each Contract shall be assumed or assumed and assigned as of the Assumption Date set forth in the applicable Assumption Notice or such other date as the Debtors and the applicable Assumption Counterparties agree, and the proposed cure amount shall be binding on all counterparties to such Contract, and no amount in excess thereof shall be paid for cure purposes; *provided* that the Assumption Date for a lease of non-residential real property shall not occur earlier than the date the Debtors filed and served the applicable Assumption Notice.

e. ***Unresolved Timely Objection***. If an objection to an Assumption Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall request the Court schedule a hearing on such objection and shall provide at least ten (10) days' notice of such hearing to

---

[6] The Debtors shall serve (by electronic mail, if requested) a counterparty to a Contract other than a lease of non-residential real property to be assumed or assumed and assigned under the Contract Procedures with evidence of adequate assurance as soon as reasonably practicable upon such counterparty's written request to the Debtors' proposed counsel.

[7] An objection to the assumption or assumption and assignment of any particular Contract listed on an Assumption Notice shall not constitute an objection to the assumption and/or assignment of any other Contract listed on such Assumption Notice.

the applicable Assumption Counterparty and the other Objection Service Parties.  If such objection is overruled or withdrawn, such Contract shall be assumed or assumed and assigned as of the Assumption Date set forth in the Assumption Notice or such other date to which the Debtors and the counterparty to such Contract have agreed, or as ordered by the Court.

f.    ***Modifications of Assumption Notice***.  The Debtors reserve the right to remove any Contract from an Assumption Notice at any time prior to the Assumption Date (including, without limitation, upon the failure of any proposed assumption and assignment to close).

14.    In addition, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors request that the assignment of any Contract pursuant to the Assumption Procedures (a) be free and clear of (i) all liens (and any liens shall attach to the proceeds in the same order and priority subject to all existing defenses, claims, setoffs, and rights) and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Contract(s) (but only in connection with the assignment by the Debtor to the Assignee)), *provided* that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a lease of non-residential real property including adjustments, reconciliations, and indemnity obligations, liability which shall be assumed or assumed and assigned by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the Applicable Assignee, and (b) constitutes a legal, valid, and effective transfer of such Contracts and vests the applicable Assignee with all rights, titles, and interests to the

applicable Contracts.[8]   For the avoidance of doubt, all provisions of the applicable assigned

Contract, including any provision limiting assignment, shall be binding on the applicable Assignee.

### Basis for Relief

**I.       The Contract Procedures Are in the Best Interests of the Debtors' Estates.**

15.     Given the large number of Contracts to which the Debtors are a party, establishing

the Contract Procedures will streamline the administration of these chapter 11 cases and preserve

the value of the estates by eliminating substantial legal expenses that would otherwise be incurred

if multiple hearings were held on separate motions with respect to every Contract that the Debtors

seek to assume or reject.   The Contract Procedures are reasonable and fair to Contract

counterparties because they afford parties in interest the opportunity to be heard with respect to

the rejection, assumption, or assumption and assignment of the Contracts (and any amendments to

Contracts or abandonment of property related thereto).

**II.      Rejection, Assumption, Assignment, and Amendment of the Contracts Is an Exercise
         of the Debtors' Business Judgment.**

16.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession,

"subject to the court's approval, may assume or reject any executory contract or unexpired lease

of the debtor."   11 U.S.C. § 365(a).   The ability to assume or reject executory contracts and

unexpired leases is "vital to the basic purpose of a Chapter 11 reorganization, because rejection

can release the debtor's estate from burdensome obligations that can impede a successful

reorganization."   *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984).   The decision to

assume or reject an executory contract or unexpired lease is a matter within the "business

judgment" of the debtor.   *See, e.g.*, *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83

---

[8]    Certain of the Contracts may contain provisions that restrict, prohibit, condition, or limit the assumption and/or
      assignment of such Contract.  The Debtors reserve all rights with respect to the enforceability of such provisions.

F.3d 735, 741 (5th Cir. 1996); *In re TransAmerica Nat'l Gas Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987) (holding that section 365(a) is meant to relieve "the debtor of burdensome contracts in the exercise of its business judgment").  The business judgement standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice.  *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert, denied*, 475 U.S. 1057 (1986).

