**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| KATERRA INC., *et al.*,[1] | Case No. 21-31861 (DRJ) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF**
**AN ORDER (I) APPROVING THE PRIVATE SALE OF**
**THE DEBTORS' RENOVATION BUSINESS FREE AND CLEAR OF ALL LIENS,**
**CLAIMS, AND ENCUMBRANCES, (II) AUTHORIZING THE**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") submit this motion (this "<u>Motion</u>")[2] and in support thereof will file the *Declaration of Jay Weinberger in Support of the Debtors' Motion for Entry of an Order (I) Approving the Private Sale of the Debtors' Renovation Business Free and Clear of Liens, Claims, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection*

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

[2]     Capitalized terms used but not yet otherwise defined in this Motion shall have the meanings given to them in the Term Sheet or the First Day Declarations, or later in this Motion.

*Therewith, and (III) Granting Related Relief* (the "Weinberger Declaration").  In support of this Motion, the Debtors state:

### Preliminary Statement

1.       By this Motion, the Debtors seek authority to enter into a private sale agreement with the Purchaser to expeditiously sell their renovation business in order to minimize customer disruption, significantly reduce potential secured claims exposure, and save jobs.[3]  Specifically, the Debtors operate a nationwide renovation services business (the "Renovation Business") comprised of a team of renovation professionals, including subcontractor and labor crews.  These experienced professionals have in-depth industry knowledge and experience that enhances the value, appeal, and investment return for multifamily, hospitality, and commercial properties.

2.       The Renovation Business currently has numerous ongoing projects on very tight contractual timelines.  The Debtors have obtained surety bonds guaranteeing their performance under many of these outstanding jobs.  Failure to timely perform could result in customers seeking compensation under applicable bonds, likely exposing the Debtors to additional liability.  Selling the Renovation Business expeditiously is the only way to minimize this risk, and the Debtors do not believe there will be a business to sell if the sale were subject to a prolonged auction process.  As the Court recognized at the First Day Hearing, "we do not need losses exponentially increased due to time."  Hr'g Tr. 52:23-24 (June 7, 2021).

3.       In order to avoid shutting down the Renovation Business and the inevitable loss of jobs, disruption to customers, and increase in claims against the Debtors, in the few days prior to

---

[3]      For the reasons set forth herein, the assets subject to this Motion will not be subject to the sale and auction process described in the *Debtors' Motion for Entry of (A) an Order (I) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures, and (B) an Order Authorizing the Debtors to Enter Into Definitive Purchase Agreements* filed by Debtor Katerra, Inc. [Docket No. 30] (the "Bidding Procedures Motion").

the Petition Date the Debtors and the Purchaser engaged in around-the-clock, arm's-length negotiations related to the sale of the Renovation Business. The Purchaser was able to quickly move towards a sale because Purchaser employs certain of the Debtors' former senior-level employees who are intimately familiar with the Renovation Business. As a result, the Purchaser is willing to buy the Acquired Assets (as that term is defined in the Purchase Agreement) constituting or used in the Renovation Business after expedited, high-level due diligence. The Debtors do not believe that another buyer could have completed diligence on the entire business in the limited timeframe required. Because the only alternative is to shut down the business—destroying value for all stakeholders—the Debtors believe, in their business judgment, that the sale contemplated hereby (the "Sale") is in the best interests of the estates.

4.     The Purchaser has significant experience acquiring both distressed and performing businesses and a strong record of accomplishment of investing in and fostering their stabilization and subsequent expansion. The Purchaser and its shareholders currently own a business called Onx Homes, which the Purchaser believes has synergies with the Renovation Business that will inure to the benefit of both parties' customers. In light of the circumstances, the Debtors believe that the Purchaser has the experience and ability to minimize disruption to the Renovation Business.

5.     The economic terms of the Sale are fair, reasonable, and negotiated in good faith at arm's-length. Not only does the Sale result in material cash proceeds to the estate, it reduces potentially material claims against the estate. The total consideration for the Acquired Assets is approximately $18 million or higher comprised of: (a) $1 million of cash, and (b) $17 million or more of Assumed Liabilities in connection with the assumed projects. Moreover, the Sale will allow the Debtors to avoid approximately $50 million to $60 million in contractual liabilities that

may have been asserted against the Debtors in connection with ongoing projects that would have otherwise been rejected by the Debtors due to their inability to perform on such contracts.

6.     Additionally, the Sale allows the Debtors to access a portion of the cash collateral related to bonded projects, which in the aggregate is approximately $10 million.  To be sure, the Term Sheet provides that as the jobs related to such cash collateral are completed and the cash collateral is released, the Debtors will receive 70-90% of such proceeds with the Purchaser retaining the rest.  These jobs are expected to be completed in late 2021.

7.     Alternatively, if the Debtors had chosen to continue to operate the Renovation Business during these chapter 11 cases without a buyer, completing all existing projects on their own would cost the estates approximately $7 million (based on the Debtors' estimate of $1.2 million of cash burn per month over six months)—liquidity the Debtors don't have available—without accounting for further disruption caused by counterparties reacting to the bankruptcy in a manner that would negatively impact the projected cash flows.  Further, if the Debtors are not able to consummate the Sale and were to continue to fund the Renovation Business (which they cannot), they would receive approximately $3 million of net proceeds (*i.e.*, $10 million of cash collateral, minus $7 million of operational burn).  By entering into the Sale, the Debtors will receive approximately $8 million of net proceeds (*i.e.*, $1 million Purchase Price, plus $7 million, representing the Debtors' share of released cash collateral).

8.     The following is a summary of the key terms and conditions of the term sheet attached hereto as **Exhibit A**, (the "Term Sheet"):[4]

---

[4]   The following summary chart is included for the convenience of the Court and parties.  To the extent this summary conflicts with the Term Sheet, the Term Sheet shall govern.  In connection with the relief sought herein, the Debtors will file a purchase agreement (as may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement") memorializing the terms of the Term Sheet and the Sale as soon as reasonably practicable.  Capitalized terms used in this summary chart but not otherwise defined herein shall have the meanings ascribed to them in the Term Sheet.

| Closing Date and Purchase Terms | The Purchaser will provide $1 million in cash (the "Purchase Price") for the Debtors' Renovation Business, including all backlog, assets, and Included IP[5] (the "Acquired Assets") and will assume the Assumed Liabilities[6]. The Assumed Liabilities will include all responsibility and obligations for completion of all bonded jobs or engagements assumed under the Purchase Agreement. The Purchaser also agrees to refund cash collateral posted for bonding in place to the Debtors based on an agreed-upon scale. The Purchaser will pay the Purchase Price in cash in full within five days of obtaining Court approval. |
|---|---|
| Assumed Contracts | The Purchaser shall assume the contracts set forth in the schedule (as may be amended) attached to the Term Sheet. |
| Financing | The Purchaser will finance the acquisition with cash sourced from the Purchaser's balance sheet. No external approvals or third-party capital sources are necessary for this financing and there will be no financing contingencies to Purchaser's ability to consummate the transaction. |
| Conditions | The Purchaser's obligation to complete the transaction will be subject only to: (a) the expedited completion of satisfactory high-level business, legal, and accounting due diligence inquiries and review; (b) the execution of mutually satisfactory definitive agreements (including, without limitation, the Purchase Agreement) on terms consistent with the Term Sheet, including, *e.g.*, the releases provided for in paragraph 12 thereof, and all other customary terms and conditions, and (c) the entry of an order granting this Motion, all in form and substance consistent with the Term Sheet and reasonably acceptable to the parties. |

In addition, the Term Sheet includes a standard "fiduciary out" to ensure the Debtors are maximizing the value of their estates through the Sale.

9.     In the Debtors' business judgment, the Sale is fair, reasonable, and the best available option to maximize the value of the Debtors' estates. For the reasons set forth below, the Debtors ask the Court to approve the sale.

---

[5]   "Included IP" means all marks, brands, patents or other intellectual property assets as are owned by, exclusive to or being used only or substantially primarily by the Renovation Business, all as shall be specifically scheduled and agreed as part of the definitive transaction documents; but not including, in any event, any shared intellectual property and all other intellectual property assets including general marks such as "Katerra," or katerra.com, or the IP of Katerra's defunct software business.

[6]   "Assumed Liabilities" means only those liabilities designated as "Assumed Liabilities" in the Purchase Agreement.

## Relief Requested

10.     The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto:  (a) authorizing (i) the private sale of the Debtors' Renovation Business free and clear of liens, claims, and encumbrances, and (ii) the assumption and assignment of the Assigned Contracts to the Purchaser pursuant to the Assumption and Assignment Procedures, and (b) granting related relief.

## Jurisdiction and Venue

11.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The statutory bases for the relief requested herein are sections 105, 363, and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002 and 6004, and rules 1075-1, 4002-1(e), 6004-11, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

14.     Katerra Inc., together with its Debtor and non-Debtor subsidiaries ("Katerra"), is a technology-driven construction company that develops, manufactures, and markets products and services in the commercial and residential construction spaces.  Katerra delivers a comprehensive suite of products and services for its clients through a distinct model that combines end-to-end integration with significant investment in technological and design innovation.  Katerra offers services to its clients through three distinct offerings:  (a) end-to-end new build; (b) construction

services; and (c) renovations.  Katerra has approximately 6,400 employees who are primarily located in nine countries.  In the year ending 2020, Katerra's operations generated revenue of approximately $1.75 billion.

15.     On June 6, 2021 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Marc Liebman in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 37] and the *Declaration of Matthew R. Niemann in Support of (A) DIP Financing and (B) All First Day Relief* [Docket No. 40] (the "First Day Declarations") filed on the Petition Date and incorporated by reference herein.  As described in more detail in the First Day Declarations, the Debtors commenced these chapter 11 cases in the face of a liquidity crisis and with the goal of facilitating a marketing and sale process for their assets to maximize value and creditor recoveries.

16.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 7, 2021, the Court entered an order [Docket No. 38] authorizing procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  As of the date hereof, no official committee of unsecured creditors has been appointed in the Debtors' chapter 11 cases.

