## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| KATERRA INC., *et al.*,[1] | ) ) Case No. 21-31861 (DRJ) |
| Debtors. | ) ) (Jointly Administered) ) |

## DEBTORS' MOTION
## FOR ENTRY OF AN ORDER (I) APPROVING
## THE PRIVATE SALE OF LORD AECK SARGENT PURSUANT TO
## 11 U.S.C. § 363 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE
## ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
## IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this motion (this "Motion") and in support thereof will file the *Declaration of Jay Weinberger in Support of the Debtors' Motion for Entry of an Order (I) Approving the Private Sale of Lord Aeck Sargent Pursuant to 11 U.S.C. § 363 of the Bankruptcy Code, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

*(III) Granting Related Relief* (the "Weinberger Declaration"). In support of this Motion, the Debtors state:

## Preliminary Statement

1.      By this Motion, the Debtors seek authority to consummate a private sale (the "Sale Transaction") of their Lord Aeck Sargent business ("LAS")—a leading and award-winning architecture, interior design, and planning firm based in Atlanta, Georgia—to an entity formed by certain employees, managers, and former owners of LAS, namely, Lord, Aeck Sargent Planning & Design, Inc. (the "Purchaser").[2] The Debtors acquired LAS in June 2018 to bolster their design expertise and footprint as part of their plan to fully integrate their design-build construction business. Following the acquisition, the original LAS team continued to manage and operate its business under the Katerra umbrella.

2.      In connection with the deterioration of the Debtors' business prior to the Petition Date, the Debtors sought any and all transactions to save their successful business operations, keep their employees employed, and reduce disruption for customers (which in turn would decrease rejection damages claims, and increase recoveries for unsecured creditors in these chapter 11 cases). As part of those efforts, the Debtors and the Purchaser—leading figures in the architecture-world and the driving force behind LAS's success—began to explore a transaction whereby the LAS management team would purchase the assets of LAS from the Debtors.

3.      Without the commitment of the Purchaser to move forward with the Sale Transaction, the Debtors were seriously considering an imminent closure and liquidation of LAS,

---

[2]   For the reasons set forth herein, the assets subject to this Motion will not be subject to the sale and auction process described in the *Debtors' Motion for Entry of (A) an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures, and (B) an Order Authorizing the Debtors to Enter Into Definitive Purchase Agreements* filed by Debtor Katerra, Inc. [Docket No. 30] (the "Bidding Procedures Motion").

which would have resulted in significant job losses, disruption of client projects, and substantial claims against the Debtors' estates resulting from the rejection of numerous contracts that will, subject to Court approval, instead be assumed and cured in conjunction with the Sale Transaction.

4.        Facing the wind-down and liquidation of the overall business, the Debtors viewed the discussion with the LAS management team as the only viable path forward.  Specifically, the LAS managers are intimately familiar with the business they operate and are able to move very quickly on definitive terms without due diligence outs.  Additionally, no other party can match the significant value proposition unlocked by the participation in the business of the LAS managers— one of whom is a named founder in "Lord Aeck Sargent."  Absent approval of the Sale Transaction, the Debtors believe these individuals would simply start a new architectural design firm.

5.        Accordingly, the Debtors determined that the best (and perhaps only) option was to promptly engage in arm's length, robust negotiations with the Purchaser's representatives regarding mutually agreeable sale terms in order to preserve value for all stakeholders.  The Debtors and the Purchaser agreed on terms that will allow the Debtors to access liquidity in the near-term, preserve approximately 115 jobs, cap administrative costs, shed operational liabilities, and do right by LAS's vendors, suppliers, and customers.  Absent consummation of the Sale Transaction, the Debtors would face continued negative cash flow, wind-down costs, and employee obligations.  For these reasons, the Debtors believe that entering into the transaction is a sound exercise of their business judgment and value-maximizing for creditors.  The Debtors do not believe a third-party purchaser is likely to invest in this business under the circumstances.

6.        Specifically, as consideration for the Sale Transaction, the Purchaser has agreed to total consideration paid to the Debtors of approximately $2 million to $5 million comprised of (a) approximately $1.7 million of cash and (b) approximately $1.5 million to $3 million of

Assumed Liabilities. Additionally, the Debtors will avoid exposure to approximately $3 million of contractual liabilities as part of the Purchaser's assumption of ongoing projects, plus additional claims from other parties participating in LAS's projects.

