**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KATERRA INC., *et al.*,[1] | ) | Case No. 21-31861 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## JOINT CHAPTER 11 PLAN OF KATERRA INC. AND ITS DEBTOR SUBSIDIARIES

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:    mcavenaugh@jw.com
    jwertz@jw.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
    christine.okike@kirkland.com

- and -

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    josh.altman@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*

Dated:  August 13, 2021

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/katerra.  The location of Debtor Katerra Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 9305 East Via de Ventura, Scottsdale, Arizona 85258.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW .................................................................................................................... 1

    A.    Defined Terms ........................................................................................................ 1
    B.    Rules of Interpretation ........................................................................................... 9
    C.    Computation of Time ........................................................................................... 10
    D.    Governing Law ..................................................................................................... 10
    E.    Reference to Monetary Figures ........................................................................... 10
    F.    Reference to the Debtors or the Wind-Down Debtors ......................................... 10
    G.    Nonconsolidated Plan .......................................................................................... 10

ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS ....................................................................................................................................... 10

    A.    Administrative Claims and Priority Tax Claims. ................................................ 10
    B.    Professional Fee Claims ....................................................................................... 11
    C.    DIP Claims ........................................................................................................... 12
    D.    Statutory Fees ....................................................................................................... 12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................................... 13

    A.    Classification of Claims and Interests ................................................................. 13
    B.    Treatment of Claims and Interests ...................................................................... 13
    C.    Special Provision Governing Unimpaired Claims .............................................. 15
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................. 15
    E.    Subordinated Claims ............................................................................................ 15
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ............................ 16
    G.    Controversy Concerning Impairment .................................................................. 16

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................................... 16

    A.    Restructuring Transactions ................................................................................... 16
    B.    Sale Transaction; Sources of Consideration for Plan Distributions ................... 16
    C.    Wind-Down Debtors ............................................................................................ 17
    D.    Wind-Down Debtors Document Retention Obligations....................................... 17
    E.    Plan Administrator ............................................................................................... 17
    F.    Wind Down ........................................................................................................... 19
    G.    Plan Administrator and Post-Confirmation Oversight Committee Exculpation, Indemnification, Insurance, and Liability Limitation........................................... 19
    H.    Tax Returns .......................................................................................................... 19
    I.    Dissolution of the Debtors and Wind-Down Debtors ......................................... 20
    J.    Cancellation of Securities and Agreements ......................................................... 20
    K.    Corporate Action .................................................................................................. 20
    L.    Effectuating Documents; Further Transactions ................................................... 20
    M.    Section 1146 Exemption ...................................................................................... 21
    N.    Preservation of Causes of Action ........................................................................ 21
    O.    Closing the Chapter 11 Cases .............................................................................. 22

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................. 22

    A.    Assumption (or Assumption and Assignment) and Rejection of Executory Contracts and Unexpired Leases ............................................................................ 22
    B.    D&O Liability Insurance Policies ....................................................................... 22
    C.    Indemnification Obligations................................................................................. 23

D.     Claims Based on Rejection of Executory Contracts or Unexpired Leases ........................... 23
E.     Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned) ........................................................................................................................ 23
F.     Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases ........... 24
G.     Modifications, Amendments, Supplements, Restatements, or Other Agreements ..................... 24
H.     Reservation of Rights ............................................................................................................... 24
I.     Nonoccurrence of Effective Date ............................................................................................. 25

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................................. 25

A.     Timing and Calculation of Amounts to Be Distributed ............................................................ 25
B.     Disbursing Agent ..................................................................................................................... 25
C.     Rights and Powers of Disbursing Agent .................................................................................. 25
D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions ............................... 25
E.     Compliance with Tax Requirements ......................................................................................... 26
F.     Allocations ............................................................................................................................... 26
G.     No Postpetition Interest on Claims ........................................................................................... 27
H.     Foreign Currency Exchange Rate. ............................................................................................ 27
I.     Setoffs and Recoupment ........................................................................................................... 27
J.     Claims Paid or Payable by Third Parties .................................................................................. 27

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ............................................................................................................................. 28

A.     Allowance of Claims ................................................................................................................ 28
B.     Claims Administration Responsibilities ................................................................................... 28
C.     Estimation of Claims ................................................................................................................ 28
D.     Adjustment to Claims without Objection ................................................................................. 28
E.     Time to File Objections to Claims ........................................................................................... 29
F.     Disallowance of Claims ........................................................................................................... 29
G.     Amendments to Claims ............................................................................................................ 29
H.     No Distributions Pending Allowance ....................................................................................... 29
I.     Distributions after Allowance .................................................................................................. 29
J.     Special Rules for Distributions to Holders of Disputed Claims ............................................... 29

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ............... 30

A.     Settlement, Compromise, and Release of Claims and Interests ............................................... 30
B.     Release of Liens ....................................................................................................................... 30
C.     Release by the Debtors ............................................................................................................. 30
D.     Third-Party Release .................................................................................................................. 31
E.     Exculpation .............................................................................................................................. 32
F.     Injunction ................................................................................................................................. 32
G.     Securities and Exchange Commission Considerations .............................................................. 33
H.     Protections against Discriminatory Treatment. ......................................................................... 33
I.     Reimbursement or Contribution. .............................................................................................. 33
J.     Term of Injunctions or Stays .................................................................................................... 33

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ......................... 34

A.     Conditions Precedent ................................................................................................................ 34
B.     Waiver of Conditions ............................................................................................................... 34
C.     Substantial Consummation ....................................................................................................... 34
D.     Effect of Nonoccurrence to the Confirmation Date or Effective Date. ...................................... 34

ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ....................... 34

A.     Modification and Amendments ................................................................................................ 34

B.      Effect of Confirmation on Modifications ................................................................... 35
C.      Revocation or Withdrawal of Plan ........................................................................... 35