17.    Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  Further, the business judgment standard is satisfied when a debtor determines that assumption or rejection will benefit "the estate."  *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (holding that court approval of a debtor's decision to assume a lease should only be withheld if the debtor's judgment is clearly erroneous or speculative); *see also In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426 (Bankr. N.D. Tex. 2009) ("The court must ensure the decision-making process used by a debtor in possession in exercising its powers under the [Bankruptcy] Code is a sensible one.").

18.    As with the assumption or rejection of an executory contract or an unexpired lease under section 365 of the Bankruptcy Code, any amendment to an executory contract or unexpired lease that may be deemed outside the ordinary course of business is authorized under section 363 of the Bankruptcy Code when there is a "sound business purpose" that justifies such action. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (adopting the "sound business judgment" test of *Lionel Corp.* and requiring "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); *see also In re 9 Houston LLC*, 578 B.R. 600,

610 (Bankr. S.D. Tex. 2017) (holding that, once a debtor has made a decision, it is protected by the business judgment rule).

19.    The Debtors have determined, in their sound business judgment, that the rejection, assumption, or assumption and assignment (and any amendments thereto) of Contracts in accordance with the Contract Procedures proposed herein is and will be in the best interest of the Debtors' estates.  Further, the Contract Procedures will avoid substantial legal expense and the use of Court time that would result if a motion were filed and a hearing held for every motion seeking the rejection, assumption, or assumption and assignment of Contracts.  The information provided on the Rejection Notices and Assumption Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such a rejection, assumption, or assumption and assignment (and any amendments thereto) in their sound business judgment.  Accordingly, the Debtors respectfully request that the Court approve the Contract Procedures.

**III.    The Debtors Should Be Permitted to Assign Contracts Free and Clear of Interests.**

20.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if:  (a) applicable nonbankruptcy law permits a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

21.    Executory contracts and unexpired leases are property of a debtor's estate.  To the extent the Debtors assume and assign a Contract pursuant to the Assumption Procedures, such assignment is tantamount to a sale of estate property and may be transferred free and clear of the interests in such property held by an entity other than the estate, so long as one of the criteria under

section 363(f) of the Bankruptcy Code is satisfied.  The Debtors propose that if a party in interest fails to timely object to an assumption and assignment consistent with the Assumption Procedures, such party shall be deemed to "consent" to such assumption and assignment within the meaning of section 363(f)(2) of the Bankruptcy Code.  If a party in interest timely objects to an assumption and assignment consistent with the Assumption Procedures, and such objection is not withdrawn or resolved, the Debtors shall request the Court set a hearing on same to consider the objection; if such objection is overruled or withdrawn, the Contract(s) in question shall be assumed.  The requirements of section 363(f) of the Bankruptcy Code would thus be satisfied for any proposed "transfer" of a Contract free and clear of liens, claims, encumbrances, and other interests.

**IV.     Abandonment of Personal Property Is in the Best Interests of the Debtors' Estates.**

22.     Section 554(a) of the Bankruptcy Code provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).   Before authorizing abandonment of property, a bankruptcy court must find either:  (a) the property is burdensome to the estate; or (b) the property is both of inconsequential value and inconsequential benefit to the estate.  *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986); *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 3157567, at *2 (Bankr. S.D. Tex. June 19, 2013); *In re Am. Coastal Energy Inc.*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009).  The personal property proposed to be abandoned in connection with any future rejections of Contracts that are real property leases would primarily consist of fixtures, furniture, advertising displays, and other office equipment that could not be liquidated and is (a) of minimal or no material value or benefit to the Debtors' estates and/or (b) burdensome insofar as the costs and expenses of removal and storage of such property are likely to exceed the net proceeds realizable from their sale.