## Basis for Relief

**I.  The Sale of the Renovation Business and the Debtors' Entry into the Purchase Agreement Should Be Approved as an Exercise of the Debtors' Sound Business Judgment.**

17.     Under section 363(b) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[7]  A debtor may sell estate property outside the ordinary course of business under this provision if there is a good business reason for doing so.[8]  "Great judicial deference is given to the [debtor in possession's] exercise of business judgment" regarding the sale of estate property.[9]  Once a debtor articulates a good business reason for the sale of estate property outside the ordinary course of business, it is presumed that the debtor's decision to move forward with the sale was made "on an informed basis, in good faith, and in the honest belief that the [transaction] was in the best interests of the [debtor] company."[10]

18.     Consummating the sale of the Debtors' Renovation Business and entering into the Purchase Agreement is a sound exercise of the Debtors' business judgment for several reasons. First, the Debtors believe the Purchase Price represents the highest and best price available for the Renovation Business.  Significantly, absent this sale and the stability and liquidity provided, the Debtors would need to shut down the Renovation Business immediately, meaning the Debtors would (a) not be able to realize the commercial benefit of the deal and underlying contracts, (b) be

---

[7]   11 U.S.C. § 363(b)(1).

[8]   *See, e.g.*, *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011).

[9]   *State Park Bldg. Grp.*, 331 B.R. at 254.

[10]  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1990); *see Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("As long as [the sale of estate property] appears to enhance [the] debtor's estate, court approval of a [debtor in possession's] decision to [sell the property] should only be withheld if the [debtor's] judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.") (internal quotation marks and citation omitted).

subject to claims from customers (and likely surety providers) that would reduce the recovery available for creditors, (c) be subject to additional liabilities related to termination of approximately 200 employees, such as WARN claims, and (d) be unlikely to generate material proceeds from the collection of accounts receivable or materially benefit from other current assets. Accordingly, the Debtors submit that the sale of the Debtors' Renovation Business and approval of the Purchase Agreement is in the best interest of their estates and is a sound exercise of their business judgment.

## II.     The Purchaser is a Good Faith Purchaser and Is Entitled to Full Protections Pursuant to Section 363(m) of the Bankruptcy Code.

19.     Because the Purchaser has acted in good faith, it is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Renovation Business, which provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.[11]

Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  Purchasers are provided this protection so long as they purchased the assets in "good faith."[12]  Although the Bankruptcy Code does not define "good faith purchaser," the Fifth Circuit has stated that a good faith purchaser is one who (a) "purchases the

---

[11]   11 U.S.C. § 363(m).

[12]   *Id.*

assets for value, in good faith, and without notice of adverse claims" and (b) has not conducted itself in a way that "involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[13]   Courts generally conclude that a purchaser has acted in good faith as long as the consideration is adequate and reasonable and the terms of the transaction are fully disclosed.[14]

20.      Here, the Debtors engaged in good faith, arm's-length discussions with the Purchaser to reach an agreement with the Purchaser that would be mutually beneficial to both parties.  The Debtors and the Purchaser were each represented by separate counsel in connection with the negotiation and documentation of the Sale.  A fair and transparent negotiation process, such as that conducted by the Debtors here, ensures the sale of the Debtors' assets is at arm's-length, without collusion or fraud, and entered into in good faith.  Accordingly, the Debtors request that the Court determine that the Purchaser has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of good faith purchasers under section 363(m) of the Bankruptcy Code.

## III.   The Sale of the Renovation Business is Appropriate Under Bankruptcy Rule 6004.

21.      Bankruptcy Rule 6004(f)(1) permits a debtor to sell property of the estate outside of the ordinary course of its business by private sale.[15]   Courts generally afford debtors in possession broad discretion to determine the manner in which estate property is sold.[16]   Private

---

[13]   *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014).

[14]   *In re Abbotts Dairies*, 788 F.2d 143, 149–50 (3d Cir. 1986).

[15]   Fed. R. Bankr. P. 6004(f)(1); *see In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("[T]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

[16]   *See, e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998).

sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code, *i.e.*, where the debtor articulates a good business reason for the sale.[17]  Bankruptcy courts have a "large measure of discretion" in determining, "based upon the facts and circumstances of the proposed sale," whether a private sale, as opposed to a public auction, is appropriate.[18]  In general, courts have approved private sales of less than all the assets of a debtor pursuant to section 363(b)(1) of the Bankruptcy Code as long as the debtor provides a valid business reason for not conducting an auction.[19]

22.     In an exercise of their sound business judgment, the Debtors have determined that consummating the sale of the Renovation Business on a private basis is appropriate in light of the facts and circumstances of these chapter 11 cases and is in the best interest of their estates and all parties in interest.  The Debtors and the Purchaser desire to consummate the proposed sale as soon as practicable upon entry of the Order.  As previously discussed, it is crucial that the ongoing renovation projects are completed in a timely fashion.  The Purchaser is willing and able to assume such outstanding projects, continue servicing the Debtors' clients, and ensure that the clients are satisfied with the remodeling projects, thereby alleviating their need to rely on the surety bonds.

---

[17]  *See, e.g.*, *In re Schipper*, 933 F.2d 513, 514 (7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as independent appraisal); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser").

[18]  *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995).

[19]  *See, e.g.*, *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex for $17.9 million); *In re W.R. Grace & Co.*, No. 01-1139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line for approximately $22 million); *In re Solutia, Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

Given these circumstances, the Debtors believe that the Purchaser's offer is the highest and best offer and that the sale of the Renovation Business is appropriate under the circumstances.

## IV.     The Sale Should be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code.

23.     The Debtors also seek to sell the Renovation Business free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code, which authorizes a debtor to sell assets free and clear of any interest in such property if:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     the holder of the interest consents;

(3)     such interest is a lien and the price at which such property is sold exceeds the value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     the holder of the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[20]

Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the applicable property free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges or encumbrances), except with respect to any interests that may be assumed under the applicable agreement.[21]

24.     With respect to any party asserting a lien, claim, or encumbrance, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f). To the extent there are liens on the Acquired Assets, the Debtors anticipate that holders of such

---

[20]     11 U.S.C. § 363(f).

[21]     *See In re C-Power Prods., Inc.*, 230 B.R. 800 (Bankr. N.D. Tex. 1998); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at *7 (Bankr. E.D. Tex. Dec. 19, 2007) ("satisfaction of any one of the requirements [of Section 363(f)] will suffice to warrant the Debtors' sale . . . free and clear of all interests").

liens will consent to the Sale, because such sale will provide the most efficient approach to realizing proceeds for, among other things, the repayment of amounts due to such parties.  Any and all liens on the Acquired Assets will attach to the remaining net proceeds of such sales with the same force, effect, and priority as such liens currently have on these assets, subject to the rights and defenses, if any, of the Debtors and of any party-in-interest with respect thereto.  Additionally, prior to the filing of this Motion, the Debtors consulted with the DIP Lender regarding the Sale and the relief sought herein, and obtained the DIP Lender's consent to the transaction.  The Debtors are not aware of any opposition to the Sale.  Any other entity that does not object to the sale should be deemed to have consented.

25.     Thus, section 363(f)(3) of the Bankruptcy Code is satisfied.   The Debtors accordingly request authority to sell the Acquired Assets to the Purchaser free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds from the sale of the Acquired Assets.

**V.     The Debtors Should Be Authorized to Assume and Assign Certain Executory Contracts to the Purchaser pursuant to the Assumption and Assignment Procedures and in Accordance with the Sale Order.**

26.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and assign its executory contracts and unexpired leases, subject to court approval, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  A debtor's decision to assume, assume and assign, or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g.*, *Grp. of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523, 550–51 (1943) (applying Bankr. Act section 77(b), predecessor to Bankruptcy Code section 365, and

rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment).

27.     Here, the Court should approve the assumption and assignment of certain contracts (the "Assigned Contracts") pursuant to procedures set forth herein (the "Assumption and Assignment Procedures") where the Debtors and the Purchaser determine it is an essential component of a proposed Sale. *First*, certain of the Debtors' contracts are important to effectively operate the Renovation Business and serve its customers and, as such, they are essential to consummating the Sale. *Second*, contract counterparties will have notice and opportunity to raise any issues including with respect to cure and adequate assurance of performance with the proposed assignee. Their respective rights, remedies, and defenses are preserved. *Third*, the Debtors submit that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be promptly satisfied, because all defaults associated with the Assigned Contracts and required to be cured under section 365(b) of the Bankruptcy Code will be cured as part of the Sale.

28.     Particularly, the proposed Assumption and Assignment Procedures are as follows:

a.     **Cure Notice**.  Within five (5) business days after the filing of this Motion, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the cure notice (as may be amended, supplemented, or otherwise modified from time to time the "Cure Notice"), attached as **Exhibit B** hereto, on certain non-Debtor contract counterparties (collectively, the "Contract Counterparties").

b.     **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information:  (i) a list of the applicable Assigned Contracts; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such

Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to the Purchase Agreement.

c.   **Cure Objections**.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court no later than **14 days following the date of service of the Cure Notice**, at **4:00 p.m. (prevailing Central Time)** (the "Cure Objection Deadline"); *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket, if applicable.

d.   **Effects of Filing a Cure Objection**.  A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

e.   **Dispute Resolution**.  Parties may resolve any Cure Objection in the ordinary course. Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved as of the Sale hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned with the consent of the Counterparty and the Purchaser, pending a resolution of the Cure Objection satisfactory to the Purchaser, after notice and a hearing.

f.   **No Cure Objections**.  If there are no Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) upon entry of the Order, the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Contract against the Debtors or the Purchaser, or the

property of any of them.

29.     Accordingly, the Debtors submit the assumption and assignment of the Assigned Contracts in connection with the Sale should be authorized.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30.     In furtherance of the foregoing, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

31.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) except with regard to the Assigned Contracts, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent,

validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

32.     The Debtors will provide notice of this Motion to the following parties or their counsel:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) Weil, Gotshal & Manges LLP as counsel to the DIP Lender; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (i) the Purchaser and counsel thereto; (j) counterparties to the Assigned Contracts; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no further notice is required.

The Debtors request that the Court enter an order, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
June 15, 2021

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:           mcavenaugh@jw.com
                      jwertz@jw.com
                      mstull@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                      christine.okike@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on June 15, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

# **EXHIBIT A**

## **TERM SHEET**

*Execution Version (Revised 6/7/21); Privileged & Confidential; Subject to FRE 408*

THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OF THE COMPANY.  NOTHING IN THIS TERM SHEET SHALL BE DEEMED TO BE THE SOLICITATION OF AN ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ANY SUCH OFFER OR SOLICITATION SHALL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  THE PROPOSALS CONTAINED HEREIN ARE SUBJECT TO FURTHER DILIGENCE AND TAX ANALYSIS.

THIS TERM SHEET HAS BEEN PRODUCED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY AND IS SUBJECT TO THE PROVISIONS OF RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER SIMILAR APPLICABLE STATE AND FEDERAL RULES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.   NOTHING HEREIN SHALL BE DEEMED TO BE AN ADMISSION OF FACT OR LIABILITY BY ANY PARTY.


June 4, 2021

Mr. Marc Liebman
Chief Transformation Officer
Katerra
North American Headquarters
2700 Post Oak Blvd., Suite 2450
Houston, TX  77056

Dear Mr. Liebman:

        TNC Property Holdings IV, LLC (an Outlier affiliated SPE) and ONX Inc. (TNC Property Holdings IV, LLC, and ONX Inc., collectively the "Buyer") are pleased to provide this term sheet ("Term Sheet") for our proposed acquisition of specified portions of the Katerra enterprise (the "Company") relating to the Company's Remodel business owned by Katerra Construction LLC and CAPGro Construction Management, LLC (collectively, Sellers).  Building on our conversations to-date and our review of the information made available to us, we would undertake an expedited transaction as set forth herein.

        Buyer has significant experience acquiring both distressed and performing businesses and a strong track record of investing in and fostering their stabilization and subsequent expansion.  We are extremely hands-on where necessary and deeply involved in operations as well as the review and optimization of processes across the board, captive system technology platforms and marketing programs.  Katerra presents a profile that is well-aligned with our past and current projects**.**  Buyer and its shareholders currently own a business called Onx Homes, which has substantial synergies with Katerra's pre-Summer 2020 shift in focus and thus has a unique ability to leverage certain businesses and assets of Katerra successfully. Numerous Outlier and Onx shareholders or affiliates were previously shareholders of Katerra prior to the January 2021 restructuring and have extensive historical knowledge of the company.  In short, we collectively represent a buyer that has both thorough experience in restructuring/distressed investing and specific knowledge of Katerra.  Further, the Buyer has no requirements for an investment committee or board of directors to approve a transaction.  Buyer is not a fund, is more than sufficiently capitalized to

complete the proposed transaction and has complete flexibility to consummate a transaction as it sees fit without external approvals.

The principal terms of our offer are set forth below:

1.      Closing Date and Purchase Terms.  $1mm (as adjusted, if at all, by the "Working Capital Requirements and Adjustment" paragraph below), for Katerra's Remodel Business, including all backlog, assets (including without limitation "Included IP" as defined below), and Assumed Liabilities (as defined below), in each case unless otherwise specified.  Further, Buyer agrees to assume all responsibility and obligations for completion of all bonded jobs or engagements assumed and to refund cash bonding  in place to Seller or its designee on the following scale (only if Buyer is able to complete the job after commercially reasonable efforts to do so and cash bonding is remitted back; for the avoidance of doubt, Buyer is not liable for any cash bonding where the clients terminate or refuse to pay (despite Buyer's commercially reasonable efforts to collect such payment), i.e., Buyer is not liable to make Seller whole as to ultimately uncollected cash bond amounts):  70% with respect to all jobs or engagements that are less than 89% complete as of the closing date of this transaction and 90% of cash bonding with respect to all other jobs or engagements that are 89% or more complete as of the closing date of this transaction.  Each job or engagement with cash collateral that will be partially released to Seller upon completion of the job is detailed in Schedule A attached hereto (which may amended, supplemented, or otherwise modified from time to time).  Cash portion of purchase to be paid in full at closing at a date to be determined collectively by the parties, but with the anticipation that the transaction contemplated by this LOI will likely be part of a private 363 sale unless otherwise required by the Bankruptcy Court (which for the avoidance of doubt, shall not cause this Term Sheet to be terminable by either party hereto).  The sale will be closed within 5 days of obtaining court-approval. "Included IP" means all marks, brands, patents or other intellectual property assets as are owned by, exclusive to or being used only or substantially primarily by the Remodel Business, all as shall be specifically scheduled and agreed as part of the definitive transaction documents; but not including, in any event, any shared intellectual property and all other intellectual property assets including general marks such as "Katerra," or katerra.com, or the IP of Katerra's defunct software business.  Liabilities to be assumed hereunder, "Assumed Liabilities," means liabilities that Buyer specifically confirms hereafter in writing it is willing to assume as part of this asset sale.

Working Capital Requirements and Adjustment – To the extent that the Remodel Business generates negative cash flow from the date hereof through the date of the close of the transaction (i.e., incurs a net cash burn during this period), Buyer will reimburse the Remodel Business for up to $4mm of negative cash burn as additional purchase price. To the extent the Remodel Business has more than $4mm of negative cash burn prior to close, the Buyer will grant the Seller a $10mm "basket" of the Remodel Business' most current A/R, the collections of which will (i) first go to the Seller until the negative cash burn has been fully neutralized and then (ii) be retained by the Buyer. For the avoidance of doubt, if the Remodel Business has $6mm of negative cash burn, the Buyer will pay the seller $5mm cash at close ($1mm purchase price plus $4mm negative cash burn reimbursement) and then collect on a "basket" of $10mm of A/R, the first $2mm of proceeds of which will be paid to Seller and the rest of which will be retained by the Buyer. To the extent the Remodel Business generates positive cash flow during said period such cash is to be part of the sold assets, will not be swept out (other than for ordinary course payroll and benefit cash sweeps that are paid through corporate to Remodel Business employees), and will be included in the assets acquired by Buyer.  Seller may only include normal course operating expenses on the Remodel Business's P&L and balance sheet; extraordinary expenses including but not limited to restructuring, legal, and associated

advisory fees, expenses and outlays related to Katerra's bankruptcy process shall not be incurred against the Remodel Business and shall be borne exclusively by Seller.

2.      Financing.  Buyer will finance the acquisition, including related fees and expenses, with cash sourced from Buyer's balance sheet. No external approvals or third-party capital sources are necessary for this financing and there will be no financing contingencies to Buyer's ability to consummate the transaction.

3.      Expedited Due Diligence.  Under the circumstances of this transaction, we view our diligence to be an expedited, high-level confirmatory exercise only, and upon your notification of acceptance of this letter we are prepared to devote the required resources necessary to finalize and achieve a rapid and orderly completion thereof, and closing.  In order to successfully complete the due diligence, we anticipate that Buyer and its representatives, advisors and consultants will have reasonable access to appropriate management and all information reasonably relating to the business, operations and properties of the Seller and financial, legal, accounting, tax, and other material matters relating to the business and operations of the Seller.  We anticipate using a mix of in-house legal resources to complete the transaction, though we may call upon third parties if needed, whom will be compensated pursuant to Section 7 hereof. We typically complete all of our due diligence in-house and do not usually require outside advisors for normal course diligence.

We also expect that the business and operations of the Seller will be materially conducted in the usual and ordinary course in accordance with good business practices (allowing, to the extent applicable, for present pandemic-related circumstances) between the date of this letter agreement and the closing date and the Seller will use its reasonable best efforts to maintain the value of its business as fully as possible in all respects.  Prior to Closing, Seller will (as noted above) not take cash out of the business business (other than for ordinary course payroll and benefit cash sweeps that are paid through corporate to Remodel Business employees) or otherwise increase or accelerate expenditures or cash outlay.

4.      Necessary Approvals.  Again, as a closely-held firm we do not require any layered or complicated corporate or shareholder approvals or other extraordinary precursor steps to consummate the Acquisition.  All of our decision-makers are fully briefed on the proposed acquisition and have participated in the issuance of this letter of intent.

5.      Conditions.  Our obligation to complete the Acquisition will be subject only to: (i) our expedited completion of satisfactory high-level business, legal and accounting due diligence inquiries and review including without limitation there being no Material Adverse Change in or to the Remodel Business prior to the close of the transaction, and (ii) the execution of mutually satisfactory definitive agreements on terms consistent with this proposal.

6.      Deposit.  Upon your acceptance of this Term Sheet and return of a countersigned copy to us, we will, within 24 hours thereafter (allowing for bank holidays if applicable), fund the **$1,000,000** purchase price to a third-party escrow account specified by you, as an earnest money deposit (the "Deposit"), non-refundable to us only if we fail to consummate the transaction in accordance with and subject to the terms and conditions outlined herein or any definitive documentation governing the transaction, despite lack of material adverse findings in our due diligence exercise including without limitation there having being no Material Adverse Change in or to the Remodel Business, no external Seller-side barriers to such consummation that cannot be remedied after reasonable time and effort, and the Seller remaining willing

and able to consummate the closing on the terms provided herein.  In the event Buyer breaches obligations under this Term Sheet, 50% of the Deposit will be held in escrow subject to a determination of damages or agreement between the parties.  In the event that Company commits to or closes the sale to another party, Deposit will be returned to Buyer by the escrow agent within 2 business days thereafter.

7.      Expenses.  Each of Buyer and its stakeholders, on the one hand, and the Seller and its stakeholders, on the other, will be responsible for their own fees and expenses and those of their respective accountants, bankers, counsel and other advisors.

8.      Publicity; Confidential Proposal.  Neither the Seller nor Buyer, nor their respective affiliates, shareholders or representatives will make any press release or public announcement concerning the existence of the transactions contemplated hereby without the prior written approval of the other parties hereto unless (x) required by the bankruptcy court (the "Bankruptcy Court") presiding over the Company's chapter 11 cases (the "Bankruptcy Cases"), if applicable, (y) pursuant to a pleading filed in the Chapter 11 Cases relating to approval of this sale transaction (which shall be in form and substance reasonably acceptable to Buyer), or (z) required under applicable law.  Subject to disclosure by Seller pursuant to the foregoing sentence, this letter and the proposal set forth herein is made to you on a confidential basis and shall not be disclosed by Seller to any third party (other than your officers, directors, financial advisors, attorneys and other representatives who have a need to know such information) without Buyer's prior written consent.

9.      Binding Effect.  This Term Sheet shall be binding and irrevocable upon execution by Buyer and the Seller, subject to Section 10 below.

10.     Fiduciary Out.  Seller reserves the right to act as it may reasonably determine to be in the best interest of its estate and in fulfilling its fiduciary duties, including by terminating the sale to pursue an alternative transaction.  If Seller terminates the sale, the Deposit shall be promptly refunded a within 2 business days thereafter.

11.     Definitive Documentation.  The definitive documentation shall contain terms, conditions, representations, warranties, and covenants, each customary for the transaction described herein consistent with the terms of this Term Sheet and reasonably acceptable to the parties.

12.     Releases.  The definitive documentation shall contain mutual releases for Buyer and Seller (for purposes of this paragraph, broadly meaning Katerra generally) and -- to the extent Buyer and Seller, respectively, have the legal authority and practical ability to give, in the case of their current affiliates (or to the extent Buyer or Seller has legal authority and practical ability, if any, to compel any other such person or entity to give directly, in all other cases) such a release -- for their respective affiliated parties (including respective affiliates, successors, predecessors, and assigns, and with respect to the parties and each of the foregoing, their respective companies, partners, agents, principals, professionals, employees, contractors, and representatives) of all claims, counterclaims, interests, obligations, rights, suits, causes of action remedies, or liabilities whatsoever relating to: (i) the negotiation, execution, and implementation of the transaction; and (ii) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the close of the transaction that relates to the parties or their affiliates, their business, or contractual arrangements.

13.       Material Adverse Change. For purposes of this term sheet a "Material Adverse Change" shall only include a loss of: (x) 50% or more with respect to the projects in Schedule B designated as "renovation projects" or (y) 40% or more with respect to the projects in Schedule B designated as "affordable housing". For clarity, the percentages in the foregoing sentence are expressions of percentages of the revenue remaining to be billed, of said projects, and are expressed as percentage pertaining to said revenues remaining to be billed of only such subset of those projects listed on Schedule B as are further designated by Buyer in its discretion hereafter as to be assumed by Buyer at the closing.

14.       Communications with Customers. After the date hereof, solely for purposes of consummating the transaction, Buyer (in each case only with the prior written consent of Seller) may communicate with Seller's customers solely regarding the proposed transaction; provided that in all instances Buyer shall not engage in any such communications without a representative from Seller in copy or in attendance. The parties expressly acknowledge that it is Buyer's intent to meet, in person or virtually at Buyer's election and as circumstances dictate, with every client of the Remodel Business, as soon as possible hereafter as part of diligence, and Seller agrees to take commercially reasonable efforts to facilitate and promote this occurring. In each case, Seller shall take commercially reasonable efforts to facilitate the current lead of the applicable division of the Remodel Business, corresponding to each client, being available, timely, on reasonable notice, for these meetings, and attending. Seller may designate additional attendees, or if the applicable current lead is unavailable, alternative attendees, at all such meetings, also to be available on reasonable notice.

15.       Term. This agreement shall terminate 45 days after the date hereof unless agreed by the parties or otherwise extended by action of the bankruptcy court (including pursuant to any court-ordered marketing process).

16.       Governing Law; Binding Effect. This letter agreement shall be governed by the substantive laws (and not the laws of conflict) of the State of New York. The parties hereto agree and consent that jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby shall be, for so long as the Bankruptcy Cases are continuing, the Bankruptcy Court, and thereafter, the state or federal courts located in borough of Manhattan, New York City, New York. This letter agreement may be executed in two or more counterparts (any of which may be by facsimile signature), all of which taken together will constitute one binding agreement to the extent provided herein.

*  *  *

*Execution Version; Privileged & Confidential; Subject to FRE 408*

17.     Key Contacts; etc.  If you have any questions concerning this letter of intent, please do not hesitate to contact us.

Sincerely,

_____
David C. Tedesco, for TNC Property Holdings IV, LLC


_____
Alejandro Castro, for ONX Inc.


ACCEPTED AND AGREED,
FOR THE SELLER


By: _____

Name: _____

Title: _____

17. Key Contacts; etc. If you have any questions concerning this letter of intent, please do not hesitate to contact us.

Sincerely,

_____
David C. Tedesco, for TNC Property Holdings IV, LLC

_____ 6/7/21
Alejandro Castro, for ONX Inc.

ACCEPTED AND AGREED,
FOR THE SELLER

By: _____

Name: _____

Title: _____

17.    Key Contacts; etc.  If you have any questions concerning this letter of intent, please do not hesitate to contact us.

Sincerely,

_____
David C. Tedesco, for TNC Property Holdings IV, LLC

_____
Alejandro Castro, for ONX Inc.

ACCEPTED AND AGREED,
FOR THE SELLER

By: _____

Name: _____

Title: _____

**<u>Schedule A</u>**

**Cash Collateral Split Jobs**

| Job | Restricted Cash Amount | Percentage Complete | Buyer / Seller Cash Collateral Split |
|---|---|---|---|
| Village Pointe | $2,610,812 | 89.1% | 10% / 90% |
| Fort Vancouver Terrace (Letters of Credit) | $615,157 | 63.8% | 30% / 70% |
| Fort Vancouver Terrace (Escrow) | $370,578 | 63.8% | 30% / 70% |
| Dorie Miller | $801,801 | 15.2% | 30% / 70% |
| Whittell Pointe | $1,237,097 | 10.6% | 30% / 70% |
| Butte Affordable – 1 (Silver Bow Homes) | $2,949,000 | N/A | 30% / 70% |
| Butte Affordable – 2 (Leggat, Elm and Rosalie) | $1,519,000 | N/A | 30% / 70% |

## Schedule B

### Non-Rejected Jobs

| Job Number | Job Name |
|---|---|
| 7525 | MD-VERONAINTERIORS% |
| 7526 | MD-SKYVIEWINTERIORS% |
| 7743 | MD-CANTERWOODINTERIORS% |
| 7744 | MD-FOXRIDGEINTERIORS% |
| 7887 | M-CAP-CAPRI-INT |
| 7888 | M-CAP-THECOMMONSINT |
| 7889 | M-CAP-PARKWAY-INTERIORS |
| 7961 | M-CAP-CAPRIEXTERIOR |
| 7962 | M-CAP-THECOMMONSEXT |
| 7984 | WS-LASERENAINTERIORS |
| 7995 | M-CAP-PARKWAY-EXTERIOR |
| 8066 | M-CAP-CAPRIMOCKUP |
| 8067 | M-CAP-THECOMMONSMOCK |
| 8068 | M-CAP-PARKWAYMOCKUP |
| 8088 | M-CAP-LYRICMOCKUPS |
| 8093 | CA-COLLECTION@RIVESIDE |
| 8104 | M-CAP-LYRICINTERIORS |
| 8148 | CA-RENAISSANCEATCANYONSPRINGS |
| 8179 | M-CAP-CAPRIAMENITIES |
| 8196 | M-CAPRIFIRE |
| 8205 | M-CAP-LAENTRADAINTEXT |
| 8219 | RC-VILLAS@STONEBRIDGEPAINT#131 |
| 8279 | MA-CAP-PRESCOTTLAKESMOCKUPS% |
| 8280 | MA-CAP-PRESCOTTLAKESINTERIORS |
| 8282 | MA-CAP-PRESCOTTLAKESAMENITIES |
| 8305 | M-CAP-CAPRIFITNESS |
| 8347 | RC-MCDERMOTTBLD26DRAINAGE |
| 8385 | M-LYRICFLOORING% |
| 8454 | WS-VILLASATTUSTININTERIORS |
| 8494 | WS-LASERENAINTERIORS2 |
| 8498 | WS-CREEKSIDEALTALOMAINTERIORS |
| 8505 | WS-LA78INTERIORS |
| 8512 | M-HOLLADAYON9THINTERIORS |

| 8515 | M-ASPENWOODINTERIORS |
|------|---------------------|
| 8516 | M-HIDDENCOVEINTERIORS |
| 8518 | 3MA-PARKVILLAGEINTERIORS |
| 8520 | MA-WATERSTONEINTERIORS |
| 8521 | MD-CHEYENNECROSSINGINTERIORS |
| 8543 | W-TOWER801INTERIORS |
| 8544 | W-LIONSGATENORTHINTERIORS |
| 8557 | MD-FOXRIDGEAMENITIES2 |
| 8563 | SE-TRELLISLAKEWASHERDRYER |
| 8567 | SE-Crosswynde Exteriors |
| 8568 | MD-AXISINTERIORSADDITIONALSOW% |
| 8577 | MW-ADDISONATPRINCETONMEADOWSIN |
| 8600 | TUR - Job Cost Accruals & Adj |
| 8637 | TRELLISLAKESEXTERIORS |
| 8640 | SE-GRANDRESERVEKIRKMANPARKEEXT |
| 8656 | TRELLISLAKESINTERIORS2 |
| 8657 | TRELLISLUXURYINTERIORS2 |
| 8661 | SE-GABLESMONTECITOINTERIORS |
| 8662 | SE-CROSSWYNDEINTERIORS |
| 8688 | MW-SUMMITHILLINTERIORS |
| 8700 | SE - Job Cost Accruals & Adj |
| 8701 | CA-CAP-MONTERONEINTERIORS |
| 8703 | CA-CAP-MONTERONEMOCKUPS |
| 8718 | W-CLUBPACIFICAINTERIORS |
| 8734 | SE-CROSSWYNDEINTERIORMOCKUPS |
| 8738 | MA-CRESCENTPHASEIIBAZV |
| 8739 | MA-CRESCENTPHASEIBAZV |
| 8746 | JC - Monterone FF&E Design |
| 8747 | JC- The Landry Leas. Design |
| 8748 | JC - CreekoCall Design |
| 8756 | CD-FLATSATTHESAWYERINTERIORS |
| 8765 | SE-GRANDRESERVEATKIRKMANPARKE |
| 8768 | MD-ARCADIAFLOODUNITS |
| 8774 | SE-BELAIRE@BRSERVICETICKETJOB |
| 8777 | SE-GABLESMONTECITOINTMOCKUPS |
| 8778 | WS-HARVARDVILLAINTERIORS2 |
| 8791 | WN-LODILEASING |
| 8814 | SE-GRANDRESERVEKIRKMANPKINTMU |

| 8816 | WS-THEMADRIDINTERIORS |
| 8824 | JC Design Moda Common |
| 8825 | WN-CLUBPACIFICAMOCKUPS |
| 8826 | SE-LINKHORNBAYINTERIORS |
| 8841 | .SE-MONTEVERDEEXTERIORS |
| 8843 | DESIGN-PRECONTRACT-MATERIAL |
| 8847 | CD-FLATSATTHESAWYERLEASING |
| 8855 | MA-THELEGENDATKIERLANDINTERIOR |
| 8856 | MA-THELEGENDATKIERLANDMOCKUP |
| 8857 | MA-THELEGENDATKIERLANDEXTERIOR |
| 8858 | MA-THELEGENDATKIERLANDAMENITY |
| 8859 | MA-THETRADITIONATKIERLANDINT |
| 8860 | The Tradition at Kierland |
| 8861 | MA-THETRADITIONATKIERLANDEXT |
| 8862 | MA-THETRADITIONATKIERLANDAMT |
| 8864 | MA-PORTROYALPHASEIHUD |
| 8865 | MA-PORTROYALPHASEIBAZV |
| 8866 | MA-CRESCENTPHASE1HUD |
| 8869 | MA-SUMMITVISTABAZV |
| 8870 | WS-THEMADRIDINTERIORMOCKUPS |
| 8896 | MA-PRESCOTTLAKESINTERIOROTHER |
| 8904 | MA-DESERTCLUBINTERIORS |
| 8905 | MA-CABRILLOINTERIORS |
| 8906 | MA-CasaSantaFe |
| 8908 | WS-ATRIAWOODBRIDGEINTERIORS |
| 8914 | WS-CHATHAMVILLAGEAPPLIANCES |
| 8918 | CD-LOFTSATTHESAWYERLEASING |
| 8919 | CD-LOFTSATTHESAWYERINTERIORS |
| 8927 | SE-LINKHORNBAYINTERIORMOCKUPS |
| 8938 | JC - PLATINUMLAKELINECLUB |
| 8976 | MA-CASASANTAFEINTMOCKUPS |
| 8980 | CD-OTTO(CANTERACREEK)@EXT |
| 8983 | CD-OTTOCANTERACREEK1&2INT |
| 8984 | CD-AVASOUTH(CASTLEROCK)EXT |
| 8985 | CD-AVASOUTHCASTLEROCKINT |
| 8986 | Firefly Lantern Exterior |
| 8987 | CD-FIREFLYAPTSTHELANTERNINT |
| 8988 | CD-AVAN(VIVE)EXT |

| 8989 | CD-AVANORTHTHEVIVEINT |
| 8990 | WS-AGAVERIDGE |
| 8999 | CD-SOHOINTERIORS |
| 9017 | WS-CAP-SLEEPYHOLLOWINTERIORS% |
| 9022 | WS-SURFSIDEVILLASINTERIORS |
| 9024 | WS-TARZANATERRACEINTERIORS |
| 9053 | WS-PROMENADETOWERSINTERIORS2 |
| 9055 | WS-SURFSIDEVILLASINTERIORS2 |
| 9070 | WN-LAWRENCEROADAPARTMENTSINT |
| 9073 | WN-SKYLINEINTERIORS |
| 9075 | WN-BELLAVISTAINTERIOR% |
| 9076 | WN-THECARLYLEINTERIOR% |
| 9081 | LOWRYPARKINTERIORS% |
| 9093 | WS-AGAVERIDGE2 |
| 9095 | SE-TRELLISATTHELAKESEXTERIOR |
| 9109 | WS-PALMDALEINT |
| 9112 | WS-LASERENAINTERIORSPHASE2 |
| 9113 | SE-LINKHORNBAYWDRETROFITMOCKUPS |
| 9125 | MD-THEBLUFFSATCASTLEROCKINTERIORS% |
| 9131 | SE-GRANDRESERVESTUCCO |
| 9132 | SE-GRANDRESERVEHOA |
| 9145 | WN-WOODLANDMEADOWINTERIORS |
| 9146 | WN-VILLATORINOINTERIORS |
| 9149 | MW-ADDISONATPRINCETONMEADOWSAMT |
| 9151 | CD-CANTERACREEK@LHPHASE1INTMU |
| 9153 | WS-LA78EXTERIORS |
| 9177 | W-LIONSGATENORTHINTERIORS2 |
| 9178 | WS-CAP-SUNSETCOVEINTERIORS |
| 9181 | JC -DesignRedbridgeCollegeTown |
| 9182 | JC-DESMidtownLeasing |
| 9188 | MA-LAENTRADAINTERIORS2 |
| 9189 | WS-SUNSETPLAZAINTERIORS |
| 9190 | WS-AGAVERIDGEROOFING |
| 9200 | MW-THOUSANDOAKSVILLAGEEXTERIORS |
| 9203 | WN-PLEASANTHILLVILLAGEINTERIORS |
| 9210 | CD-OTTOEXTERIORS |
| 9211 | CD-AVAEXTERIORS |
| 9212 | CD-FIREFLYEXTERIORS |

| | |
|---|---|
| 9223 | CD-OTTOROOFING |
| 9224 | CD-AVANORTHROOFING |
| 9225 | CD-FIREFLYROOFING |
| 9234 | SE-MIZNERPARKINTERIORS |
| 9240 | CD-OTTOAMENITIES |
| 9241 | CD-AVANORTHAMENITIES |
| 9242 | CD-FIREFLYAMENITIES |
| 9243 | MD-THEWILLOWSATPRINTERSPARKINTERIORS% |
| 9245 | CD-AVAEXTERIORS2 |
| 9258 | COM-KANDLETI |
| 9274 | MW-GROVEPOINTEINTERIOR |
| 9282 | CD-AVASOUTHAMENITIES |
| 9284 | CD-AVANORTHLANDSCAPE |
| 9285 | CD-AVASOUTHLANDSCAPE |
| 9286 | CD-FIREFLYLANDSCAPE |
| 9287 | CD-OTTOLANDSCAPE |
| 9292 | WS-MIDVALELUXURYAPARTMENTSINTERIOR |
| 9299 | SE-MIZNERPARKAPARTMENTSCLUBHOUSE |
| 9333 | CD-4804HAVERWOODINTERIOR |
| 9335 | CD-THEOAKSOFNORTHDALLASINTERIOR |
| 9342 | COM-SOUTHTACOMAHONDA |
| 9351 | 3WS-LACORONADELNORTEINTERIOR |
| 9354 | MW-WINDSORLAKESMOCKUP% |
| 9364 | SE-MIDTOWNCROSSINGINTERIOR |
| 9365 | SE-WATERFORDCREEKINTERIOR |
| 9368 | CD-BLUFFSATVISTARIDGEINTERIOR |
| 9371 | CD-SPRINGPOINTEAPARTMENTSINTERIOR |
| 9395 | SE-LINKHORNBAYINTERIORSPHASE2 |
| 9407 | MA-LEGENDATKIERLANDINTERIOR |
| 9408 | MA-TRADITIONATKIERLANDINTERIOR |
| 9413 | SE-1070MAININTERIOR |
| 9415 | SE-PLANTATIONSATHAYWOODINTERIOR |
| 9421 | CA-VILLASATROGERSRANCHINTERIOR |
| 9422 | CA-MONTERONEAPARTMENTSINVESTORINTERIOR% |
| 9426 | M-SOLISATFLAMINGOINTERIOR |
| 9446 | CD-AVASOUTHROOFING |
| 9452 | SE-MIZNERPARKINTERIORSMOCKUP |
| 9456 | MA-RIVIERAVILLAGEINTERIOR |

| | |
|---|---|
| 9457 | WS-PLAYA SUMMIT INTERIOR (FKA: THE HEIGHTS) |
| 9460 | WS-ATRIUMCOURTAPARTMENTSINTERIOR |
| 9468 | State Thomas Ravello |
| 9469 | SE-GRANDRESERVEATKIRKMANPARKSTAIRS% |
| 9476 | MW-STMARTINSAPARTMENTSINTERIOR |
| 9477 | W-STMARTINSAPARMENTSEXTERIOR |
| 9479 | MW-WINDSORATHARPERSCROSSINGAPARTMENTSEXTERIOR |
| 9486 | SE-TRELLISLAKEWASHERANDDRYER |
| 9489 | HUE 97% |
| 9493 | SE-COBBLESTONEONTHELAKEEXTERIOR |
| 9512 | WS-SEASIDELAGUNAPHASE1INTERIOR |
| 9540 | WS-PACIFICAVENUEINTERIOR |
| 9541 | SE-RETREATATRIVERPARKINTERIORMOCKUP |
| 9543 | CD-BLUFFSATVISTARIDGEINTERIORMOCKUP |
| 9544 | SE-WATERFORDCREEKINTERIORMOCKUP% |
| 9546 | SE-PLANTATIONSATHAYWOODINTERIORMOCKUP% |
| 9547 | SE-1070MAININTERIORMOCKUP% |
| 9550 | CD-THEOAKSOFNORTHDALLASINTERIORMOCKUP |
| 9551 | CD-SPRINGPOINTEAPARTMENTSINTERIORMOCKUP% |
| 9554 | MW-SUNCRESTVILLAGEINTERIOR |
| 9572 | WS-BARHAMVILLASINTERIORS% |
| 9574 | SE-POINTEATCRABTREEINTERIOR |
| 9576 | MW-WINDSORATHARPERSCROSSINGAPARTMENTSINTERIOR |
| 9577 | MW-WINDSORATHARPERSCROSSINGAPARTMENTSMOCKUP |
| 9589 | CD-MOCKINGBIRDFLATSINTERIOR% |
| 9590 | CD-LAKESHOREATPRESTONINTERIOR% |
| 9592 | CD-CREEKSIDEATLEGACYINTERIOR% |
| 9595 | MA-SUMMITVISTACLUBHOUSEAMENITY |
| 9596 | MA-HUE97AMENITIES |
| 9597 | MA-HUE97INTeriors |
| 9609 | MD-TANGLEWOODINTERIOR |
| 9610 | MD-SUMMERGROVEINTERIOR |
| 9611 | CA-THEARCHESINTERIOR |
| 9612 | CA-THEARCHESEXTERIOR |
| 9613 | CA-BIRCHLEAFINTERIOR |
| 9614 | CA-BIRCHLEAFEXTERIOR |
| 9615 | CA-THEHERWECKINTERIOR |
| 9616 | CA-THEHERWECKEXTERIOR |

| 9619 | CA-THEQUARTERINTERIOR |
| 9620 | CA-THEQUARTEREXTERIOR |
| 9621 | CA-TARAAPTSINTERIOR |
| 9622 | CA-TARAAPTSEXTERIOR |
| 9628 | MA-SAHARAAPTSAMENITY |
| 9629 | SE-RIVOLIRUNMOCKUP% |
| 9635 | CD-CAPITOLATSTONEBRIARCLUBHOUSE |
| 9643 | SE-KESWICKVILLAGEMOCKUP |
| 9644 | SE-TRADITIONSATAUGUSTAMOCKUP% |
| 9645 | SE-PARKATNORTHISDEMOCKUP% |
| 9646 | SE-GROVEATSTONEBROOKMOCKUP% |
| 9647 | SE-POINTEATCRABTREEMOCKUP |
| 9650 | MD-TANGLEWOODEXTERIOR |
| 9651 | MD-SUMMERGROVEEXTERIOR |
| 9652 | MW-VIEWONNOBHILLINTERIOR |
| 9653 | WN-FOUNTAINPLAZAINTERIOR |
| 9656 | MA-TEMPOATMCCLINTOCKSTATIONEXT |
| 9657 | MA-TEMPOATMCCLINTOCKSTATIONINT |
| 9658 | MA-TEMPOATMCCLINTOCKSTATIONMOCKUP |
| 9670 | SE-STONERIDGEFARMS@HUNTCLUBINTERIOR% |
| 9671 | MD-GRAMMERCYAPTSINTERIOR |
| 9682 | MW-WHISPERINGHILLSAPTS |
| 9684 | CD-FOXGLOVEINTERIOR |
| 9685 | FOXGLOVE EXTERIOR |
| 9687 | SE-WATERSIDEGREENEINTEXT |
| 9705 | CA-TARAAPTSROOFING |
| 9714 | MA-TEMPO@MCCLINTOCKSTATIONMGMT |
| 9716 | MW-VIEWONNOBHILLEXTERIOR |
| 9717 | CD-FOXGLOVEROOFING |
| 9722 | WS-PHOENIXTOWNHOMESINTERIOR |
| 9723 | WN-BAYVILLAGEAPTSINTERIOR% |
| 9730 | MD-VENTANAAPTSINTERIOR |
| 9731 | WS-LANDING@LONGBEACHEXTERIOR |
| 9734 | CD-OTTOCANTERACREEK1&2RESTORATION |
| 9736 | CD-FIREFLYAPTSTHELANTERNRESTORATION |
| 9739 | SE-WATERSIDEGREENEMOCKUP |
| 9742 | MW-FAIRFIELDLAKESRESTORATION |
| 9744 | CD-SUNSETTERRACERESTORATION |

| 9746 | CD-STATETHOMASRAVELLOMOCKUPS% |
| 9755 | M-MIRASOLAPTSINTERIOR% |
| 9756 | M-FAIRWAYSONGREENINTERIOR% |
| 9760 | WS-SEASIDELAGUNAAMENITIES |
| 9761 | GRAMERCY ON THE PARKS MOCKUP - CD% |
| 9762 | GRAMERCY ON THE PARKS WASHER & DRYER - CD |
| 9774 | CREEKSIDE AT LEGACY W+D INT - CD |
| 9777 | SAHARA APTS INTERIOR - MA |
| 9781 | CLUB PACIFICA INT - WN |
| 9782 | GROVE POINTE MOCKUP - MW |
| 9785 | SAHARA APTS MOCKUP  - MA |
| 9786 | SAHARA APTS EXT PAINT  - MA |
| 9787 | BEAR CANYON AMENITY - MA |
| 9788 | BEAR CANYON EXT PAINT - MA |
| 9790 | ADDISON @ PRINCETOWN MEADOWS BLDG 19 -  MW |
| 9793 | ESA - 768 - WASHINGTON DC - ALEXANDRIA - LANDMARK |
| 9795 | ESA - 1600 - MIAMI - DORAL - 87TH AVE - HOSPITALITY |
| 9797 | ESA - 1740 - MIAMI - CORAL GABLES - HOSPITALITY |
| 9818 | WELLS BRANCH INTERIOR - CA% |
| 9819 | STONE CREEK INTERIOR - CA% |
| 9820 | SCOFIELD FARMS INTERIOR - CA% |
| 9826 | CC-PRECONSTRUCTION |
| 9827 | CCKS-PRECONSTRUCTION |
| 9828 | CCMJ-PRECONSTRUCTION |
| 9829 | DL-PRECONSTRUCTION |
| 9830 | DLCS-PRECONSTRUCTION |
| 9831 | DLRM-PRECONSTRUCTION |
| 9832 | JD-PRECONSTRUCTION |
| 9833 | JDDL-PRECONSTRUCTION |
| 9834 | JDKC-PRECONSTRUCTION |
| 9835 | JDSG-PRECONSTRUCTION |
| 9836 | JDSK-PRECONSTRUCTION |
| 9837 | JJ-PRECONSTRUCTION |
| 9838 | MJ-PRECONSTRUCTION |
| 9839 | CCSV-PRECONSTRUCTION |
| 9840 | JJSG-PRECONSTRUCTION |
| 9841 | MJMD-PRECONSTRUCTION |
| 9844 | ESTUARY APTS INT MOCKUP - SE |

| 9845 | THE ARCHES AMENITY - CA |
|------|------------------------|
| 9846 | BIRCHLEAF AMENITY - CA |
| 9848 | THE QUARTER AMENITY - CA |
| 9851 | COM  - FOXCONN RACINE |
| 9852 | TARA AMENITY - CA |
| 9869 | DOMAINE INTERIOR - CD |
| 9870 | FOXGLOVE AMENITY - CD |
| 9871 | PHOENIX TOWNHOMES INT MOCKUP - WS% |
| 9877 | \MONTELENA INT - CD |
| 9878 | THE RANCH INT - CD |
| 9879 | TANGLEWOOD CLUBHOUSE - MD |
| 9880 | SUMMER GROVE FITNESS CENTER - MD |
| 9883 | SUMMER GROVE ROOFING - MD |
| 9887 | SUMMER GROVE LEASING CENTER - MD |
| 9888 | SUMMER GROVE CLUBHOUSE - MD |
| 9896 | AVANA KNOX HENDERSON INT - CD |
| 9898 | POINTE AT CRABTREE METAL STAIR REPAIR & PAINT - SE |
| 9910 | WS-PHOENIXTOWNHOMESEXT-OTHER |
| 9911 | ELY @ CENTENNIAL HILLS CLUBHOUSE - M |
| 9912 | 180 WEST APTS INT MOCKUP - SE |
| 9913 | SILVERTREE APTS INT - SE |
| 9914 | PEPPERTREE APTS INT - SE |
| 9916 | DAMATO TOWNHOMES INT - SE |
| 9917 | COM - 333 WEST FIRST STREET BUILDING |
| 9929 | WN-PLEASANTHILLVILLAGEMANAGERS |
| 9935 | WS-LANEWOODPINESINT2 |
| 9937 | WS-MUSEUMTERRACEINTERIORSMAIN |
| 9943 | WS-SUNSETPLAZAINTERIORS2 |
| 9944 | WS-SURFSIDEVILLASINTERIORSMAIN |
| 9946 | MA-RIVIERAVILLAGEEXTERIORS |
| 9947 | El Cortez |
| 9948 | MA-ELCORTEZEXTERIORS |
| 9951 | JC-DESIGN SOHO Exterior Paint |
| 9955 | JC-DESEastHoustonDevelopmenthotel |
| 9957 | JC-DESAVANORTH |
| 9958 | JC-DESLH-FIREFLYAMENITY |
| 9959 | JC-DESIGN.The Capitol.Signage |
| 9960 | JC-DESIGN WINSORLAKESMODEL |

| | |
|---|---|
| 9961 | JC- DESIGN AVASOUTH |
| 9963 | JC-CAPITOL AMENITIES |
| 9964 | JC - DESOYOHOTEL |
| 9966 | JC-DESRIVERIAEXTERIOR |
| 9967 | JC - DESGROVEPARKLEASING |
| 9969 | JC - DES1000SBroadwayLeasing |
| 9970 | JC-DES PIA CRYSTAL LAKE AMENITY |
| 9971 | DESTANGLEWOODMODEL |
| 9972 | DESSUMMERGROVEMODEL |
| 9976 | ROSALIA DR INT - WS |
| 9977 | ABOURNE ROAD INT - WS |
| 9980 | LOFTS @ 7100 INT MOCKUP - M |
| 9981 | LOFTS @ 7100 EXT - M |
| 9982 | SUMMERWOOD INT - WN |
| 9987 | RIVER CROSSING INT - SE |
| 9994 | CRESCENT RIDGE ADD ON - MA |
| 9995 | CRESCENT RIDGE 2 ADD ON - MA |
| 10002 | JC-DES.SUMMERGROVELEASINGCLUBFIT |
| 10003 | JC-DES.TANGLEWOOD.CLUB |
| 10012 | CAMBRIDGE @ HICKORY HOLLOW INT + EXT - SE |
| 10015 | JC-DESBOBOTEA |
| 10016 | MOCKINGBIRD FLATS OUT OF SCOPE ITEMS-CD% |
| 10020 | CHARLOTTE 360 INT - SE |
| 10021 | DORAL APTS INT - SE |
| 10023 | DES - FPIMGTENCLAVEINTERIOR |
| 10024 | DES-FPIMGTENCLAVEEXTEIORAMENITIES |
| 10026 | CITY HEIGHTS NORTH INT - C |
| 10031 | LIBERTY TOWERS INT - MW |
| 10032 | AMARA INT - MA |
| 10033 | AMARA EXT - MA |
| 10036 | CITY HEIGHTS NORTH EXT - C |
| 10037 | .WN-FOUNTAINPLAZAINTERIOR2 |
| 10038 | WS-PORTOFINOTOWNHOMES |
| 10041 | AUTUMN BROOK APTS INT - SE |
| 10047 | THE LENNOX APT INT - SE% |
| 10050 | CITI ON CAMELBACK INT - MA |
| 10063 | TRIBECA NORTH EXT - MA |
| 10070 | EDGE @ NODA INT - SE |

| 10071 | SAGE POINTE INT - SE |
| 10072 | TRYON FOREST INT - SE |
| 10073 | BRADFORD COMMONS INT - SE |
| 10074 | PONDEROSA APTS INT - SE |
| 10077 | BOULDER VIEW APTS INT - M |
| 10078 | DES-TheEastHotelDesignCommon |
| 10091 | KIDDIE ACADEMY COLORADO - COM |
| 10092 | KIDDIE ACADEMY NEVADA - COM |
| 10095 | JC-DESIGNTHECAPITOLCAVE |
| 10097 | 1177 RACE STREET INT - M |
| 10098 | RIVER RIDGE EXT - SE |
| 10100 | LAKESHOREATPRESTONW+D - CD |
| 10101 | AVANA KNOX HENDERSON MOCKUP INT - CD |
| 10102 | DOLCE VILLAGIO TOWNHOMES MOCKUP INT - MA |
| 10104 | AMERICAN CAN APTS MOCKUP INT - C |
| 10107 | ALISTER NANUET INT - SE |
| 10111 | DES-SAHARALEASINGEXTERIOR |
| 10120 | PINES @ PINEHURST INT - MD |
| 10127 | 2800 CAPITAL SQUARE APTS INT - SE |
| 10128 | 2800 CAPITAL SQUARE APTS EXT - SE |
| 10131 | PINES @ PINEHURST EXT - MD |
| 10134 | SETTLERS RIDGE APT INT - C |
| 10141 | 333 S FIRST - SF |
| 10142 | SAN CARLOS INT - MA |
| 10143 | RENO CITY CENTER - COM |
| 10145 | THE LENNOX APT INT MAINTENANCE - SE |
| 10147 | WATERFORD PLACE INT - W |
| 10148 | RESERVE @ BEACHLINE INT - SE |
| 10149 | 14612-14654 BLYTHE INT - W |
| 10151 | 15125 SATICOY VAN NUYS  INT - W |
| 10153 | 21205 - 21215 SATICOY CANOGA PARK INT - W |
| 10155 | 6706 HAYVENHURST AVE INT - W |
| 10157 | 8503 TOBIAS INT - W |
| 10159 | 9010 TOBIAS INT - W |
| 10161 | 9014, 9022, 9034 ORION INT - W |
| 10169 | RIVER RIDGE MOCKUP - SE |
| 10171 | TRELLIS STAIRS & BALCONIES - SE |
| 10178 | NEW CAMBRIDGE APTS INT - SE |

| | |
|---|---|
| 10191 | LEDGEWOOD APTS RESTORATION - SE |
| 10192 | CROSSWYNDE APTS ROOFING - SE |
| 10195 | 1060 LOGAN ST INT - MA |
| 10198 | SEASIDE MISC REPAIRS - WS% |
| 10201 | VERONA APTS INT - MA |
| 10202 | VERONA APTS EXT - MA |
| 10204 | REYNOLDS RANCH SENIOR - COM |
| 10205 | RANCHARRAH SENIOR - COM |
| 10206 | ALISTER NANUET MOCKUP INT - SE |
| 10215 | RIVER RIDGE INT- SE |
| 10217 | DOLCE VILLAGIO TOWNHOMES CO MGMT - MA |
| 10219 | MONTELENA PHASE 2 INT - C |
| 10220 | THE RANCH PHASE 2 INT - C |
| 10221 | SAN CARLOS PHASE 2 INT - MA |
| 10226 | SKYLINE TOWERS APTS INT - MW |
| 10229 | 14732 BLYTHE INT - W |
| 10231 | SUMMERWOOD MOCKUP - WN |
| 10234 | SETTLERS RIDGE APT PHASE 2  INT - C |
| 10235 | MIL ON MAIN INT - W |
| 10236 | DAMATO TOWNHOMES PHASE 2 INT - SE |
| 10237 | WEST EAGLE GREEN INT - SE |
| 10239 | OTTO CANTERA CREEK  BURN UNIT - CD |
| 10247 | THE ARCHES COMMON AREAS - CA |
| 10248 | BIRCHLEAF COMMON AREAS - CA |
| 10249 | HERWECK HOUSE COMMON AREAS- CA |
| 10250 | THE QUARTER COMMON AREAS - CA |
| 10251 | TARA COMMON AREAS - CA |
| 10252 | TRELLIS DOWN UNITS - SE |
| 10253 | MEADOWS @ MERIDIAN INT - M |
| 10262 | RUNWAY APTS EXT - W |
| 10264 | THE ARBORS INT - W |
| 10266 | THE ARBORS AMENITY - W |
| 10276 | THE ANTHONY INT - C |
| 10277 | THE ANTHONY EXT - C |
| 10286 | THE RANCH AMENITIES - C |
| 10287 | ROSEMEADE TOWNHOMES INT - C |
| 10292 | 2330 MONROE APTS INT - W |
| 10293 | ADDISON @ PRINCETON MEADOWS AMTY - MW |

| 10294 | THE LENNOX APT AMENITY - SE |
| 10297 | MARINA PLAYA CommReuse |
| 10298 | BAY TERRACE INT + EXT - W |
| 10300 | 4804 HAVERWOOD PHASE 2 - CD |
| 10301 | THE OAKS OF NORTH DALLAS PHASE 2- CD |
| 10302 | BLUFFS AT VSTA RDGE PH 2- C |
| 10304 | MIDTOWN CROSSING PHASE 2 - SE |
| 10305 | PLANTATIONS AT HAYWOOD PHASE 2 - SE |
| 10306 | 1070 MAIN PHASE 2 - SE |
| 10307 | RETREAT AT RIVER PARK PHASE 2 - SE |
| 10310 | HANOVER LANDING APTS INT - SE |
| 10314 | 255 NORTH INT - M |
| 10323 | MONTELENA AMENITY - CD |
| 10324 | 5128 MARATHON APTS INT - W |
| 10328 | MERIDIAN LUXURY CONDOS INT + EXT - SE |
| 10330 | DUTCH BROS COFFEE - COM |
| 10331 | GABLES UPTOWN TOWER INT + EXT - C |
| 10333 | WATERFORD PLACE INT MOCKUP - W |
| 10334 | PRESLEY UPTOWN AMENITIES - SE |
| 10335 | JC-DESIGN CAPGRO. 620 THE YARD |
| 10342 | FOUNTAINS @ STEEPLECHASE INT - C |
| 10343 | VININGS INT + EXT - SE |
| 10345 | MONTELENA PHASE 3 INT - C |
| 10347 | THE RANCH PHASE 3 INT - C |
| 10355 | STAYBRIDGE SUITES THE COLONY - COM |
| 10358 | LENOX PLACE INT - SE |
| 10359 | RIO @ LENOX INT - SE |
| 10360 | 743 @ HOWELL MILL APTS INT - SE |
| 10363 | SKYLINE TOWERS APTS MOCKUP INT - MW |
| 10366 | RESTORATION @ CANDLEWOOD - C |
| 10373 | WOODBRIDGE INTERIORS - WS |
| 10374 | ARIUM TOWNE LAKE INT + EXT - C |
| 10375 | HOUSTON INDUSTRIAL COMPLEX - COM |
| 10376 | HARBOR POINTE INT- SE |
| 10377 | CROSSWYNDE APTS AMENITY - SE |
| 10380 | FAIRFIELD INN & SUITES - RESTORATION - C |
| 10382 | SPRING VALLEY INT + EXT - W |
| 10388 | MAD DUCK CYCLING BUILDING - COM |

| 10389 | TRELLIS AT THE LAKES AMENITIES - SE |
|-------|-------------------------------------|
| 10391 | FOUNTAINS @ STEEPLECHASE  EXT - C |
| 10400 | SERENITY AT LARKSPUR INT + EXT - W |
| 10401 | ALISTER MORRISTOWN INT - SE |
| 10404 | RESTORATION @ CANDLEWOOD BUCU- C |
| 10414 | FOUNTAINS @ STEEPLECHASE CLUBHOUSE - C |
| 10415 | ESA - BOSTON - BURLINGTON - HOSPITALITY |
| 10429 | MAPLE DISTRICT LOFTS EXT - C |
| 10441 | HARBOR POINTE PHASE 1 INT- SE |
| 10442 | THE VALE RESTORATION - MW |
| 10446 | THE VALE BUILD BACK - MW |
| 10448 | MW-1400LAKESHOREDROPEXMISC |
| 10454 | MENLO AT MUELLER REBUILD - C |
| 10455 | OXFORD NORTH REUSE - COM |
| 10456 | KEYSTONE APTS BUCU - MW |
| 10457 | 965 DEAN DRIVE - COM |
| 10458 | MAESTRO MED PLAZA - COM |
| 10459 | CROSSROADS AT THE GULCH INT -  SE |
| 10460 | JC-DESIGN-BASCOMAURIUMTOWNELAKE |
| 10461 | JC DESIGNS GABLES UPTOWN INT. |
| 10462 | JC-DES. CATALSST THE ARBORS EXT |
| 10464 | PRESLEY UPTOWN AMENITIES - SE - PRECON% |
| 10465 | TANGLEWOOD APTS INT + EXT - MW |
| 10466 | NORTHXNORTHWEST INT - SE |
| 10469 | SIERRA CHARLES APTS INT - M |
| 10470 | SAN CARLOS AMENITY - M |
| 10474 | LINCOLN GALLERIA INT + EXT - C |
| 10475 | LODGE @ LAKECREST INT - SE |
| 10476 | THE SQUARE @ FOREST ACRES INT + EXT - SE |
| 10479 | THE MARKS APTS INT - M |
| 10480 | TRADITION @ PALM AIRE INT + EXT - SE |
| 10481 | HARBORSIDE SUITES @ LITTLE HARBOR INT + EXT - SE |
| 10484 | INDEPENDENT BANK BUILDING - COM |
| 10486 | CREEKWOOD APTS INT - W |
| 10489 | LAKES @ RENAISSANCE EXT - C |
| 10490 | PARK 20 EXT - W |
| 10494 | HERITAGE ON THE RIVER INT + EXT - SE |
| 10495 | PRESERVE @ CEDAR RIVER INT + EXT - SE |

| 10497 | BELL ROHNERT PARK INT + EXT - W |
| 10498 | MCALPINE TERRACE INT - SE |
| 10500 | KEYSTONE APTS BUILD BACK - MW |
| 10501 | AMARA APTS AMENITIES - M |
| 10503 | VERIDIAN @ SANDY SPRINGS INT - SE |
| 10504 | RIVER VISTA INT - SE |
| 10505 | VILLAS @ ST JOHNS INT - SE |
| 10509 | SAN CARLOS EXTRA WORK - MA |
| 10513 | MEADOWS @ MERIDIAN AMENITIES - M |
| 10515 | RIACHI @ ONE21 EXT - C |
| 10517 | TUSCANY POINTE MOCKUP - SE |
| 10518 | LANDRY @ EAST COBB APTS INT - SE |
| 10520 | DES-JC BELL  RENNISSANCE INT.EXT |
| 10521 | RESERVE @ LAKE POINTE INT MOCKUP -  SE |
| 10522 | PARK @ LAKE MAGDALENE INT MOCKUP - SE |
| 10523 | TUSCANY POINTE @ TAMPA APTS HOMES INT MOCKUP - SE |
| 10524 | COURTYARD BY MARRIOTT FORT COLLINS - COM |
| 10525 | CREEKSIDE ON THE GREEN INT - C |
| 10526 | DES-JC-BELL ROHNERT PARK INT |
| 10527 | AIRLAN ARMS INT + EXT - M |
| 10529 | SPRING CREEK INT + EXT - M |
| 10530 | LEGACY @ CEDAR HILL INT - C |
| 10531 | GRANDE SEASONS APTS HOMES INT - C |
| 10532 | RIDGEVIEW APTS INT - C |
| 10533 | BOWMAN HEIGHTS APTS EXT - C |
| 10534 | THE WATERFORD APTS EXT - C |
| 10535 | TOWNE OAKS APTS EXT - C |
| 10536 | COLONY WEST APTS EXT - C |
| 10537 | CHAPEL RIDGE APTS EXT - C |
| 10538 | GRAND RESERVE @ KIRKMAN PARK EXT - SE |
| 10540 | PALOMINO PARK RESORT INT - M |
| 10541 | ADDISON PARK INT - SE |
| 10543 | ANTLERS APTS INT - SE |
| 10544 | ATWOOD EXT - C |
| 10547 | 401 ALTA MERE DR- COM |
| 10548 | ROUNDHILL TOWNHOMES INT - C |
| 10549 | OXFORD NORTH INT - W |
| 10550 | 1100 EXECUTIVE DRIVE - COM |

| 10551 | COOL SPRINGS @ FRISCO BRIDGES INT - C |
| 10554 | NORTHGATE PLAZA EXT - W |
| 10555 | THE GALLERY MIDTOWN INT OTHER - SE |
| 10556 | ALPIN PARK APTS INT + EXT - C |
| 10558 | ELEVATE APTS INT - M |
| 10559 | SAWYER MILL APTS INT + EXT - C |
| 10561 | SIERRA PARK APTS INT + EXT - C |
| 10562 | SETTLERS RIDGE APT REMEDIATION WORK - C |
| 10563 | MIRA VISTA HILLS INT - W |
| 10565 | FOX HILL INT + EXT - C |
| 10566 | BELL SOUTHPARK AMENITIES - C |
| 10567 | HIGHLANDS @ DEARBORN INT - SE |
| 10568 | FORTY200 APTS INT + EXT - C |
| 10569 | THIRTEEN 20 APTS INT + EXT - M |
| 10570 | LELARAY APTS INT + EXT - M |
| 10571 | ARLINGTON HILLS APTS INT - C |
| 10572 | WESTGATE APTS INT - C |
| 10573 | WOODCHASE APTS INT - C |
| 10574 | CLARENDON APTS INT - C |
| 10575 | WOODWIND APTS INT - C |
| 10576 | SKYLINE ATL APTS INT - SE |
| 10577 | LAKESHORE TOWERS INT - SE |
| 10578 | THE ELISE RESTORATION - C |
| 10579 | THE VIEW @ LAKE HIGHLANDS  RESTORATION - C |
| 10580 | THE HUE RESTORATION - C |
| 10581 | SIERRA CHARLES APTS EXT - M |
| 10582 | THE JONES - COM |
| 10583 | ASPEN HEIGHTS INT + EXT - C |
| 10584 | THE AUBERGE @ MISSOULA VALLEY - COM |
| 10585 | LITTLE ROCK RESORTMENTS COMMUNITY - COM |
| 10586 | HANGAR INT - C |
| 10587 | VISTAS @ CITADEL INT + EXT - M |
| 10588 | METRO INT + EXT - M |
| 10589 | TRIBECA NORTH LUXURY APTS INT + EXT - M |
| 10591 | BELLA MADERA AMENITIES - C |
| 10592 | ALISTER DECO INT - SE |
| 10593 | VILLAS @ WYLIE INT - C |
| 10594 | ALISTER GALLERIA PRECON - C |

| 71096 | JC-DESIGNMONTERONE MODEL |
|-------|--------------------------|
| 71097 | JC-DesignLakecreekleasing |
| 71099 | JC-Des2803 Riverside |
| 71100 | JC-DesignZyrtecKat |
| 71104 | JC-Design Edge55Pool |
| 71105 | JC-DesignMidtownLeasing |
| 71106 | JC- DesignLINKRed |
| 71107 | JC-DesignCollegetownRed |
| 71109 | JC-DESLinkLeasing |
| 71110 | JCDESIGN - LAKEHIGHLANDSSCHEME |
| 71111 | JCDES-LAKEHIGHLANDSOTTO AMENITIY |
| 71113 | JC - DESRedwoodArborsClub |
| 71114 | JC-DESIGN MODEROPOOL |
| 71116 | JC - DESTRIBECCAEXTPASINT |
| 71117 | DES - TANGLEWOODBBQ.DOGPARK |
| 71118 | DES-SUMMERGROVE-POOL-OUTDOOR |
| 71119 | JC-DESIGNSTATETHOMASUNITRENDER |
| 71120 | JC-DESCAPGROLIGHTCLUBLOGO |
| 71121 | JC-DESBASCOMSIERRACHARLES |
| 160 | CITY VIEWS AT ROSA BURNEY PARK |
| 171 | LIFE AT PARK VIEW |
| 175 | DARLINGTON, MILES & SHERWOOD APTS |
| 147 | SILVER BOW HOMES |
| 144 | WHITTELL POINTE |
| 151 | FRANKLIN PARK |
| 178 | BOULEVARD APARTMENTS |
| 168 | DORIE MILLER MANOR |
| 166 | LEGGAT, ELM & ROSALIE |
| 163 | FORT VANCOUVER TERRACE |
| 132 | JACKSON APARTMENTS |
| 159 | VILLAGE POINTE |
| 139 | GOLDEN WEST TOWERS |
| 104 | PARK AVENUE WEST APARTMENTS |
| 108 | Lawrence Avenue |
| 116 | Casa Del Sol |
| 136 | Vista Park I |
| 135 | Palm Court |
| 153 | Devonshire |

| 167 | Jackson Insurance |
|-----|-------------------|

**<u>EXHIBIT B</u>**

**CURE NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KATERRA INC., *et al.*,[1] | ) | Case No. 21-31861 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on June 15, 2021, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Private Sale of the Debtors' Renovation Business Free and Clear of All Liens, Claims, and Encumbrances, (II) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief* [Docket No. [●]] (the "Sale Motion")[2] with the United States Bankruptcy Court for the Southern District of Texas (the "Court") which seeks approval of, among other things, the assumption and assignment of certain Executory Contracts.

**PLEASE TAKE FURTHER NOTICE** that, as contemplated by the Sale Motion, the Debtors currently intend to assume and assign to the Purchaser the contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A** upon approval of the Sale. You are a counterparty to at least one Assigned Contract on the Assigned Contracts Schedule. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** (the "Cure Costs").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Purchaser of any Assigned Contract, or object to the ability of the Purchaser to provide adequate assurance of future performance with respect to any Assigned

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

Contract, your objection must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court **no later than 14 days following the date of service of this Cure Notice** at **4:00 p.m. (prevailing Central Time)** (the "Cure Objection Deadline"), in each case, and served on the following parties: (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Christine A. Okike, P.C. (christine.okike@kirkland.com), Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.: Josh Altman (josh.altman@kirkland.com) and Dan Latona (dan.latona@kirkland.com), and Kirkland & Ellis LLP, 3330 Hillview Avenue, Palo Alto, California 94304, Attn. Rodin M. Hai-Jew, P.C. (rodin.hai-jew@kirkland.com); and (b) the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn.:  Hector Duran and Jana Whitworth.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Purchaser's ability to perform is filed by the Cure Objection Deadline, as applicable, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Purchaser on the grounds that the Purchaser has not provided adequate assurance of future performance as of the closing date of the Sale, and (iv) the Court may enter an order approving the Sale without a hearing on the Sale Motion.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the inclusion of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Purchaser with respect to such Assigned Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Purchaser, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

Houston, Texas
June [●], 2021

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)

1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:        mcavenaugh@jw.com
              jwertz@jw.com
              mstull@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)

601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              christine.okike@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*