7.     The following is a summary of the key terms and conditions of the Sale Transaction set forth in that certain Term Sheet attached hereto as **Exhibit A**.[3]

| Scope of Transaction | Purchaser will acquire substantially all of the assets (the "Acquired Assets") and assume certain liabilities (the "Assumed Liabilities") subject to some excluded (the "Excluded Assets") or assume certain liabilities (the "Excluded Liabilities"). |
|---|---|
| **Purchase Price** | The Purchase Price is $1,655,862 in cash, plus (i) Assumed Liabilities, plus (ii) any Cure Costs for assumed contracts and leases, plus (iii) any unpaid Undetermined Contract Obligations. |
| **Deposit** | ▪ A Deposit of $700,000 paid within 5 days of execution of the Term Sheet, pursuant to the following terms:<br>  ▪ To be funded into a segregated escrow;<br>  ▪ The Deposit shall be applied to the Purchase Price upon Closing; and<br>  ▪ In the event Purchaser breaches obligations under the Term Sheet, the Deposit will be held in escrow subject to a determination of damages or agreement between the parties.<br>▪ In the event that Seller closes sale to another party, Deposit will be returned to Purchaser as soon as reasonably practicable. |
| **Employees and Integration** | ▪ Purchaser and Seller will work in good faith to facilitate transition of (i) all employees that the Purchaser intends to keep and (ii) any contracts and leases that Purchaser intends to assume.<br>▪ Purchaser will be liable for any contract costs incurred by Seller to maintain contracts until assumption or rejection of such contracts. |

In addition, the Term Sheet includes a standard "fiduciary out" to ensure the Debtors are maximizing the value of their estates through the Sale Transaction.

8.     In connection with the relief sought herein, the Debtors will file a purchase agreement (as may be amended, supplemented, or otherwise modified from time to time,

---

[3]     The following summary chart is included for the convenience of the Court and parties. To the extent this summary conflicts with the Term Sheet, the Term Sheet shall govern. Capitalized terms used in this summary chart but not otherwise defined herein shall have the meanings ascribed to them in the Term Sheet.

the "Purchase Agreement") memorializing the terms of the Term Sheet and the Sale Transaction as soon as reasonably practicable.

9.      In the Debtors' business judgment, the Sale Transaction is fair, reasonable, and the best available option to maximize value for the Debtors and all stakeholders.

## Relief Requested

10.     The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto:   (a) authorizing   (i) the   private  sale  of  LAS  free  and  clear  of  liens,  claims,  and encumbrances,  (ii) the Debtors to enter into and perform under the Sale Transaction pursuant to the Purchase Agreement to be filed with the Court, and (iii) the Debtors to assume and assign the Assigned Contracts pursuant  to  the Assumption  and Assignment  Procedures;  and  (b) granting related relief.

## Jurisdiction and Venue

11.     The  United  States  Bankruptcy  Court  for  the  Southern  District  of  Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The statutory bases for the relief requested herein are sections 105, 363, and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002 and 6004, and rules 1075-1, 4002-1(e), 6004-11, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

14.     Katerra Inc., together with its Debtor and non-Debtor subsidiaries ("Katerra"), is a technology-driven construction company that develops, manufactures, and markets products and services in the commercial and residential construction spaces.  Katerra delivers a comprehensive suite of products and services for its clients through a distinct model that combines end-to-end integration with significant investment in technological and design innovation.  Katerra offers services to its clients through three distinct offerings:  (a) end-to-end new build; (b) construction services; and (c) renovations.  Katerra has approximately 6,400 employees who are primarily located in nine countries.  In the year ending 2020, Katerra's operations generated revenue of approximately $1.75 billion.

15.     On June 6, 2021 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Marc Liebman in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 37] and in the *Declaration of Matthew R. Niemann in Support of (A) DIP Financing and (B) All First Day Relief* [Docket No. 40] (the "First Day Declarations") filed on the Petition Date and incorporated by reference herein.[4]  As described in more detail in the First Day Declarations, the Debtors commenced these chapter 11 cases in the face of a liquidity crisis and with the goal of facilitating a marketing and sale process for their assets to maximize value and creditor recoveries.

16.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 7,

---

[4]     Capitalized terms used but not yet defined in this Motion shall have the meanings given to them in the Term Sheet or the First Day Declarations, or later in this Motion.

2021, the Court entered an order [Docket No. 38] authorizing procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Basis for Relief

**I.**     **The Sale Transaction and the Debtors' Entry into the Purchase Agreement Should Be Approved as an Exercise of the Debtors' Sound Business Judgment.**

17.     Under section 363(b) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[5] It is well-established in this jurisdiction that a debtor may sell estate property outside the ordinary course of business under this provision if there is a good business reason for doing so.[6] "Great judicial deference is given to the [debtor in possession's] exercise of business judgment" regarding the sale of estate property.[7] Once a debtor articulates a good business reason for the sale of estate property outside the ordinary course of business, it is presumed that the debtor's decision to move forward with the sale was made "on an informed basis, in good faith, and in the honest belief that the [transaction] was in the best interests of the [debtor] company."[8]

18.     Consummating the Sale Transaction and entering into the Purchase Agreement is a sound exercise of the Debtors' business judgment and maximizes value for their stakeholders. The

---

[5]     11 U.S.C. § 363(b)(1).

[6]     *See, e.g.*, *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re State Park Bldg. Grp., Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

[7]     *State Park Bldg. Grp.*, 331 B.R. at 254.

[8]     *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1990); *see Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("As long as [the sale of estate property] appears to enhance [the] debtor's estate, court approval of a [debtor in possession's] decision to [sell the property] should only be withheld if the [debtor's] judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.") (internal quotation marks and citation omitted).

Sale Transaction is the product of a robust, arm's length negotiation between sophisticated parties represented by able counsel. Selling the assets of LAS will provide additional liquidity to the estates at closing and relieve the Debtors of ongoing cash outlays and upkeep costs associated with ownership of the business while protecting LAS's customers and employees from any protracted delays or uncertainty in connection with these chapter 11 cases. The Debtors believe no further marketing of LAS's assets is necessary or would realistically increase the potential sales price for the benefit of Debtors and their estates in a similarly expedited timeline. Accordingly, the Debtors have determined that the proposed sale is the value-maximizing disposition of the business. In reaching this conclusion, the Debtors acted on an informed basis, in good faith, and with the honest belief that the Sale Transaction is in the best interests of the Debtors' estates. Accordingly, the Debtors submit that the sale of LAS's assets pursuant to the terms of the Purchase Agreement should be approved.

## II.  The Purchaser is a Good Faith Purchaser and Is Entitled to Full Protections Pursuant to Section 363(m) of the Bankruptcy Code.

19.     Because the Purchaser has acted in good faith, it is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale Transaction. Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.[9]

---

[9]    11 U.S.C. § 363(m).

Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the acquired assets if the order allowing the sale is reversed on appeal.  Purchasers are provided this protection so long as they purchased the assets in "good faith."[10]  Although the Bankruptcy Code does not define "good faith purchaser," the Fifth Circuit has stated that a good faith purchaser is one who (a) "purchases the assets for value, in good faith, and without notice of adverse claims" and (b) has not conducted itself in a way that "involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[11]  Courts generally conclude that a purchaser has acted in good faith as long as the consideration is adequate and reasonable and the terms of the transaction are fully disclosed.[12]

20.    Here, the Debtors engaged in good faith, arm's-length discussions with the Purchaser to reach an agreement with the Purchaser that would be mutually beneficial to both parties.  The Debtors and the Purchaser were each represented by separate counsel in connection with the negotiation and documentation of the Purchase Agreement.   A fair and transparent process, such as that conducted by the Debtors here, ensures the Sale Transaction is at arm's length, without collusion or fraud, and entered into in good faith.  Accordingly, the Debtors request that the Court determine that the Purchaser has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of good faith purchasers under section 363(m) of the Bankruptcy Code.

---

[10]    *Id.*

[11]    *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014).

[12]    *In re Abbotts Dairies*, 788 F.2d 143, 149–50 (3d Cir. 1986).

### III.     The Sale Transaction is Appropriate Under Bankruptcy Rule 6004.

21.     Bankruptcy Rule 6004(f)(1) permits a debtor to sell property of the estate outside of the ordinary course of its business by private sale.[13]   Courts generally afford debtors in possession broad discretion to determine the manner in which estate property is sold.[14]   Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code, *i.e.*, where the debtor articulates a good business reason for the sale.[15]   Bankruptcy courts have a "large measure of discretion" in determining, "based upon the facts and circumstances of the proposed sale," whether a private sale, as opposed to a public auction, is appropriate.[16]   In general, courts have approved private sales of less than all the assets of a debtor pursuant to section 363(b)(1) of the Bankruptcy Code as long as the debtor provides a valid business reason for not conducting an auction.[17]

22.     In an exercise of their sound business judgment, the Debtors have determined that consummating the Sale Transaction on a private basis is appropriate in light of the facts and

---

[13]   Fed. R. Bankr. P. 6004(f)(1); *see In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("[T]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

[14]   *See, e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998); *In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del. 1981).

[15]   *See, e.g.*, *In re Schipper*, 933 F.2d 513, 514 (7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as independent appraisal); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser").

[16]   *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995); *In re Blue Coal Corp.*, 168 B.R. 553, 564 (Bankr. M.D. Pa. 1994).

[17]   *See, e.g.*, *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex for $17.9 million); *In re W.R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line for approximately $22 million); *In re Solutia, Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

circumstances of these chapter 11 cases and is in the best interest of their estates and all parties in interest. An auction for LAS at this juncture is impractical and unlikely to yield more value for the Debtors' estates. Further, extending the sale timeline would likely cause additional strain on the Debtors' liquidity and potentially jeopardize the sale of LAS to any counterparty as customers explore alternative design firms, key employees seek alternative employment, and the Debtors risk "losses exponentially increased due to time."[18]  Additionally, the Debtors and Purchaser also desire to consummate the proposed sale as soon as practicable upon entry of the Order to minimize interruption and delay on LAS's ongoing projects. Given these circumstances, the Debtors believe that the Purchaser's offer is the highest and best offer and that the Sale Transaction is appropriate under the circumstances.

## IV.    The Sale Should be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code.

23.    The Debtors also seek to consummate the Sale Transaction free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in such property if:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    the holder of the interest consents;

(3)    such interest is a lien and the price at which such property is sold exceeds the value of all liens on such property;

(4)    such interest is in bona fide dispute; or

---

[18]    Hr'g Tr. 52:23-24 (June 7, 2021).

(5)     the holder of the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[19]

Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the applicable property free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges or encumbrances), except with respect to any interests that may be assumed under the applicable agreement.[20]

24.     With respect to any party asserting a lien, claim, or encumbrance, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f). To the extent there are liens on the Acquired Assets, the Debtors anticipate that holders of such liens will consent to the sale because such sale will provide the most efficient approach to realizing proceeds for, among other things, the repayment of amounts due to such parties. Any and all liens on the Acquired Assets will attach to the remaining net proceeds of such sales with the same force, effect, and priority as such liens currently have on these assets, subject to the rights and defenses, if any, of the Debtors and of any party-in-interest with respect thereto. Additionally, prior to the filing of this Motion, the Debtors consulted with the DIP Lender regarding the Sale and the relief sought herein. Here, there is no opposition to the Sale Transaction from the DIP Lender. Any other entity that does not object to the sale should be deemed to have consented.

25.     Thus, section 363(f)(3) of the Bankruptcy Code is satisfied. The Debtors accordingly request authority to convey the Acquired Assets to the Purchaser free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds from the sale of the Acquired Assets.

---

[19]   11 U.S.C. § 363(f).

[20]   *See In re C-Power Prods., Inc.*, 230 B.R. 800 (Bankr. N.D. Tex. 1998); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at *7 (Bankr. E.D. Tex. Dec. 19, 2007) ("satisfaction of any one of the requirements [of Section 363(f)] will suffice to warrant the Debtors' sale . . . free and clear of all interests").

## V. The Debtors Should Be Authorized to Assume and Assign Certain Executory Contracts to the Purchaser pursuant to the Assumption and Assignment Procedures and in Accordance with the Sale Order.

26.        Section 365 of the Bankruptcy Code authorizes a debtor to assume and assign its executory contracts and unexpired leases, subject to court approval, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  A debtor's decision to assume, assume and assign, or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g.*, *Grp. of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523, 550–51 (1943) (applying Bankr. Act section 77(b), predecessor to Bankruptcy Code section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment).

27.        Here, the Court should approve the assumption and assignment of certain contracts (the "Assigned Contracts") pursuant to procedures set forth herein (the "Assumption and Assignment Procedures") where the Debtors and the Purchaser determine it is an essential component of the Sale Transaction.   *First*, certain of the Debtors' contracts are critical to effectively operate LAS and serve its customers and, as such, they are essential to consummating the Sale Transaction. *Second*, section 365 counterparties will have notice and opportunity to raise any issues including with respect to cure and adequate assurance of performance with the proposed assignee.  Their respective rights, remedies, defenses and so forth are preserved.   *Third*, the Debtors submit that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be promptly satisfied, because the Term Sheet provides that the Purchaser will cure all defaults associated with the Assigned Contracts and required to be cured under section 365(b) of the Bankruptcy Code will be cured as part of the Sale Transaction.

28.     Particularly, the proposed Assumption and Assignment Procedures are as follows:

a.      **Cure Notice**.  Within five (5) business days after the filing of this Motion, the Debtors will file with the Court and serve via first class mail, electronic mail, or overnight delivery, a cure notice (as may be amended, supplemented, or otherwise modified from time to time the "Cure Notice"), substantially in the form of cure notice attached as **Exhibit B** hereto, on certain non-Debtor contract counterparties (collectively, the "Contract Counterparties").

b.      **Supplemental Cure Notices**.  The Debtors reserve the right to supplement or amend the Cure Notice as they determine to be necessary (each a "Supplemental Cure Notice") to add or remove Assigned Contracts and/or to modify the information contained therein, including any necessary corrections related to identification of Contract Counterparties and/or Cure Costs (defined below).  The Debtors will serve any such Supplemental Cure Notice on the Contract Counterparties who may be impacted by any such Supplemental Cure Notice by the same means used to serve the original Cure Notice, as set forth above.

c.      **Content of Cure Notice**.  The Cure Notice (and any Supplemental Cure Notices) shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information:  (i) a list of the applicable Assigned Contracts; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice or Supplemental Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to the Purchase Agreement.

d.      **Cure Objections**.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court no later than **14 days following the date of service of the Cure Notice (or Supplemental Cure Notice, if applicable), at 4:00 p.m. (prevailing Central Time)** (the "Cure Objection Deadline"); *provided* that the Debtors may modify the Cure Objection Deadline by filing

a notice of such modification on the Court's docket, if applicable.

e.   **Effects of Filing a Cure Objection**.  A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

f.   **Dispute Resolution**.  Parties may resolve any Cure Objection in the ordinary course.  Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved as of the Sale hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned with the consent of the Contract Counterparty and the Purchaser, pending a resolution of the Cure Objection satisfactory to the Purchaser, after notice and a hearing.  The Debtors reserve the right to ultimately reject any Assigned Contract if any such dispute cannot be resolved to the satisfaction of the Debtors and the Purchaser in a timely manner, in which case neither the Debtors nor the Purchaser will be liable for the payment of any cure costs, and the Purchaser will have no further liability under any such contract.

g.   **No Cure Objections**.  If there are no Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) upon entry of the Order, the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Contract against the Debtors or the Purchaser, or the property of any of them.

29.   Accordingly, the Debtors submit the assumption and assignment of the Assigned Contracts in connection with the Sale Transaction should be authorized.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

31.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) other than with respect to Assigned Contracts, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed

as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **Notice**

32.      The Debtors will provide notice of this Motion to the following parties or their counsel: (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) Weil, Gotshal & Manges LLP as counsel to the DIP Lender; (d) the Office of the United States Attorney for the Southern District of Texas; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (i) Purchaser and counsel thereto; (j) counterparties to the Assigned Contracts; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (*l*) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d). In light of the nature of the relief requested, no further notice is required.

## Conclusion

The Debtors request that the Court enter an order, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
June 16, 2021

*/s/ Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   (713) 752-4200
Facsimile:   (713) 752-4221
Email:      mcavenaugh@jw.com
            jwertz@jw.com
            mstull@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            christine.okike@kirkland.com

-and-

Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:      josh.altman@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## <u>Certificate of Service</u>

I certify that on June 16, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## EXHIBIT A

**Term Sheet**

## Term Sheet

THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OF THE COMPANY.  NOTHING IN THIS TERM SHEET SHALL BE DEEMED TO BE THE SOLICITATION OF AN ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ANY SUCH OFFER OR SOLICITATION SHALL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.

| | |
|---|---|
| **Parties** | ▪ Seller: Lord Aeck Sargent, Inc., a Georgia corporation and Lord Aeck Sargent, a Katerra Company PLLC (collectively, "Seller")[1]<br>▪ Seller Parent: Katerra, Inc.<br>▪ Purchaser: LAS Member, LLC or its assignee (LAS Member, LLC shall have the right to assign this Term Sheet to a related entity) |
| **Scope of Transaction** | ▪ Purchaser will acquire substantially all of the assets (the "Acquired Assets") and assume certain liabilities (the "Assumed Liabilities") of Seller<br>▪ Purchaser will not acquire certain assets (the "Excluded Assets") or assume certain liabilities (the "Excluded Liabilities") of Seller |
| **Acquired Assets** | ▪ Substantially all assets of Seller, including without limitation, cash, cash equivalents, accounts receivable, rights under assigned contracts, any other claims against third parties or amounts due from third parties, and tangible assets, excluding the Excluded Assets, and in addition Seller Parent will make best efforts to obtain necessary consents from third parties to convey to Purchaser any assets that Seller transferred to any affiliated entities (including without limitation any intellectual property primarily related to Seller's business), including without limitation those assets specified on Schedule "A" |
| **Assumed Liabilities** | ▪ See Schedule "B" |
| **Excluded Assets** | ▪ The real property leases in Ann Arbor, Michigan, and Austin, Texas will be excluded.<br>▪ The contract between Seller and Student Residence and Dining Facility for Texas Southern University in Houston, TX<br>▪ The three contracts between Seller and affiliates of Texas developer Bomasada for apartment projects in Oklahoma City, OK; Tulsa, OK; and Birmingham, AL. |
| **Excluded Liabilities** | ▪ All liabilities except Assumed Liabilities. |
| **Undetermined Contract Obligations** | ▪ Purchaser will determine whether to exclude certain contracts and leases, including without limitation the Seller's real property leases in Atlanta, |

---

[1] Seller Parent to take commercially reasonable best efforts to obtain necessary consents from affiliated parties.

| | |
|---|---|
| | Georgia, Chapel Hill, North Carolina, Alexandria, Virginia, and Lexington, Kentucky as promptly as possible after execution of this Term Sheet. Purchaser will be liable for timely payment of all obligations due under such contracts and leases until the court-approved assumption and assignment date or rejection date of such contracts (the "Undetermined Contract Obligations").<br>▪ Purchaser will be liable for any Undetermined Contract Obligations incurred by Seller to maintain contracts until assumption or rejection of such contracts if the Bankruptcy Court ultimately approves the sale to the Purchaser contemplated herein (the "Sale"); but if Sale not approved by bankruptcy court, Seller or third-party buyer will be liable for such costs. |
| **Purchase Price** | ▪   (i) $1,645,892 in cash, plus (ii) Assumed Liabilities, plus (iii) any Cure Costs for assumed contracts and leases, plus (iv) any unpaid Undetermined Contract Obligations, plus (v) the Working Capital Purchase Price Adjustment, minus (vi) the unpaid Identified PWP Expenses. |
| **Purchase Price Deposit** | ▪ Deposit of $700,000 to be paid within 5 days of execution of this Term Sheet.<br>▪ To be funded into a segregated escrow and held in escrow by a mutually agreed escrow agent.<br>▪ Deposit shall be applied to the Purchase Price upon Closing.<br>▪ In the event Purchaser breaches obligations under this Term Sheet, Deposit will be held in Escrow subject to a determination of damages or agreement between the parties.<br>▪ In the event that Seller sells material portion of the Acquired Assets to another party rendering the Sale impossible, Deposit will be returned to Purchaser no later than 10 days following closing of such sale. |
| **Milestones** | ▪ Seller and its advisors will work in good faith to obtain court authorization within 30 days of the filing date; *provided* that a Court-approved date outside of this window will not be a breach of the Seller's obligations hereunder<br>▪ Sale to close within 5 days of obtaining court approval. |
| **Stalking Horse** | ▪ Seller and its advisors will work in good faith to have the Sale be approved as a private sale.<br>▪ In the event of a court-ordered auction process:<br>  o  Purchaser will serve as the Stalking Horse Bidder on terms substantially similar to those contemplated hereunder.<br>  o  Stalking Horse protections will, subject to court approval, include a breakup fee equal to two percent (2%) of the Purchase Price and a $100,000 overbid. |

| | |
|---|---|
| **Expenses** | ▪ Each of Purchaser, on the one hand, and Seller, on the other, will be responsible for their own fees and expenses and those of their respective accountants, bankers, counsel, and other advisors. |
| **Treatment of Cash and Working Capital** | ▪ Seller Parent shall be responsible for (a) payment of the partial payroll for LAS employees (+ related benefits) prior to filing of the bankruptcy petition, and (b) payment of the Seller Pay When Paid Vendors identified on Schedule C in the amount $297,861.94 (the "Identified PWP Expenses") to the extent permitted by the Bankruptcy Court. Should the Bankruptcy Court not allow the Seller to pay the Identified PWP Expenses, the cash portion of the Purchase Price will be decreased on a dollar-for-dollar basis by the unpaid amount of the Identified PWP Expenses. Seller will make bi-weekly sweeps of the LAS cash account equal to $484,463.00 to cover estimated payroll for LAS employees (+ related benefits) (the "Bi-Weekly Payroll Sweep Amount"). Seller believes Buyer is protected from any "oversweeps" through the "Purchase Price Decrease Amount" mechanism. Seller will consult with Purchaser regarding payments for any amounts due, other than to LAS employees, whether they are due pre-petition or post-petition. <br> ▪ The cash balance in the LAS account as of end-of-day 6/4/21 is $[ ] <br> ▪ Any amount swept in excess of the Bi-Weekly Payroll Amount will result in a dollar-for-dollar reduction to the cash purchase price at close (the "Purchase Price Decrease Amount") <br> ▪ Should the Seller sweep less than the Bi-Weekly Payroll Amount or contribute cash to the LAS cash account, the cash portion of the purchase price will be increased on a dollar-for-dollar basis by the delta between the Bi-Weekly Payroll Amount and the actual sweep amount or the cash contribution amount, respectively (the "Purchase Price Increase Amount") <br> ▪ The "Working Capital Purchase Price Adjustment" shall be equal to (i) the aggregate sum of the Purchase Price Increase Amounts minus (ii) the aggregate sum of the Purchase Price Decrease Amounts <br> ▪ At any time prior to closing, should the Working Capital Purchase Price Adjustment become higher than the Purchase Price Deposit (initially $700,000), the Buyer shall increase the Purchase Price Deposit by such an amount |
| **Employees and Integration** | ▪ Purchaser and Seller will work in good faith to facilitate transition of (i) all employees that the Purchaser intends to keep and (ii) any contracts and leases that Purchaser intends to assume. <br> ▪ Seller will continue to make sufficient expenditures to maintain business operations at the current level, including without limitation, ensuring all |

| | Seller employees identified by the Purchaser to remain with the business receive their full compensation and benefits as and when they come due and paying all insurance policy premiums until the Closing. |
|---|---|
| **Binding and Irrevocable** | ▪ This Term Sheet shall be binding and irrevocable upon execution by the Parties, subject to Seller's "Fiduciary Out." |
| **Documentation** | ▪ The definitive documentation shall contain terms, conditions, representations, warranties, and covenants, each customary for the transaction described herein consistent with the terms of this Term Sheet and reasonably acceptable to the Seller and the Purchaser |
| **Fiduciary Out** | ▪ Seller reserves the right to act as it may reasonably determine to be in the best interest of its estate and in fulfilling its fiduciary duties, including by terminating the Sale to pursue an alternative transaction.<br>▪ If Seller terminates the Sale, the Deposit shall be promptly refunded to Purchaser and no later than 10 days following such termination. |

[*Signatures on following page*]

*SIGNATURE PAGE TO TERM SHEET*

**Seller:**

Lord Aeck Sargent, Inc., a Georgia corporation

By: _____

Title: _____ MACE CHESMAN

Lord Aeck Sargent, a Katerra Company PLLC

By: _____

Title: _____ MACE CHESMAN

**Seller Parent:**

Katerra, Inc.

By: _____

Title: _____ MACE CHESMAN

**Purchaser:**

LAS Member, LLC,

a Georgia limited liability company

By: _____Joseph M. Greco_____

Title: Vice President, Manager LAS Member, LLC

## Schedule A

[*To be supplemented*]

**Schedule B**

**Assumed Liabilities**

| Assumed Liabilities | |
| --- | --- |
| [*to be populated*] | [*to be populated*] |
| **Tax Matters** | ▪ ***Transfer Taxes***.  Purchaser shall be responsible for any and all transfer, documentary, sales, use, gross receipts, stamp, registration, value added, recording, escrow and other similar taxes and fees (including any penalties and interest) imposed or assessed as a result of the transactions contemplated hereby (including recording and escrow fees and any real property or leasehold interest transfer and any similar Tax) payable in connection with the sale ("Transfer Taxes"). <br> ▪ ***Operational Taxes.***  Purchaser shall be responsible for any and all property taxes, operational taxes, and other taxes on account of or attributable to the Acquired Assets. |
|  |  |

## Schedule C

## Pay When Paid Vendors

| Project Name | Vendor | Amount |
|---|---|---|
| UK - Delta Gamma Add/Renovation | | $ 5,750.00 |
| NPS Cumberland GAP NHP Gap Creek | | $ 13,675.21 |
| NPS MALU Exterior Lighting Improvements | | $ 6,100.00 |
| UT Austin Aubrey Lab Renovation - Welch | | $ 12,054.00 |
| UT Austin - Belardi Lab Renovation - EER | | $ 10,541.75 |
| UT Austin - Wang Lab Revnoation - BME | | $ 7,500.00 |
| TAMU West Campus Dining Facility | | $ 7,956.00 |
| Atlantic Realty - Tilly Mill Mixed-Use | | $ 1,000.00 |
| UT Austin Anna Hiss Gymnasium Courtyard | | $ 27,428.00 |
| TAMU West Campus Dining Facility | | $ 245.75 |
| Sage Hall Phase One Renovation | | $ 3,000.00 |
| TAMU West Campus Dining Facility | | $ 3,650.00 |
| NPS Replace EBC Lifts | | $ 3,057.27 |
| Travis County Probate Court | | $ 925.00 |
| TAMU West Campus Dining Facility | | $ 1,260.00 |
| Clemson Daniel Hall Renovation and Expansion | | $ 6,271.75 |
| Sage Hall Phase One Renovation | | $ 126.80 |
| KSU - Science Lab Addition J-321 | | $ 645.00 |
| Sage Hall Phase One Renovation | | $ 2,424.00 |
| NPS MLK Birth Home Lift Improvements | | $ 3,000.00 |
| NPS MLK Birth Home Rehabilitation | | $ 2,242.92 |
| NPS Medgar and Myrlie Evers House | | $ 3,760.00 |
| NPS MLK Birth Home Lift Improvements | | $ 2,134.85 |
| Clemson Daniel Hall Renovation and Expansion | | $ 15,978.00 |
| VT Hitt Hall and Intelligent Infrastructure | | $ 1,200.00 |
| UK - Delta Gamma Add/Renovation | | $ 15,000.00 |
| NPS Repair MACA VC Sewer System | | $ 12,187.87 |
| NPS Lost Colony Amphitheater Wastewater | | $ 9,569.57 |
| NPS - THLH Title III Services | | $ 500.00 |
| UT Austin - Wang Lab Revnoation - BME | | $ 600.00 |
| Sage Hall Phase One Renovation | | $ 5,517.98 |
| Highlands Performing Arts Center | | $ 8,182.35 |
| WCU STEM Facility | | $ 8,580.42 |
| WCU STEM Facility | | $ 2,560.00 |
| UNC MEJ Full Building Renovation | | $ 1,550.00 |
| Duke Bryan - Huang Lab | | $ 4,545.00 |
| RST Development - Garner | | $ 15,971.03 |

| | | | |
|---|---|---|---|
| Birmingham Prince Hall Lodge Rehabilitation | | $ | 300.00 |
| Birmingham Prince Hall Lodge Rehabilitation | | $ | 131.25 |
| WCU Quad Stair | | $ | 9,000.00 |
| WCU Hunter Library Renovation Concept | | $ | 4,250.00 |
| WCU STEM Facility | | $ | 13,510.77 |
| Duke BSL3 Study | | $ | 10,000.00 |
| Duke Vivarium C06 Grant 2021 | | $ | 5,500.00 |
| MEJ: 6th Floor Rodriguez-Romaguera Lab | | $ | 975.00 |
| NPS Carver Museum Rehabilitation | | $ | 20,506.40 |
| NPS Carver Museum Rehabilitation | | $ | 518.00 |
| NC DHHS Molecular Lab Renovation | | $ | 6,480.00 |
| Total: | | $ | 297,861.94 |

**<u>EXHIBIT B</u>**

**Form of Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| KATERRA INC., *et al.*,[1] | ) Case No. 21-31861 (DRJ) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

  **PLEASE TAKE NOTICE** that on June 16, 2021, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Private Sale of Lord Aeck Sargent Pursuant to 11 U.S.C. § 363 of the Bankruptcy Code, (II) Authorizing Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (III) Granting Related Relief* [Docket No. [●]] (the "Sale Motion")[2] with the United States Bankruptcy Court for the Southern District of Texas (the "Court") which seeks approval of, among other things, the assumption and assignment of certain Executory Contracts.

  **PLEASE TAKE FURTHER NOTICE** that, as contemplated by the Sale Motion, the Debtors currently intend to assume and assign to the Purchaser the contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A** upon approval of the Sale. You are a counterparty to at least one Assigned Contract on the Assigned Contracts Schedule. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** (the "Cure Costs").

  **PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Purchaser of any Assigned Contract, or object to the ability of the Purchaser to provide adequate assurance of future performance with respect to any Assigned

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/katerra. The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

Contract, your objection must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court **no later than 14 days following the date of service of this Cure Notice** at **4:00 p.m. (prevailing Central Time)** (the "Cure Objection Deadline"), in each case, and served on the following parties: (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Christine A. Okike, P.C. (christine.okike@kirkland.com), Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.: Josh Altman (josh.altman@kirkland.com) and Dan Latona (dan.latona@kirkland.com), and Kirkland & Ellis LLP, 3330 Hillview Avenue, Palo Alto, California 94304, Attn. Rodin M. Hai-Jew, P.C. (rodin.hai-jew@kirkland.com); and (b) the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn.:  Hector Duran and Jana Whitworth.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Purchaser's ability to perform is filed by the Cure Objection Deadline, as applicable, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Purchaser on the grounds that the Purchaser has not provided adequate assurance of future performance as of the closing date of the Sale, and (iv) the Court may enter an order approving the Sale without a hearing on the Sale Motion.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the inclusion of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Purchaser with respect to such Assigned Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Purchaser, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

Houston, Texas
[●], 2021

/s/

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:        mcavenaugh@jw.com
              jwertz@jw.com
              mstull@jw.com


*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              christine.okike@kirkland.com

-and-

Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        josh.altman@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*