ARTICLE XI. RETENTION OF JURISDICTION .................................................................... 35

ARTICLE XII. MISCELLANEOUS PROVISIONS .................................................................. 37

A.      Immediate Binding Effect .......................................................................................... 37
B.      Additional Documents ................................................................................................ 37
C.      Payment of Statutory Fees. ........................................................................................ 37
D.      Statutory Committee and Cessation of Fee and Expense Payment ........................ 37
E.      Reservation of Rights .................................................................................................. 37
F.      Successors and Assigns ............................................................................................... 38
G.      Notices .......................................................................................................................... 38
H.      Entire Agreement ........................................................................................................ 39
I.      Exhibits ........................................................................................................................ 39
J.      Non-Severability of Plan Provisions ......................................................................... 39
K.      Votes Solicited in Good Faith .................................................................................... 39
L.      Waiver or Estoppel ...................................................................................................... 39
M.      Conflicts ....................................................................................................................... 39

**INTRODUCTION**

Katerra Inc. and its debtor affiliates as debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors" or "Katerra"), in the above-captioned Chapter 11 Cases propose this joint plan pursuant to chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court [Docket No. 33].  The Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classification and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, as well as a summary and description of the Plan and certain related matters.  Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms*

As used in the Plan, capitalized terms have the meanings ascribed to them below.

1.      "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estates entitled to priority under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors and (b) Allowed Professional Fee Claims in the Chapter 11 Cases.

2.      "*Administrative Claim Bar Dates*" means the deadline for filing requests for payment of Administrative Claims, which shall be (a) 30 days after the Confirmation Date with respect to Claims that arose before the Confirmation Date; (b) 30 days after the Effective Date with respect to Claims that arose on or after the Confirmation Date but prior to the Effective Date; (c) the deadline for filing requests for payment of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code as set forth in the Bar Date Order; and (d) any other date(s) established by the Bankruptcy Court by which such requests must be Filed pursuant to court order.  For the avoidance of doubt, nothing in Article VIII.C–Article VIII.F shall preclude any party from asserting an Administrative Claim and the Debtors reserve all rights related thereto.

3.      "*Administrative and Priority Claims Recovery*" means Cash equal to the amount of such Allowed Administrative Claim as set forth in Article II.A herein.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.      "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan:  (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such

Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Wind-Down Debtor, as applicable. For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

6. "***Avoidance Actions***" means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to chapter five of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws. For the avoidance of doubt, Avoidance Actions shall not include any claims transferred to any Purchaser pursuant to any Purchase Agreement.

7. "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

8. "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

9. "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

10. "***Bar Date***" means, collectively, the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed pursuant to the Bar Date Order.

11. "***Bar Date Order***" means that certain *Order (I) Setting Bar Dates for Filing Proofs of Claim Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* [Docket No. 427].

12. "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

13. "***Cash***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

14. "***Causes of Action***" means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, suits, obligations, liabilities, accounts, defenses, affirmative defense, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action.

15.     "***Chapter 11 Cases***" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code, and when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

16.     "***Claim***" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

17.     "***Claims Objection Bar Date***" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date (as may be extended by the Bankruptcy Court upon the request of the Debtors or the Wind-Down Debtors) and (b) such other period of limitation as may be specifically fixed by the Debtors or the Wind-Down Debtors, as applicable, and by an order of the Bankruptcy Court for objecting to Claims.

18.     "***Claims Register***" means the official register of Claims maintained by the Notice, Claims, and Balloting Agent.

19.     "***Class***" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

20.     "***Committee***" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code on June 22, 2021 [Docket No. 210].

21.     "***Confirmation***" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

22.     "***Confirmation Date***" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

23.     "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

24.     "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.     "***Consummation***" means the occurrence of the Effective Date.

26.     "***Cure Claim***" means a monetary Claim based upon a Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

27.     "***Cure Obligations***" means all (a) Cure Claims and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

28.     "***D&O Liability Insurance Policies***" means all insurance policies (including any "tail policy") of any of the Debtors for liability of any current or former directors, managers, officers, members, trustees, and any Scheduled Party (as defined in such policies).

29.     "***DIP Amendment Order***" means the *Order (I) Approving the Amendment to the DIP Agreement and (II) Granting Related Relief* [Docket No. 546].

30.     "***DIP Claims***" means all Claims against any of the Debtors arising under the DIP Facility, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations.

31.     "*DIP Facility*" has the meaning set forth in the Interim DIP Order.

32.     "*DIP Lender*" means SB Investment Advisers (UK) Limited in its capacity as the lender party to the DIP Promissory Note.

33.     "*DIP Orders*" means, collectively, the Interim DIP Order, the DIP Amendment Order, and the Final DIP Order.

34.     "*DIP Promissory Note*" means that certain *Senior Secured Super-Priority Debtor-in-Possession Promissory Note* dated June 10, 2021 (as may be amended, supplemented, or otherwise modified from time to time), between Katerra Inc., as borrower, the Debtor guarantors that are party thereto, and the DIP Lender.

35.     "*Disbursing Agent*" means the Debtors or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtors or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

36.     "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Katerra Inc. and Its Debtor Subsidiaries*, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

37.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

38.     "*Disputed Claims Reserve*" means one or more reserves for those Claims that are Disputed Claims as of the Distribution Record Date, which reserves shall be administered by the Plan Administrator.

39.     "*Distributable Cash*" means all Cash, if any, available after giving effect to the Reserves, plus any excess Cash from any Reserves not used for the purposes of such Reserve after satisfaction of all Claims contemplated by such Reserve (including for the avoidance of doubt, payment in full of Allowed Professional Fee Claims), plus any other Cash available in the Estates.

40.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the first day of the Confirmation Hearing or such other date as is designated in a Final Order of the Bankruptcy Court.

41.     "*Effective Date*" means the date on or after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors declare the Plan effective.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

42.     "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

43.     "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

44.     "*Exculpated Party*" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee and each of its members; (d) the Plan Administrator; and (e) each Related Party of each Entity in clauses (a) though (d).

45.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

46.     "*Existing Interests*" means the Interests in Katerra Inc. (Cayman).

47.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

48.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice, Claims, and Balloting Agent.

49.     "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 630].

50.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order shall not cause such order to not be a Final Order.

51.     "*General Unsecured Claim*" means any Claim other than:  (a) an Administrative Claim (including a Professional Fee Claim); (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) a Secured Claim; or (e) an Intercompany Claim.

52.     "*General Unsecured Claims Recovery*" means Distributable Cash, if any, after all senior Classes of Claims are paid in full.

53.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

54.     "*Holder*" means an Entity holding a Claim or Interest, as applicable.

55.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

56.     "*Insurance Company*" means any company or other Entity that issued an Insurance Contract, any third party administrator of or for any Insurance Contract, and any respective predecessors, successors, and/or Affiliates of any of the foregoing.

57.     "*Insurance Contracts*" means all insurance policies that have been issued at any time or provide coverage, benefits or proceeds to any of the Debtors (or their predecessors) and all agreements, letters of indemnity, documents or instruments relating thereto.  For the avoidance of doubt, the term Insurance Contracts shall include, but are not limited to, D&O Liability Insurance Policies, insurance policies providing workers' compensation coverage and claims handling agreements.

58.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

59.     "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor.

60.     "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

61.    "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 111].

62.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

63.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

64.    "*Notice, Claims, and Balloting Agent*" means Prime Clerk LLC in its capacity as notice, claims, and balloting agent for the Debtors and any successor.

65.    "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

66.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

67.    "*Petition Date*" means June 6, 2021, the date on which each of the Debtors commenced the Chapter 11 Cases.

68.    "*Plan*" means this joint chapter 11 plan (as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments hereto).

69.    "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors, who will be disclosed no less than seven days prior to the Confirmation Hearing, to have all powers and authorities set forth in Article IV.F of the Plan.

70.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than fourteen (14) days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable:  (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) Schedule of Retained Causes of Action; (c) the identity and terms of compensation of the Plan Administrator; (d) any transition services agreement between any Purchaser and the Debtors (to the extent not already filed on the Docket in connection with a Sale); (e) the Restructuring Transactions Memorandum; (f) the Wind-Down Budget; (g) the Post-Confirmation Oversight Committee Agreement; and (h) any other necessary documentation related to any Sale Transaction or other Restructuring Transactions.

71.    "*Post-Confirmation Oversight Committee*" means the oversight committee comprised of up to [three] creditors appointed by the Committee pursuant to the terms of the Plan and identified in the Plan Supplement.

72.    "*Post-Confirmation Oversight Committee Agreement*" means the agreement to be executed as of the Effective Date establishing the Post-Confirmation Oversight Committee pursuant to the Plan, substantially in the form Filed with the Plan Supplement and all ancillary documents and agreements related thereto.

73.    "*Post Effective Date Reserve*" means a reserve established by the Plan Administrator in accordance with Article IV.D hereof in an amount to satisfy the Wind-Down Budget.

74.    "*Priority Claims*" means collectively, Priority Tax Claims and Other Priority Claims.

75.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against any of the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

76.     "**Pro Rata**" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

77.     "**Professional**" means an Entity retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

78.     "**Professional Fee Claim**" means any Administrative Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

79.     "**Professional Fee Escrow Account**" means an escrow account to hold an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtors as described in Article II.B.2 hereof as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all remaining Allowed Professional Fee Claims.

80.     "**Professional Fee Escrow Amount**" means the total amount of Professional fees and expenses estimated pursuant to Article II.B.3 of the Plan and including any Cash amount that has been escrowed for a similar purpose during the Chapter 11 Cases, which previously escrowed amounts will be transferred to the Professional Fee Escrow Account.

81.     "**Proof of Claim**" means a written proof of claim Filed against any of the Debtors in the Chapter 11 Cases.

82.     "**Proof of Interest**" means a written proof of interest Filed against any of the Debtor in the Chapter 11 Cases.

83.     "**Purchase Agreement**" means any agreement(s) between the Debtors and a third-party Purchaser memorializing any Sale Transaction.

84.     "**Purchaser**" means a purchaser under a Purchase Agreement.

85.     "**Reinstate**," "**Reinstated**," or "**Reinstatement**" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

86.     "**Related Party**" means, collectively, with respect to an Entity, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents (including any Disbursing Agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, representatives, and advisors, each solely in their capacities as such, and the respective heirs, executors, estates, servants and nominees of the foregoing.

87.     "**Released Party**" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee and each of its members; (d) the Plan Administrator; (e) all Releasing Parties; (f) each Related Party of each Entity in clauses (a) through (e); *provided* that (i) the parties not released as part of the "Non-Released Claims" described and preserved in paragraph 29 of the order entered at Docket No. 414 and (ii) any Holder of a Claim or Interest that opts out of, or objects to, the releases contained in the Plan shall not be a "Released Party."

88.     "**Releasing Parties**" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee and each of its members; (d) the Plan Administrator; (e) all Holders

of Claims or Interests that vote to accept the Plan; (f) all Holders of Claims or Interests that are deemed to accept the Plan <u>and</u> who do not opt out of the releases in the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (g) all Holders of Claims or Interests that are deemed to reject the Plan <u>and</u> who do not opt out of the releases in the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (h) all Holders of Claims or Interests that abstain from voting on the Plan <u>and</u> who do not opt out of the releases in the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (i) all Holders of Claims or Interests that vote to reject the Plan <u>and</u> who do not opt out of the releases in the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; and (j) each Related Party of each Entity in clauses (a) through (i).

89.     "***Reserves***" means, collectively the Post Effective Date Reserve, the Professional Fee Escrow Account, any Disputed Claims Reserve, and any other reserve established by the Plan Administrator in its reasonable business judgment.

90.     "***Restructuring Transactions***" means the transactions described in Article IV.A of the Plan.

91.     "***Restructuring Transactions Memorandum***" means an exhibit to the Plan Supplement that sets forth the steps to be carried out to effectuate the Restructuring Transactions, as the same may be amended, supplemented, and modified through the Effective Date.

92.     "***Sale Order***" means, collectively, any order(s) of the Bankruptcy Court authorizing a Sale Transaction.

93.     "***Sale Transaction***" means any Bankruptcy Court-approved sale(s) (including but not limited to those at Docket Nos. 412, 414, 715, 793, and 794) and sales of assets by the Wind-Down Debtors, either as a going-concern or otherwise, of some or all of the Debtors' or Wind-Down Debtors' assets to a Purchaser pursuant to a Purchase Agreement.

94.     "***Sale Transaction Cash Proceeds***" means all Cash proceeds of a Sale Transaction.

95.     "***Schedule of Assumed Executory Contracts and Unexpired Leases***" means any schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan (as the same may be amended, modified, or supplemented from time to time by the Debtors).

96.     "***Schedule of Retained Causes of Action***" means the schedule of Causes of Action that shall vest in the Wind-Down Debtors on the Effective Date, which, for the avoidance of doubt, shall not include any Causes of Action that are settled, released, waived, exculpated, or transferred pursuant to the Plan or a Purchase Agreement, as the same may be amended, modified, or supplemented from time to time by the Debtors.

97.     "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may be amended, modified, or supplemented from time to time.

98.     "***SEC***" means the United States Securities and Exchange Commission.

99.     "***Section 510(b) Claim***" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

100.     "***Secured***" means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

101.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

102.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

103.    "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

104.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

105.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

106.    "*Voting Deadline*" means 4:00 p.m. (prevailing Central Time) on September 24, 2021.

107.    "*Wind Down*" means the wind down and dissolution of the Debtors and final administration of the Estates following the Effective Date as set forth in Article IV.F.

108.    "*Wind-Down Budget*" means that certain budget governing the fees, expenses, and disbursements required for the Wind Down.

109.    "*Wind-Down Debtors*" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

B.    *Rules of Interpretation*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (16) any term used in

capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate or limited liability company governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the applicable Debtor or the Wind-Down Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Wind-Down Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable and to the extent the context requires.

G.      *Nonconsolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims, have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims and Priority Tax Claims.*

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), requests for payment of Allowed Administrative Claims must be Filed and served on the Debtors or the Wind-Down Debtors no later than the Administrative Claims Bar Date.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date.**  Objections

to such requests, if any, must be Filed and served on the Plan Administrator and/or Wind-Down Debtors and the requesting party.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as agreed with the Wind-Down Debtors.

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or Wind-Down Debtors against which such Allowed Priority Tax Claim is asserted agree to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

B.    *Professional Fee Claims*

1.    <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.  The Plan Administrator and/or Wind-Down Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.    <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Plan Administrator or the Wind-Down Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim

for any such deficiency, which Allowed Administrative Claim shall be satisfied in accordance with Article II.A of the Plan.

When all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be transferred to the Post Effective Date Reserve.

3.      Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

4.      Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors, or the Wind-Down Debtors (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors.  The Debtors and Wind-Down Debtors (as applicable) shall pay, within ten Business Days after submission of a detailed invoice to the Debtors or Wind-Down Debtors (as applicable), such reasonable Claims for compensation or reimbursement of expenses incurred by the retained professionals of the Debtors and Wind-Down Debtors (as applicable).  If the Debtors or Wind-Down Debtors (as applicable) dispute the reasonableness of any such invoice, the Debtors or Wind-Down Debtors (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *DIP Claims*

The Debtors operated under a Bankruptcy Court-approved DIP Facility, as memorialized in the DIP Orders.  The Debtors paid off their DIP Facility in full on August 4, 2021.  Accordingly, DIP Claims are satisfied and entitled to no additional recovery pursuant to the Plan.

D.      *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, to the extent applicable, the Plan Administrator and/or Wind-Down Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Wind-Down Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

      Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

      The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.F hereof.

| Class | Claim / Interest | Status | Voting Rights |
|-------|------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests*

      Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment in accordance with Article VI hereof.

      1.      <u>Class 1 - Secured Claims</u>

      (a)      *Classification:*  Class 1 consists of all Secured Claims.

      (b)      *Treatment:*  Each Holder of an Allowed Secured Claim shall receive:

      (i)      payment in full in Cash of such Holder's Allowed Secured Claim;

      (ii)      the collateral securing such Holder's Allowed Secured Claim; or

(iii)    such other treatment rendering such Holder's Allowed Secured Claim Unimpaired.

(c)    *Voting:* Class 1 is Unimpaired under the Plan. Holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Such Holders are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 - Other Priority Claims</u>

(a)    *Classification*: Class 2 consists of all Other Priority Claims.

(b)    *Treatment:* Each Holder of an Allowed Other Priority Claim shall receive:

(i)    payment in full in Cash of such Holder's Allowed Other Priority Claim; or

(ii)    such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)    *Voting:* Class 2 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Such Holders are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3 - General Unsecured Claims</u>

(a)    *Classification:* Class 3 consists of all General Unsecured Claims.

(b)    *Treatment:* On the Effective Date, or as soon as reasonably practicable, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the General Unsecured Claims Recovery until paid in full.

(c)    *Voting:* Class 3 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.    <u>Class 4 - Intercompany Claims</u>

(a)    *Classification:* Class 4 consists of all Intercompany Claims.

(b)    *Treatment*: Each Allowed Other Intercompany Claim shall, at the option of the Debtors or the Wind-Down Debtors, either on or after the Effective Date, be: (a) Reinstated or (b) distributed, contributed, set off, settled, canceled and released, or otherwise addressed without any distribution on account of such Intercompany Claim.

(c)    *Voting*: Class 4 is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Such Holders are not entitled to vote to accept or reject the Plan.

5.    <u>Class 5 - Intercompany Interests</u>

(a)    *Classification:* Class 5 consists of all Intercompany Interests.

(b)    *Treatment*: On the Effective Date, Intercompany Interests shall, at the option of the Debtors or the Wind-Down Debtors, either be: (a) Reinstated or (b) discharged, canceled, released, and extinguished and of no further force or effect without any distribution on account of such Intercompany Interests.

(c)    *Voting*:  Class 5 is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Such Holders are not entitled to vote to accept or reject the Plan.

6.    <u>Class 6 - Existing Interests</u>

(a)    *Classification*:  Class 6 consists of all Existing Interests.

(b)    *Treatment*:  Each Allowed Existing Interest shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Existing Interests shall be entitled to any recovery or distribution under the Plan on account of such Existing Interests.

(c)    *Voting*:  Class 6 is Impaired under the Plan.  Holders of Existing Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Such Holders are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7 - Section 510(b) Claims</u>

(a)    *Classification:*  Class 7 consists of all Section 510(b) Claims.

(b)    *Allowance:*  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by a Final Order of the Bankruptcy Court.  The Debtors are not aware of any valid Section 510(b) Claim and believe that no such Section 510(b) Claim exists.

(c)    *Treatment*:  Allowed Section 510(b) Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims, if any, will not receive any distribution on account of such Allowed Section 510(b) Claims.

(d)    *Voting:*  Class 7 is Impaired under the Plan.  Holders (if any) of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Such Holders (if any) are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.    *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable

subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

G.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Restructuring Transactions*

On the Effective Date, to the extent not inconsistent with any Sale Transaction, the applicable Debtors or the Wind-Down Debtors shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of any Sale Transaction, the issuance of all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions.  The actions to implement the Restructuring Transactions may include:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan; *provided*, *however*, that no such restructuring transactions may violate the terms of any Executory Contract or Unexpired Lease assumed by the Debtors.

B.      *Sale Transaction; Sources of Consideration for Plan Distributions*

The Plan Administrator and/or Wind-Down Debtors will fund distributions under the Plan with (i) Cash held on the Effective Date by or for the benefit of the Debtors or Wind-Down Debtors, (ii) any remaining Sale Transaction Cash Proceeds after giving effect to the Wind Down process contemplated by the Plan, and (iii) the proceeds of any other non-Cash assets held by the Wind-Down Debtors.  Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, enjoined or exculpated under Article VIII of the Plan or

transferred to a Purchaser pursuant to a Purchase Agreement on or prior to the Effective Date shall vest in the Wind-Down Debtors and shall be subject to administration by the Plan Administrator. The Debtors have also offered to grant certain releases to Holders of Claims that vote to accept or do not object to the Plan.

C.    *Wind-Down Debtors*

At least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtor for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date, (2) performing the Debtors' obligations under any Purchase Agreement or any transition services agreement entered into in connection therewith (to the extent agreed by the Wind-Down Debtors), (3) resolving any Disputed Claims, (4) making distributions on account of Allowed Claims in accordance with the Plan, (5) filing appropriate tax returns, and (6) administering the Plan in an efficacious manner. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Effective Date, any non-Cash Estate assets remaining shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and Consummating the Plan. Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

D.    *Wind-Down Debtors Document Retention Obligations.*

On and after the Effective Date, the Wind-Down Debtors, or the Plan Administrator, as applicable, may maintain or dispose of documents in accordance with their discretion; provided that the Wind-Down Debtors and any successors in interest thereto shall retain and preserve all books, records, emails, and other documents relating to the Debtors' Renovations and/or U.S. Construction businesses from and after January 1, 2018 that are in the possession of the Wind-Down Debtors immediately following the Effective Date, and shall provide the SEC with reasonable access to all such documents. The Wind-Down Debtors shall not destroy or otherwise abandon any such documents or records without providing the SEC at least sixty (60) days' prior written notice of its intent to abandon or destroy such materials, and a reasonable opportunity to obtain possession thereof. Such notice shall be provided via email to: Amy L. Friedman at friedmana@sec.gov.

E.    *Plan Administrator*

The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have been resigned, solely in their capacities as such, and a representative of the Plan Administrator shall be appointed as the sole manager and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' directors and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors. For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to the Purchase Agreement or any transition services agreement entered into in connection therewith.

The powers and responsibilities of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and Wind Down the businesses and affairs of the Debtors and the Wind-Down Debtors, as applicable, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Wind-Down Debtors remaining after consummation of any Sale Transaction; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan;

(3) resolving any Disputed Claims; (4) making distributions on account of Allowed Claims in accordance with the Plan; (5) establishing and maintaining bank accounts in the name of the Wind-Down Debtors; (6) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (7) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (8) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (9) representing the interests of the Wind-Down Debtors before any taxing authority in all matters, including any action, suit, proceeding or audit; (10) providing not less than quarterly reports concerning the Wind Down on topics to be agreed upon by the Plan Administrator and the Post-Confirmation Oversight Committee; and (11) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon thirty (30)-days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated.

1.     <u>Appointment of the Plan Administrator</u>

The Plan Administrator shall be appointed by agreement of the Debtors and the Committee. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan, and as otherwise provided in the Confirmation Order.

2.     <u>Retention of Professionals</u>

The Plan Administrator shall have the right, in consultation with the Post-Confirmation Oversight Committee, to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

3.     <u>Compensation of the Plan Administrator</u>

The Plan Administrator's compensation, on a post-Effective Date basis, shall be determined by the Debtors or Wind-Down Debtors (as applicable) in consultation with the Post-Confirmation Oversight Committee as described in the Plan Supplement.

4.     <u>Funding of Reserves, including the Post Effective Date Reserve</u>

The Plan Administrator shall be authorized to establish and fund each of the Reserves for the purposes of such Reserves as set forth herein. The Post Effective Date Reserve will be funded with an amount of Cash that the Plan Administrator deems necessary or appropriate to satisfy future costs and expenses necessary for the implementation of the Plan and discharge of its duties hereunder that will at least cover the costs of the Wind-Down Budget. The Post Effective Date Reserve shall be used by the Plan Administrator solely to satisfy the expenses of the Wind-Down Debtors and the Plan Administrator as set forth in the Plan; *provided* that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Post Effective Date Reserve. The Plan Administrator may create reserve-specific segregated accounts from the Post Effective Date Reserve in accordance with its business judgment, and may move Distributable Cash into the Post Effective Date Reserve at any time to the extent needed, in the Plan Administrator's business judgement, to cover unanticipated costs of the Wind-Down. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.

To the extent any amounts in a Reserve are tied to Claims that become Disallowed, the Plan Administrator may, in its business judgment, remove the amount in such Reserve that was allocated to such Claim from the Reserve and move it to Distributable Cash.  Any amounts remaining in any Reserve after payment of all Claims contemplated by such Reserve in full shall promptly be transferred to the Post Effective Date Reserve (or become Distributable Cash, as appropriate) and shall be distributed according to the priority set forth in Article III without any further action or order of the Bankruptcy Court.

    5.    <u>Establishment of the Post-Confirmation Oversight Committee</u>

Prior to the Effective Date, a committee shall be appointed to serve as the Post-Confirmation Oversight Committee pursuant to the terms of the Post-Confirmation Oversight Committee Agreement.  Members of the Post-Confirmation Oversight Committee shall have the duties and oversight responsibilities set forth in the Post-Confirmation Oversight Committee Agreement and in the Plan.  For the avoidance of doubt, the Post-Confirmation Oversight Committee may not direct the Plan Administrator or the members of the Post-Confirmation Oversight Committee to act in a manner inconsistent with the Plan Administrator's fiduciary duties or powers and responsibilities under the Plan.

F.    *Wind Down*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to Wind Down and dissolve the Wind-Down Debtors.

As soon as practicable after the Effective Date, the Plan Administrator shall cause the Debtors to comply with, and abide by, the terms of the Plan and take any actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Except to the extent necessary to complete the Wind Down of any remaining assets or operations from and after the Effective Date the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to the Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

G.    *Plan Administrator and Post-Confirmation Oversight Committee Exculpation, Indemnification, Insurance, and Liability Limitation*

The Plan Administrator, Post-Confirmation Oversight Committee, and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

On and after the Effective Date, the Wind-Down Debtors and/or the Plan Administrator shall be authorized to purchase D&O Liability Insurance Policies for the benefit of their respective directors, members, trustees, officers, managers, and any Scheduled Party (as defined in the D&O Liability Insurance Policies) in the ordinary course of business.

H.    *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may

request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

I.      *Dissolution of the Debtors and Wind-Down Debtors*

On or after the Effective Date, the Plan Administrator may File one or more certifications with the Bankruptcy Court that it has substantially administered the Plan for one or each of the Debtors and such Debtors shall be deemed dissolved without further order of the Bankruptcy Court or action by the Plan Administrator, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor is formed or any other jurisdiction.   The Plan Administrator is authorized to take all necessary or appropriate actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

J.      *Cancellation of Securities and Agreements*

Upon the Effective Date: (1) the obligations of the Debtors under any certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such agreements, certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be canceled solely as to the Debtors and their Affiliates, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released.

K.      *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including (1) implementation of the Restructuring Transactions and (2) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).   All matters provided for in the Plan or deemed necessary or desirable by the Debtors or the Wind-Down Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, members or officers of the Debtors or the Wind-Down Debtors.   Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.   The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under non-bankruptcy law.

L.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Transactions in the name of and on behalf of the Wind-Down Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

M.     *Section 1146 Exemption*

To the extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

N.     *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, the Wind-Down Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII, or transferred to a Purchaser pursuant to a Purchase Agreement.

The Wind-Down Debtors, through the Plan Administrator, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or the Wind-Down Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan.**  Unless any Causes of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Wind-Down Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Wind-Down Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise expressly provided in the Plan, including Article IX of the Plan.  The applicable Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Wind-Down Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

O.        *Closing the Chapter 11 Cases*

When all Disputed Claims have become Allowed or disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of Debtor [Katerra Inc.] in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.        *Assumption (or Assumption and Assignment) and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement, including the Schedule of Assumed Executory Contracts and Unexpired Leases, or otherwise is specifically described in the Plan to not be rejected; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract (or a Sale Order contemplating the assumption and assignment of such Unexpired Lease or Executory Contract) as of the Confirmation Date (unless the counterparty to such Unexpired Lease or Executory Contract and the Debtors agree otherwise); (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is an Insurance Contract.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  For the avoidance of doubt, such assumptions, assignments, and rejections will be effective on or prior to the Effective Date of the Plan.

B.        *D&O Liability Insurance Policies*

Notwithstanding anything in the Plan to the contrary, the D&O Liability Insurance Policies shall be treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all D&O Liability Insurance Policies pursuant to sections 105 and 365 of the Bankruptcy Code in their entirety.  The Wind-Down Debtors shall maintain all D&O Liability Insurance Policies for the benefit of the Debtors' directors, members, trustees, officers, managers, any Scheduled Party (as defined in the D&O Liability Insurance Policies), any other insureds, and all such directors, members, trustees, officers, managers, Scheduled Parties (as defined in the D&O Liability Insurance Policies), and other insureds of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date, subject in all respects to the terms of the D&O Liability Insurance Policies.

C.      *Indemnification Obligations*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, any Scheduled Party (as defined in the D&O Liability Insurance Policies), other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Wind-Down Debtors which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; *provided* that, notwithstanding anything herein to the contrary, the Wind-Down Debtors' obligation to fund such indemnification obligations shall be limited to the extent of coverage available under any insurance policy assumed by the Debtors and assigned to the Wind-Down Debtors, including any D&O Liability Insurance Policies. For the avoidance of doubt, neither the Debtors nor the Estates shall have any obligation to reimburse such indemnity claims or expenses.

D.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan or Confirmation Order not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Wind-Down Debtors, the Estates, or their property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims. For the avoidance of doubt, nothing provided herein shall extend or modify any previously established deadline to file a claim arising from the rejection of an Executory Contract or Unexpired Lease previously rejected by the Debtors.

E.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned)*

Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by performance or payment of the default amount in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the Cure Obligation, (2) the ability of the Wind-Down Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), or (3) any other matter pertaining to assumption (or assumption and assignment) or the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be determined either (x) by agreement of the parties to such dispute or (y) following the entry of a Final Order or orders resolving the dispute and approving the assumption (or assumption and assignment).

At least fourteen (14) days prior to the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed to the applicable counterparties and their known counsel, notices of proposed assumption (or assumption and assignment), proposed cure, procedures for objecting thereto, and procedures for resolution by the Bankruptcy Court of any related disputes. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption (or assumption and assignment) or related cure amount must be Filed, served, and actually received by the Debtors at least three (3) days prior to the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption (or assumption and assignment) or cure amount will be deemed to have assented to such assumption (or assumption and assignment) or cure. To the

extent that the Debtors seek to assume (or assume and assign) an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will (in the applicable notice and/or Schedule): (a) identify the assignee; and (b) provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), which adequate assurance information will be provided with the notices of proposed assumption (or assumption and assignment).

Subject to cure or adequate assurance of prompt cure, as set forth in section 365(b) of the Bankruptcy Code, assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cure Obligations or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time prior to the effective date of assumption (or assumption and assignment). **Subject to full satisfaction of Cure Obligations, any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed (or assumed and assigned) shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

The Debtors, the Wind-Down Debtors, or the Plan Administrator may settle any Cure Claim dispute without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that notice of such settlement will be distributed to known counsel of the applicable counterparty by electronic mail.

F.    *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

G.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed (or assumed and assigned) shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Wind-Down Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as is reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  For the avoidance of doubt, claims in Class 3 will only be paid following the Plan Administrators determination of the appropriate Pro Rata share to be paid to each Holder following the Wind Down.

B.      *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent, which, for the avoidance of doubt, may be the Plan Administrator or the Wind-Down Debtors.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

C.      *Rights and Powers of Disbursing Agent*

1.      <u>Powers of the Disbursing Agent</u>

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      <u>Expenses Incurred on or after the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash in accordance with the Wind-Down Budget.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      <u>Record Date for Distribution</u>.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.      Delivery of Distributions

Except as otherwise provided herein, the Plan Administrator shall make distributions to Holders of Allowed Claims on the Effective Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Plan Administrator; *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.      Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be settled and enjoined pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claims against the Debtors, the Wind-Down Debtors, or their property.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be forever barred.

E.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Wind-Down Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms he or she believes are reasonable and appropriate.  The Debtors and Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

Property deposited into the various Claim distribution accounts described elsewhere in the Plan (including, to the extent applicable, the Post Effective Date Reserve) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations.  All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

F.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

H.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

I.      *Setoffs and Recoupment.*

Except as expressly provided in the Plan, each Wind-Down Debtor may, pursuant to sections 553 and 558 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Wind-Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Wind-Down Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided, however,* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Wind-Down Debtor or its successor of any and all claims, rights, and Causes of Action that such Wind-Down Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Wind-Down Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Claims Paid or Payable by Third Parties*

1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Wind-Down Debtors. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Wind-Down Debtors on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or the Wind-Down Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Wind-Down Debtors annualized interest at the Federal Judgment Rate on such amount owed for each day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract. To the extent that one or more of the Debtors' Insurance Companies agrees to pay, in full or in part, a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurance Companies' agreement, the applicable portion of such Claim may be

disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding anything to the contrary herein, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII.F hereof shall remain applicable to all general liability claims arising prior to the Petition Date up to any applicable self-insured retention amount under an applicable Insurance Contract, which are self-insured and shall be treated as general unsecured claims.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, payments to Holders of Claims covered by Insurance Contracts shall be in accordance with the provisions of any applicable Insurance Contract. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurance Companies under any Insurance Contracts, nor shall anything contained herein constitute or be deemed a waiver by such Insurance Companies of any defenses, including coverage defenses, held by such Insurance Companies.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

A.      *Allowance of Claims*

After the Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses such Debtor or its Estate had with respect to any Claim or Interest immediately before the Effective Date, including, but not limited to, defenses under section 558 of the Bankruptcy Code.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority:  (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Wind-Down Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, canceled, expunged, or otherwise disallowed (including pursuant to the Plan) in whole or in part, may be adjusted or expunged (including on the Claims Register, to the extent applicable) in whole or in part (as applicable)

by the Wind-Down Debtors without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F.      *Disallowance of Claims*

All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Pursuant to the terms of the Bar Date Order, if Proofs of Claim are not received by the Notice, Claims, and Balloting Agent on or before the Claims Bar Date or the Governmental Bar Date, as applicable, and except in the case of certain exceptions explicitly set forth in the Bar Date Order, the Holders of the underlying Claims shall be barred from asserting such Claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such Claims in these Chapter 11 Cases.  The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not received by the Notice, Claims, and Balloting Agent before the Bar Date or the Governmental Bar Date, as applicable, and not subject to an exception as set forth above; *provided* that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.

G.      *Amendments to Claims*

On or after the applicable Bar Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Wind-Down Debtors.  Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII.B, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.      *Distributions after Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order (and, if applicable, a determination of the appropriate Pro Rata amount to pay on account of such claim), the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

J.      *Special Rules for Distributions to Holders of Disputed Claims*

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors, the Wind-Down Debtors, or the Plan Administrator, on the one hand, and the holder of a Disputed Claim or Interest, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Interest until the Disputed Claim or Interest has become an Allowed Claim or Interest, as applicable, or has otherwise been resolved by settlement or Final Order.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Release of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

C.      **Release by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be hereby conclusively, absolutely, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' capital structure, management, ownership, or operation thereof, the Restructuring Transactions, the sale and marketing process, the Wind Down, the Chapter 11 Cases,**

the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, any Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date or relating to any of the forgoing.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII by the Debtors, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything contained herein to the contrary (except for Article VIII.G, if applicable), the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) any obligations of any party under a Sale Transaction or any document, instrument, or agreement executed to implement a Sale Transaction, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, or (v) the parties not released as part of the "Non-Released Claims" described and preserved in paragraph 29 of the order entered at Docket No. 414, which paragraph, for the avoidance of doubt, is not modified in any way by the foregoing Release and such claims described therein are not part of this Debtor Release contemplated by the Plan.

D.      *Third-Party Release*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Debtor, Wind-Down Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, any of the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' capital structure, management, ownership, or operation thereof, the Restructuring Transactions, the sale and marketing process, the Wind Down, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, any Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction,

agreement, event, or other occurrence taking place on or before the Effective Date or relating to any of the forgoing.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) an absolute and complete bar to any of the Debtors or Wind-Down Debtors or their respective Estates conveying direct or derivative standing to any person or Entity to pursue any claim, Causes of Action or liability against any Released Party, or asserting any claim, Causes of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything contained herein to the contrary (except for Article VIII.G, if applicable), the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) any obligations of any party under a Sale Transaction or any document, instrument, or agreement executed to implement a Sale Transaction, (iii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (iv) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, or (v) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan.

E.      *Exculpation*

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or Interest for any postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of any Sale Transaction, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.      *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtors pursuant to the Plan; (c) have been released by third parties pursuant to the Plan; (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties:  (1) commencing

or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan.  Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.

G.      Securities and Exchange Commission Considerations

        Notwithstanding any provision contained herein to the contrary, no provision of the Plan, or any order confirming the Plan, shall (i) release any non-Debtor person or Entity (including any Released Party) from any Claim or Causes of Action of the SEC or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any Claims, Causes of Action, proceedings, or investigations against any non-Debtor person or Entity (including any Released Party) in any forum.

H.      Protections against Discriminatory Treatment.

        To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a release), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      Reimbursement or Contribution.

        If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

J.      Term of Injunctions or Stays

        Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.    the Bankruptcy Court shall have entered the Confirmation Order;

2.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.    the Post-Confirmation Oversight Committee shall have been constituted;

4.    the Reserves shall have been established and funded as set forth herein; and

5.    the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors in their discretion.

B.      *Waiver of Conditions*

The conditions to Consummation set forth in Article IX.A may be waived by the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. §§ 1101 and 1127, shall be deemed to occur on the Effective Date.

D.      *Effect of Nonoccurrence to the Confirmation Date or Effective Date.*

If the Confirmation or Consummation of the Plan does not occur, (1) the Plan shall be null and void in all respects other than as set forth herein and (2) nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (b) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.        *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.        *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption (or assumption and assignment) or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.        decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including accrued Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.        resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Obligations pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Wind-Down Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.        ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

35

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.      consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, whether they occur before, on or after the Effective Date;

21.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any settlements, exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

23.      hear and determine all disputes related to any Sale Transaction;

24.     enforce all orders previously entered by the Bankruptcy Court; and

25.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are presumed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Wind-Down Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees.*

All fees and applicable interest payable pursuant to section 1930(a) of the Judicial Code and 31 U.S.C. § 3717, as applicable, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Wind-Down Debtors (or the Disbursing Agent on behalf of each of the Wind-Down Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.      *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred by the Committee and its Professionals.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date except as provided in the prior sentence.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

F.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (including by facsimile transmission).  Unless otherwise expressly provided herein, all notices, requests and demands shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

> Katerra Inc.
> 9305 East Via de Ventura
> Scottsdale, Arizona 85258
> Attention:  Christopher Wells, Chief Restructuring Officer
> E-mail address:  CWells@alvarezandmarsal.com
>
> with copies (which shall not constitute notice) to:
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention:  Joshua A. Sussberg, P.C. and
> Christine A. Okike, P.C.
> E-mail address:  joshua.sussberg@kirkland.com;
>                  christine.okike@kirkland.com
>
> - and -
>
> Kirkland & Ellis LLP
> 300 North LaSalle Street
> Chicago, Illinois 60654
> Attention: Joshua M. Altman and
> Dan Latona
> E-mail address:  josh.altman@kirkland.com
>                  dan.latona@kirkland.com
>
> - and -
>
> Jackson Walker L.L.P.
> 1401 McKinney Street, Suite 1900
> Houston, Texas 77010
> Attn.:  Matthew D. Cavenaugh, Jennifer F. Wertz, and
> J. Machir Stull
> E-mail address:  mcavenaugh@jw.com
>                  jwertz@jw.com
>                  mstull@jw.com

After the Effective Date, the Wind-Down Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

### H.      Entire Agreement

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### I.      Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Notice, Claims, and Balloting Agent at https://cases.primeclerk.com/Katerra or the Bankruptcy Court's website at www.txsb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

### J.      Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

### K.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

### L.      Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

### M.      Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

Katerra Inc.

August 13, 2021

By:     */s/ Marc Liebman*

Name:   Marc Liebman

Title:    Chief Transformation Officer

COUNSEL:

Houston, Texas

August 13, 2021

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   (713) 752-4200
Facsimile:    (713) 752-4221
Email:       mcavenaugh@jw.com
              jwertz@jw.com
              mstull@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:       joshua.sussberg@kirkland.com
              christine.okike@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:       josh.altman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*