## V.     The Contract Procedures Satisfy Due Process.

23.     The Contract counterparties will not be prejudiced by the Contracts Procedures because, upon receipt of an Assumption Notice or a Rejection Notice, such counterparties will have received advance notice of the Debtors' intent to reject, assume, or assume and assign their respective Contract and of the effective date of such assumption or rejection.  *See, e.g.*, *In re Nat'l Gypsum Co.*, 208 F.3d 498, 512 (5th Cir. 2000) (finding that the requirements of the Bankruptcy Code "provide necessary safeguards to parties forced to maintain contractual relationships with a reorganizing debtor"); *In re Thane Int'l, Inc.*, 586 B.R. 540, 548 (Bankr. D. Del. 2018) (finding that the requirements of the Bankruptcy Code are meant to protect the interests of the non-debtor parties to executory contracts, so they may avoid having to deal with an assumption of which they had no notice and which they had no opportunity to contest); *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding debtor may reject executory contract by clearly communicating intention to reject).

24.     Additionally, in the case of unexpired leases of non-residential real property, the Debtors will likely vacate the premises before or upon serving the Rejection Notice, thereby allowing the counterparties to take possession of and relet the property promptly. *See, e.g.*, *Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 608–09 (2d Cir. 2007) (holding bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a non-residential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had

unequivocal notice of Debtors' intent to reject [the contracts]"); *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (granting retroactive relief based on the circumstances of the case); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that lease at issue should be deemed rejected as of the petition date due to equities of the case where debtor turned over keys and vacated premises and served motion to reject lease as soon as possible); *see also In re Joseph C. Spiess Co.*, 145 B.R. 597, 606 (Bankr. N.D. Ill. 1992) ("[A] trustee's rejection of a lease should be retroactive to the date that the trustee takes affirmative steps to reject said lease.").

25.     As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014."   Bankruptcy Rule 6006(a). Bankruptcy Rule 9014 provides that:  "In a contested matter . . . , not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Bankruptcy Rule 9014(a).  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given *in light of the particular circumstances*. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

26.     Under Bankruptcy Rule 6006(f), a debtor may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(e).  Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple executory contracts or unexpired leases must satisfy.  These requirements are procedural in nature.  A motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

      i.      state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

     ii.     list parties alphabetically and identify the corresponding contract or lease;

   iii.     specify the terms, including the curing of defaults, for each requested assumption or assignment;

   iv.     specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

     v.     be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

   vi.     be limited to no more than 100 executory contracts or unexpired leases.

Bankruptcy Rule 6006(f).

27.     The clear purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to the Contracts while conserving estate resources. Counterparties must be able to locate their Contracts and readily determine whether their Contracts are being assumed or rejected.

28.     The Contract Procedures satisfy Bankruptcy Rule 6006(f), including the 100-contract or lease limit set forth in subsection (vi) thereof. Further, given the substantial number of Contracts the Debtors will be seeking to assume, assume and assign, or reject, obtaining Court approval of each assumption, assignment, or rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in costs to the Debtors' estates that may decrease the economic benefits of rejection or assumption or assumption and assignment.

29.     In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the United States Trustee for the Southern District of Texas and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

30.     As a result, the Contract Procedures afford Contract counterparties and all other parties in interest their due process rights by providing notice and the opportunity to be heard. Moreover, Court oversight is maintained in the event of an objection.  For the foregoing reasons, the Contract Procedures should be approved, and the Debtors should be authorized to reject, assume, and assume and assign the Contracts consistent with the terms of such procedures.

31.     In sum, the Contract Procedures will minimize costs to the Debtors' estates and reduce the burden on the Court's docket while protecting parties in interest by providing notice and the opportunity to object and obtain a hearing.  The Debtors have determined that the Contract Procedures are an appropriate means to protect and maximize the value of the Debtors' estates.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

32.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Emergency Consideration

33.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly,

the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

<u>**Reservation of Rights**</u>

34.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### **Notice**

35.     The Debtors will provide notice of this Motion to the following parties or their counsel:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) the lender under the Debtors' debtor-in-possession facility and counsel thereto; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (i)  any party that has requested notice pursuant to Bankruptcy Rule 2002; and (j) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no further notice is required.

The Debtors request that the Court enter an Order, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
June 7, 2021

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:           mcavenaugh@jw.com
                    jwertz@jw.com
                    mstull@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                    christine.okike@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**Certificate of Service**

I certify that on June 7, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh