## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| KATERRA INC., *et al.*, | : |
| | : Case No. 21-31861 (DRJ) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| KATERRA INC., by and through Daniel R. Williams, as Plan Administrator on behalf of Katerra Inc. and related debtors, | : |
| | : |
| | : |
| | : Adv. No. |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PAAL KIBSGAARD, | : |
| | : |
| Defendant. | : |
| | : |

## **COMPLAINT**

Katerra Inc. and its affiliated debtors[1] ("Plaintiffs" or "Debtors"), by and through Daniel

R. Williams as Plan Administrator ("Plan Administrator"), hereby file this Complaint against Paal

Kibsgaard ("Defendant" or "Kibsgaard") to recover avoidable transfers and damages for breach of

contract, and allege in support thereof as follows:

---

[1]  The Debtors a/k/a Wind-Down Debtors are: (i) Katerra Inc.; (ii) CAPGro Construction Management LLC; (iii) Katerra Inc. (Cayman); (iv) AlgoSquare Inc.; (v) Katerra Architecture LLC; (vi) Edge @ LoHi LLC; (vii) Katerra Construction LLC; (viii) Hillsboro 1 Project LLC; (ix) Katerra Engineering LLC; (x) Katerra Pearson Ranch Investment LLC; (xi) Lord Aeck & Sargent Inc.; (xii) Katerra Pegasus RiNo Investment LLC; (xiii) Hillsboro 1 Project MM LLC; (xiv) Katerra XSC Houston Investment LLC; (xv) Katerra RO2 Knipe Village Investment LLC; (xvi) Apollo Technologies Inc.; (xvii) Hillsboro 2 Project LLC; (xviii) Kirkland 1 Project LLC; (xix) Kirkland 1 Project MM LLC; (xx) Hillsboro 2 Project MM LLC; (xxi) Bristlecone 28th Ave, LLC; (xxii) Perimeter Building Services LLC; (xxiii) Kirkland 2 Project LLC; (xxiv) Bristlecone Residential LLC; (xxv) Katerra Affordable Housing LLC; (xxvi) Construction Assurance Ltd.; (xxvii) Roots Software LLC; (xxviii) Kirkland 2 Project MM LLC; (xxix) Dangoo Electronics (USA) Co. Ltd.; (xxx) Skyview Concrete LLC; (xxxi) UEB Builders, Inc.; (xxxii) Valpico Glenbriar Apartments LLC; and (xxxiii) WM Aviation, LLC.  The Wind-Down Debtors' service address in these chapter 11 cases is 3101 North Central Avenue, Suite 670, Phoenix, AZ 85012.

## A.   BACKGROUND

1.      On June 6, 2021 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the Southern District of Texas (Houston Division).  Thereafter, the cases were jointly administered under Case Number 21-31861(DRJ) (the "<u>Bankruptcy Case</u>").

2.      On June 7, 2021, the Debtors filed the *Declaration Of Marc Liebman In Support Of Chapter 11 Petitions And First Day Motions* and the *Declaration of Matthew R. Niemann In Support Of (A) DIP Financing And (B) All First Day Relief* [Docket No. 37 – the "<u>Liebman Declaration</u>" and Docket No. 39 – the "<u>Niemann Declaration</u>," respectively, and collectively, the "<u>First Day Declarations</u>"] in order to provide a brief history of the Debtors, an overview of the Debtors' operations, the need for Chapter 11 relief, and the anticipated course of the Bankruptcy Case.

3.      According to the First Day Declarations[2]:

   a)  The Debtors operated as "an innovative and eco-conscious construction company that develop[ed], manufacture[d], and market[ed] products and services in the commercial and residential construction spaces" from 2015 through the Petition Date;

   b)  During this six year period, the Debtors rapidly expanded their footprint through acquisitions of construction businesses and manufacturing facilities in the United States, Canada, India, and Saudi Arabia;

   c)  Despite having secured over $3 billion in equity investments, the Debtors

---

[2]  Plaintiffs do not adopt or otherwise accept as true the averments set forth in the First Day Declarations but include them herein merely for background purposes.

continually experienced operational issues and suffered significant financial losses as a result of, among other things, their heavy operating-cost structure, high cash burn, recurring losses on construction projects, continuous inability to generate profits, problems in securing bonding for new projects, identification of improper revenue recognition practices/accounting irregularities, and insufficient working capital;

d) From 2018 through 2020, the Debtors experienced approximately $2.78 billion in financial losses;

e) In the period July 2020 through September 2020, the Debtors appointed new management and engaged restructuring advisors as well as investment bankers; and

f) The Debtors and certain of their non-debtor subsidiaries had an aggregate principal amount of approximately $1.29 billion to $1.55 billion in estimated obligations as of the Petition Date.

4. On October 21, 2021 (the "Confirmation Date"), the Bankruptcy Court entered an *Order (I) Approving the Disclosure Statement and (II) Confirming the Amended Joint Chapter 11 Plan of Katerra Inc. and Its Debtor Subsidiaries* [Docket No. 1372 - the "Confirmation Order"], which confirmed the *Amended Joint Chapter 11 Plan of Katerra Inc. and Its Debtor Subsidiaries* [Docket No. 1338 - the "Plan"] and appointed Daniel R. Williams of JS Held, LLC as Plan Administrator, sole manager and sole officer of the above-captioned Wind-Down Debtors.

5. The Debtors filed their *Notice Of Occurrence Of The Effective Date Of The Amended Joint Chapter 11 Plan Of Katerra Inc. And Its Debtor Subsidiaries* [Docket No. 1422], stating that the effective date of the Plan occurred on October 29, 2021 (the "Effective Date").

6.     The Plan and Confirmation Order preserve the Plan Administrator's right to prosecute Causes of Action.  *See* Plan at Article IV, ¶ N ("… the Wind-Down Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date…").

7.     On October 20, 2021, the Wind-Down Debtors filed the *Notice of Filing of Third Amended Plan Supplement* [Docket No. 1358 – the "Third Amended Plan Supplement"], and attached as Schedule B thereto a Schedule of Retained Causes of Action.  Schedule B to the Third Amended Plan Supplement preserves the Wind-Down Debtors' right to pursue, among other things, the following Causes of Action[3]: (i) "any and all Causes of Action, … for breach of contract, negligence, professional negligence, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or other duties, or fraud, and any other claims, rights, demands, damages and liabilities of any kind whether in law or in equity, whether such claims are known or unknown, directly or indirectly arising from or related to the causes of action described herein against Non-Released D&O Parties, including without limitation the Non-Released D&O Parties identified on Exhibit F attached [to the Third Amended Plan Supplement] …" ; (ii) "any and all Causes of Action related to any payments received by insiders, including, without limitation, certain insider payments identified on Schedule B(i) [to the Third Amended Plan Supplement]"; (iii) "any and all Causes of Action related to certain transfers identified on Schedule B(ii) attached [to the Third

---

[3] To the extent there is any inconsistency between the summary of the Causes of Action set forth in this Complaint, the terms of the Plan, Confirmation Order, and applicable Plan Supplement govern.

Amended Plan Supplement]"; and (iv) "any and all Causes of Action identified on Schedule B(v) attached [to the Third Amended Plan Supplement]. *See* Docket No. 1358, pages 13-16.

8.     Defendant Kibsgaard is explicitly listed as a Non-Released D&O Party on Exhibit F to the Third Amended Plan Supplement. *See id.* at page 46.

**B.     PARTIES**

9.     By virtue of the Plan and Confirmation Order, the Plan Administrator has standing and authority to prosecute causes of action that were preserved and vested in the Debtors on the Effective Date of the Chapter 11 Plan, including the causes of action asserted herein against the Defendant.

10.     Defendant Kibsgaard is a citizen of the State of Texas and is sui juris.  Kibsgaard served in the following roles for Katerra Inc.: (i) Chief Operating Officer from August 2019 to July 2020; (ii) Chief Executive Officer from July 2020 to May 2021; and (iii) Director from May 2016 through May 2021.  At all relevant times to the claims asserted herein, Kibsgaard was an "insider" of the Debtors within the meaning of Bankruptcy Code section 101(31B).

**C.     JURISDICTION AND VENUE**

11.     This is an action against the Defendant seeking the recovery of avoidable transfers, damages for breach of contract, turnover of property of the Debtors' estate, and restitution for unjust enrichment pursuant to (i) Bankruptcy Code sections 544, 547, 548, and 550 and (ii) Texas Bus. Comm. Code § 24.001 *et seq.* (the "Texas Fraudulent Transfer Act") or, in the alternative, California Civ. Code §§ 3439.04(a) and 3439.05 (the "California Voidable Transactions Act").

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  In the Confirmation Order, the Court retained jurisdiction over the Chapter 11 cases and all matters arising out of or related to the Chapter 11 cases and the Plan

notwithstanding entry of such order and the occurrence of the Effective Date.  This action holds a close nexus to the Plan, in that it affects the interpretation, consummation, execution, or administration thereof.

13.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (F), (H) and (O).  In the event any of the claims asserted herein constitute non-core proceedings and/or if this Court lacks the constitutional authority to enter final judgment on any of the claims pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and other applicable law, Plaintiffs consent to the entry of final orders and judgment by the Bankruptcy Court.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

**D.     GENERAL ALLEGATIONS**

15.     On October 13, 2017, Katerra Inc. (as lender) and Kibsgaard (as borrower) entered into a Secured Partial Recourse Promissory Note (the "Note") in consideration for Kibsgaard's purchase of 275,000 ordinary shares of the company.   A true and correct copy of the Note is attached hereto as ***Exhibit A***.

16.     The Note was in the principal amount of $6,135,250, accrued interest at the rate of 3.0% per annum (compounded annually), and matured on the close of business of (a) the 10th anniversary of the date of the Note, or (b) the date of a Change in Control as defined in Katerra Inc.'s 2015 Equity Incentive Plan and the subject share option agreements.

17.     The Note also contained the following security and recourse provisions:

5.  Security and Recourse: The Obligations shall be secured by a first-priority security interest in all of the Shares and/or Collateral…. *Regardless of any collateral that may secure the Borrower's obligations under this Note,* **the Borrower shall remain personally liable for the payment in full of any obligations owing under this Note to the extent of the sum of (a) 51% of the Original Principal under this Note, plus (b) any unpaid interest due or compounded under this Note and any Costs** *(as defined below) (the immediately preceding subparts (a) and (b) collectively referred to as, the "Recourse Portion"), and*

the Company will have, in addition to its rights and remedies under this Note and the Equitable Mortgage, full recourse against any real, personal, tangible or intangible assets of Borrower to the extent of the Recourse Portion, and may pursue any legal or equitable remedies that are available to it.

(Emphasis added).

18.     The Note also stated the following would constitute an "event of default" (thereby triggering the lender's right to declare the Note to be immediately due and payable by the borrower and authorizing the lender to exercise any of its enforcement rights with regard thereto): the date that is one year following the termination of Kibsgaard's employment with the company (the "Event of Default").

19.     By August 20, 2020 (or approximately ten months before the Petition Date), the outstanding balance of the Note was $6,675,440.09.

20.     At that time, however, Kibsgaard demanded substantial additional compensation because he had taken on the role of Chief Executive Officer in July 2020 while the Debtors were experiencing significant operational and financial issues.

21.     In or about August 2020, Katerra Inc. and Kibsgaard entered into an Employment Agreement establishing the terms and conditions of Kibsgaard's position as Chief Executive Officer effective July 1, 2020.  Among other things, Kibsgaard's annual base salary was increased from $750,000 per year to $1,000,000 per year (or from $31,250 per pay period to $41,667 per pay period respectively) pursuant to the Employment Agreement (the "Salary Increase").

22.     The Debtors (through Brendan Franich, VP Legal) and Kibsgaard also determined that additional compensation could be paid to Kibsgaard by reducing the aggregate outstanding balance of the Note through the repurchase of his ordinary shares and by forgiving the remaining balance of the Note.

23.     In mid-August 2020, the parties exchanged emails bearing the subject line "Promissory Note Forgiveness".

24.     In emails dated August 14, 2020, Kibsgaard proposed the ratable forgiveness of his indebtedness on January 15, 2021, July 15, 2021, January 15, 2022, and July 15, 2022 along with cash payments from the company to cover his personal income tax liability resulting from the cancellation of debt.

25.     At the same time, Kibsgaard sought to ensure that "[i]n the event the company goes bankrupt, the entire remaining loan will be forgiven automatically and the tax liability gross up balance will be accelerated and paid to P[aal] K[ibsgaard].  In the event the company is unable to pay the tax liability, any outstanding payments will be covered by Softbank."

26.     By August 16, 2020, Kibsgaard sought immediate forgiveness of the Note in full.

27.     The emails also reflected (i) a sense of urgency in finalizing the transaction with Kibsgaard; (ii) an effort to lighten the "cash burden on the company"; (iii) a desire to avoid withholding and remitting tax liabilities to the IRS in connection with the loan forgiveness if it would not be flagged by the auditors; (iv) recognition that a bankruptcy filing may be in the offing; and (v) apprehension concerning use of a valuation report that was premised, in part, on a funding event that did not occur.

28.     On August 20, 2020, Katerra Inc.'s Board of Directors passed resolutions "concerning the approval of certain compensation terms for Mr. Kibsgaard in his role as Chief Executive Officer…." (the "Resolutions").  True and correct copies of the Minutes of the August 20, 2020, board meeting, the Resolutions, and an unsigned Letter Agreement between Katerra Inc. and Kibsgaard are attached hereto as ***Exhibit B***.

29.     Shortly after board approval was obtained on August 20, 2020, Katerra Inc. and

Kibsgaard executed a Letter Agreement bearing the subject line "Amendment to Promissory Note" and which incorporated the compensation terms set forth in the Resolutions.  A true and correct copy of the Letter Agreement is attached hereto as **Exhibit C**.

30.    In the Letter Agreement, Katerra Inc. agreed to:

(i)    repurchase 3,750,000 common shares held by Kibsgaard at a per share purchase price of $0.96 per share by way of a $3,600,000 reduction of the aggregate balance of the Note (the "Stock Repurchase");

(ii)    forgive Kibsgaard's remaining $3,075,440.09 indebtedness under the Note (the "Loan Forgiveness"); and

(iii)    gross-up and pay Kibsgaard's personal income tax liability resulting from the Loan Forgiveness in the amount of $1,210,185.68 in two annual installments of $997,679.87 each[4] on January 1, 2021, and January 1, 2022 (the "Tax Reimbursement(s)")

(the "Stock Repurchase," "Loan Forgiveness," and "Tax Reimbursement(s)" shall hereinafter sometimes be referred to collectively as the "August 2020 Transactions").

31.    As reflected in the Letter Agreement, Katerra Inc. valued Kibsgaard's common shares in the Stock Repurchase at $0.96 per share based on a report prepared by Anderson Tax LLC dated July 29, 2020, which valued the company's ordinary shares at $0.96 per share as of March 31, 2020 (the "Valuation Report").  Despite its previously expressed apprehension in using the Valuation Report, Katerra Inc.'s Board of Directors noted in the Resolutions that there was "no event or circumstance having occurred since the Valuation Date that the Board believes would make it unreasonable to rely on such Valuation, the Board hereby determines that the current fair market value per share of the ordinary shares is $0.96 per share."

---

[4] Since the Tax Reimbursement(s) were likewise subject to applicable withholdings and Kibsgaard was in the 39.35% tax bracket, these Tax Reimbursement(s) would ensure full repayment of Kibsgaard's $1,210,185.68 cancellation of debt personal income tax liability resulting from the Stock Repurchase.

32.     In reality, however, Katerra Inc.'s Board of Directors and Kibsgaard knew or should have known the Valuation Report should not have been used for the Stock Repurchase because it was based on the company's anticipated receipt of $100 million in funding from Softbank/SVF Abode (Cayman) Limited during the summer of 2020 and such funding did not occur.  Instead, all objective financial and operational data should have led the board to conclude that Katerra Inc.'s common shares were worthless and that Katerra Inc. was insolvent as of August 20, 2020.

33.     Nevertheless, Katerra Inc.'s Board of Directors chose to press forward with the grossly inflated valuation of the common shares in the Valuation Report in order to effectuate the Stock Repurchase with Kibsgaard.

34.     But for the August 2020 Transactions, (which are subject to avoidance as alleged herein), the Note would have matured by no later than October 21, 2021 by virtue of the "Change in Control" that occurred through the sale of substantially all of the Debtors' assets between the Petition Date and Confirmation Date.[5]  "Change in Control" was defined at section 2(f)(iii) of Katerra Inc.'s 2015 Equity Incentive Plan as a "[a] change in the ownership of a substantial portion of the Company's assets which occurs on the date that any Person acquires (or has acquired during the twelve (12) month period ending on the date of the most recent acquisition by such person or persons) assets from the Company that have a total gross fair market value equal to or more than 50% of the total gross fair market value of all of the assets of the Company immediately prior to such acquisition or acquisitions."

35.     In addition, an Event of Default would have occurred under the Note on May 28,

---

[5] *See, e.g.,* Docket Nos. 30, 176, 187, 370, 412, 414, 662, 684, 715, 721, 732, 793-794, 845, and 937.

2022 - the date that was one year following the termination of Kibsgaard's employment with the company.  Since the August 2020 Transactions are subject to avoidance as alleged herein and the Note is in a state of default or has otherwise matured, the Plan Administrator (as the Debtors' sole authorized representative) has elected and declared the Note and all other obligations secured thereunder to be immediately due and payable by Kibsgaard.

36.     To date, Kibsgaard has failed to repay any portion of the Note.

37.     On or about January 8, 2021 (or approximately five months before the Petition Date), Katerra Inc. transferred the first installment of the Tax Reimbursement(s) in the amount of $997,679.87 to Kibsgaard pursuant to the Letter Agreement executed on August 20, 2020 (the "Tax Reimbursement Transfer").

38.     On or about April 30, 2021 (or approximately 36 days before the Petition Date), Katerra Inc. paid $72,916.69 to Kibsgaard in order to retroactively adjust his pay from $31,250 per pay period (or $750,000 per year) to $41,667 per pay period (or $1,000,000 per year) from January 1, 2021, through April 15, 2021 pursuant to the Salary Increase provisions of the Employment Agreement effective July 1, 2020 (the "Retroactive Pay Adjustment").

**E.      CLAIMS**

## COUNT I
### Action to Avoid Preferential Transfer of Tax
### Reimbursement Transfer Pursuant to 11 U.S.C. § 547(b)

39.      Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.      Debtor Katerra Inc.'s Tax Reimbursement Transfer to Defendant Kibsgaard in the one year period preceding the Petition Date constituted a transfer of an interest of the Debtor in property made: (i) within one year of the Petition Date; (ii) to or for the benefit of Kibsgaard who, at all relevant times, was a creditor and insider of the Debtor; (iii) for or on account of an antecedent debt owed by the Debtor to Kibsgaard before such transfer was made; and (iv) while the Debtor was insolvent.

41.      Debtor Katerra Inc.'s Tax Reimbursement Transfer to Defendant Kibsgaard on or about January 8, 2021 enabled him to receive more than he would have received if: (i) this case were a case under Chapter 7 of the Bankruptcy Code; (ii) the Tax Reimbursement Transfer had not been made; and (iii) Kibsgaard received payment of his debt to the extent provided by the Bankruptcy Code.

42.      By reason of the foregoing, Debtor Katerra Inc.'s Tax Reimbursement Transfer to Defendant Kibsgaard is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### Avoidance and Recovery of Actual Fraudulent Transfers
### Under 11 U.S.C. §§ 548(a)(1)(A) – August 2020 Transactions

43.      Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

44.     This is an action by Plaintiffs to avoid the August 2020 Transactions consisting of Debtor Katerra Inc.'s Stock Repurchase totaling $3.6 million, Loan Forgiveness totaling $3,075,440.09, and Tax Reimbursement(s) totaling $997,679.87 pursuant to 11 U.S.C. § 548(a)(1)(A).

45.     The August 2020 Transactions constituted transfers of interests of Katerra Inc. in property made to Kibsgaard:

      a.   Within two years prior to the Petition Date; and

      b.   With actual intent to hinder or delay any entity to which Katerra Inc. was or became indebted on or after the date that such transfer was made.

46.     As alleged hereinabove at paragraphs 22 through 33, Katerra Inc. negotiated and consummated the August 2020 Transactions while the Debtors were experiencing significant operational and financial issues which placed them on the brink of bankruptcy.

47.     Katerra Inc. harbored the actual intent to hinder or delay the Debtors' creditors when it chose to pass the Resolutions, execute the Letter Agreement, and transfer interests of the Debtors in property to Kibsgaard totaling approximately $6,675,440.09 rather than to collect and utilize these funds to repay creditor claims.

**COUNT III**
**Avoidance and Recovery of Constructive Fraudulent Transfers**
**Under 11 U.S.C. § 548(a)(1)(B) – August 2020 Transactions**

48.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

49.     This is an action by Plaintiffs to avoid the August 2020 Transactions consisting of Katerra Inc.'s Stock Repurchase totaling $3.6 million, Loan Forgiveness totaling $3,075,440.09, and Tax Reimbursement(s) totaling $997,679.87 pursuant to 11 U.S.C. § 548(a)(1)(B).

50.     The August 2020 Transactions constituted transfers of interest of Katerra Inc. in property made to Kibsgaard:

        a.      Within two years prior to the Petition Date;

        b.      For less than reasonably equivalent value in exchange for such transfer; and

        c.      At a time when Katerra Inc. was:

                (i)      insolvent or became insolvent as a result of the transfer;

                (ii)     engaged or about to be engaged in a business or transaction for which the remaining property of Katerra Inc. was unreasonably small capital; or

                (iii)    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

### COUNT IV
### Avoidance of Actual Fraudulent Transfer – August 2020 Transactions
### *Tex. Bus. & Comm. Code § 24.005(a)(1) through 11 U.S.C. § 544(b)(1)*

51.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

52.     Under Bankruptcy Code section 544(b)(1), Plaintiffs may avoid any transfer of an interest of the Debtor that is voidable under applicable state law by a creditor holding an unsecured allowable claim under Bankruptcy Code section 502.

53.     Under the Texas Fraudulent Transfer Act, a creditor may recover a transfer made with actual intent to hinder, delay, or defraud any creditor of the Debtor. TEX. BUS. & COMM. CODE § 24.005(a)(1). Relevant factors for determining actual intent under the Texas Act include: (1) the transfer or obligation was concealed; (2) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (3) the value of the consideration

received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (4) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

54.     As alleged hereinabove at paragraphs 22 through 33, Katerra Inc. negotiated and consummated the August 2020 Transactions while the Debtors were experiencing significant operational and financial issues which placed them on the brink of bankruptcy.

55.     Katerra Inc. harbored the actual intent to hinder or delay the Debtors' creditors when it chose to pass the Resolutions, execute the Letter Agreement, and transfer interests of the Debtors in property to Kibsgaard totaling approximately $6,675,440.09 rather than to collect and utilize these funds to repay creditor claims.

56.     Katerra Inc. was insolvent at the time of the August 2020 Transactions or was rendered insolvent as a result of such transactions.

57.     Accordingly, Plaintiffs may avoid the August 2020 Transactions under the Texas Fraudulent Transfer Act.

**COUNT V**
**(Constructively Voidable Transfer of the August 2020 Transactions - Texas Fraudulent Transfer Act) [11 U.S.C. § 544(b)/TEX. BUS. & COMM. CODE § 24.005(a)(2)]**

58.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

59.     Under Bankruptcy Code section 544(b)(1), Plaintiffs may avoid any transfer of an interest of the Debtor in property that is voidable under applicable state law by a creditor holding an unsecured allowable claim under Bankruptcy Code section 502.

60.     At the time of the August 2020 Transactions, Katerra Inc. had other creditors who held unsecured claims allowable under Bankruptcy Code section 502.

61.     Under the Texas Fraudulent Transfer Act, a creditor may recover a transfer made by a debtor without receiving reasonably equivalent value in exchange therefor and where the debtor was engaged in a transaction for which its remaining assets were unreasonably small in relation to the transaction. TEX. BUS. & COMM. CODE § 24.005(a)(2)(A).

62.     Here, Katerra Inc. structured and consummated the August 2020 Transactions with Kibsgaard in the two year period preceding the Petition Date and did not receive reasonably equivalent value in exchange therefor from Kibsgaard.

63.     Additionally, Katerra Inc. was insolvent at the time of, or was rendered insolvent as a result of, the August 2020 Transactions.

64.     By reason of the foregoing, the August 2020 Transactions are avoidable by Plaintiffs under the Texas Fraudulent Transfer Act.

**COUNT VI**
**(State Law Intentionally Voidable Transfer - August 2020 Transactions**
**[11 U.S.C. § 544(b)/California Civ. Code § 3439.04(a)(1)])**

65.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

66.     Plaintiffs are informed and believe Katerra Inc. harbored the actual intent to hinder or delay any creditor of the debtor as described hereinabove in connection with the August 2020 Transactions.

67.     As alleged hereinabove, Defendant Kibsgaard is an initial transferee of the August 2020 Transactions and did not take such transfers in good faith for value.

## COUNT VII
### (Constructively Voidable Transfer of August 2020 Transactions – California Voidable Transactions Act)
### [11 U.S.C. § 544(b)/Cal. Civ. Code § 3439.04(a)(2)])

68.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

69.     Katerra Inc. structured and consummated the August 2020 Transactions with Kibsgaard without receiving a reasonably equivalent value in exchange for such transfers and the Debtor either: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

70.     Kibsgaard was the beneficiary of the August 2020 Transactions with Katerra Inc. and did not take such transfers for value and in good faith.

## COUNT VIII
### (Voidable Transfer of August 2020 Transactions Due to Insolvency – California Voidable Transactions Act)
### [11 U.S.C. § 544(b)/Cal. Civ. Code § 3439.05])

71.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

72.     At the time of the August 2020 Transactions, Katerra Inc. had existing creditors and without receiving a reasonably equivalent value in exchange for such transfers and the Debtor was insolvent or was rendered insolvent at the time of such transfers.

## COUNT IX
### Action to Avoid Preferential Transfer of Retroactive Pay
### Adjustment Transfer Pursuant to 11 U.S.C. § 547(b)

73.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

74.     Katerra Inc.'s Retroactive Pay Adjustment transfer to Kibsgaard on or about April 30, 2021 constituted a transfer of an interest of the Debtor in property made: (i) within the ninety day period preceding the Petition Date; (ii) to or for the benefit of Kibsgaard who, at all relevant times, was a creditor and insider of the Debtor; (iii) for or on account of an antecedent debt owed by the Debtor to Kibsgaard before such transfer was made; and (iv) while the Debtor was insolvent.

75.     Katerra Inc.'s Retroactive Pay Adjustment transfer to Kibsgaard on or about April 30, 2021 enabled him to receive more than he would have received if: (i) this case were a case under Chapter 7 of the Bankruptcy Code; (ii) the Retroactive Pay Adjustment transfer had not been made; and (iii) Kibsgaard received payment of his debt to the extent provided by the Bankruptcy Code.

76.     By reason of the foregoing, Katerra Inc.'s Retroactive Pay Adjustment transfer to Kibsgaard is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT X
### Recovery Of Fraudulent Transfers Under 11 U.S.C. § 550

77.     Plaintiffs repeat and reallege paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     Katerra Inc. made the Tax Reimbursement Transfer, Retroactive Pay Adjustment transfer, and August 2020 Transactions with Kibsgaard.

79.     Plaintiffs have asserted claims to avoid the Tax Reimbursement Transfer, Retroactive Pay Adjustment transfer, and August 2020 Transactions pursuant to federal bankruptcy law and applicable state law.

80.     In the event the Court avoids the Tax Reimbursement Transfer, Retroactive Pay Adjustment transfer, and/or the August 2020 Transactions, Plaintiffs are also entitled to recover such transfers or the value thereof for the benefit of the Debtors' estate pursuant to Bankruptcy Code section 550.

## COUNT XI
## Breach of Contract

81.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth at length herein.

82.     On October 13, 2017, Katerra Inc. and Kibsgaard entered into the Note in order to enable Kibsgaard to purchase 275,000 ordinary shares of the company.

83.     Under the Note, Kibsgaard was personally liable for repayment of (a) 51% of the original principal balance of $6,135,250, plus (b) any unpaid interest due or compounded under the Note and any Costs (as defined therein) to Katerra Inc.

84.     The outstanding balance of the Note was $6,675,440.09 as of August 20, 2020 and interest continued to accrue thereon until the Note was satisfied.

85.     As set forth herein, the August 2020 Transactions are avoidable and should be avoided pursuant to federal bankruptcy law and applicable state law.

86.     Kibsgaard's 3,750,000 common shares should not have been valued at a per share purchase price of $0.96 per share because such stock was worthless at the time and the Note should not have been reduced by $3,600,000 in the Stock Repurchase.

87.     As a result, Kibsgaard remains personally liable to Katerra Inc. for repayment of the Note to the extent of the sum of (a) 51% of the original principal amount of $6,135,250, plus (b) any unpaid interest due or compounded under the Note and any Costs (as defined therein) (the immediately preceding subparts (a) and (b) collectively referred to as, the "Recourse Portion").

88.     Kibsgaard was required to repay the outstanding indebtedness under the Note to Katerra Inc. when the Note matured by October 21, 2021 as a result of the "Change in Control" that occurred when substantially all of the Debtors' assets were sold between the Petition Date and Confirmation Date.

89.     Alternatively, Kibsgaard was required to repay the outstanding indebtedness under the Note to Katerra Inc. as a result of the event of default that occurred on May 28, 2022 (the date that was one year following the termination of his employment with the company).

90.     To date, Kibsgaard has failed to repay any portion of the Note.

91.     Kibsgaard's failure to repay the Note to Katerra Inc. constitutes a material breach of the Note.

92.     As a direct and proximate result of Kibsgaard's material breach of the Note, Katerra Inc. has suffered damages.

93.     All conditions precedent to the assertion of this claim have been performed, waived, satisfied or have otherwise occurred.

**COUNT XII**
**Action for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542**

94.     Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth at length herein.

95.     Bankruptcy Code section 542(b) states that, "[e]xcept as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

96.     Defendant Kibsgaard is an entity that owes a debt (consisting of his indebtedness under the Note) that is property of Katerra Inc.'s estate and that is matured, payable on demand, or payable on order.

97.     Accordingly, Defendant Kibsgaard is required to pay such debt (consisting of his indebtedness under the Note) to or on the order of the Plan Administrator on behalf of Katerra Inc.

98.     The debt (consisting of his indebtedness under the Note) may not be offset under Bankruptcy Code section 553 against a claim against Katerra Inc.

99.     Accordingly, Defendant Kibsgaard is required to turnover the full amount owed under the Note to Katerra Inc. pursuant to Bankruptcy Code section 542(b).

**COUNT XII**
**Claim for Unjust Enrichment**

100.    Plaintiffs repeat and reallege paragraphs 1 through 38 of this Complaint as if fully set forth at length herein.

101.    This is a claim for unjust enrichment.

102.    Katerra Inc. conferred benefits upon Defendant Kibsgaard by (i) allowing him to

purchase 275,000 ordinary shares of the company on October 13, 2017; (ii) allowing him to hold such shares for a period of nearly three years without any out-of-pocket upfront or subsequent expense; and (iii) paying him $997,679.87 for the Tax Reimbursement Transfer.

103.    Kibsgaard knowingly and voluntarily accepted and retained the benefits conferred by Katerra Inc.

104.    The circumstances are such that it would be inequitable and unjust for Kibsgaard to retain the benefits conferred by Katerra Inc. without paying Plaintiffs the value thereof.

105.    As a result of the foregoing, Kibsgaard has been unjustly enriched at the expense of Katerra Inc.'s estate.

106.    Plaintiffs are entitled to the return of those amounts by which Kibsgaard was unjustly enriched through disgorgement or any other appropriate remedy.

**F.    ATTORNEYS' FEES**

107.    The Note provides that "[i]f any action is instituted to collect this Note, the Borrower [Kibsgaard] promises to pay all reasonable costs and expenses, including without limitation reasonable attorney's fees (collectively, "Costs") incurred by the Company [Katerra Inc.] in connection with such action."  As a result of Defendant Kibsgaard's failure to repay the Note, Katerra Inc. has been required to retain the undersigned counsel to institute and prosecute this action. Accordingly, Katerra Inc. pleads and requests that, as provided in the Note and/or pursuant to substantive state law, upon entry of a favorable judgment in this action, it be awarded (i) its reasonable and necessary attorneys' fees for prosecuting its claims for breach of contract through trial of this action; and (ii) its additional reasonable and necessary attorneys' fees for any subsequent appeals of such action to both the United States District Court for the Southern District of Texas, the United States Court of Appeals for the Fifth Circuit, and as to each stage of a petition

for certiorari and further appeal to the Supreme Court of the United States.  Katerra Inc. asks the Court to award it all of its recoverable reasonable and necessary attorneys' fees it establishes its entitlement to receive.

## G.      PREJUDGMENT AND POST-JUDGMENT INTEREST

108.    Katerra Inc. is entitled to and requests the Court award prejudgment interest on all amounts to which it lawfully applies, from the date of Katerra Inc.'s first written demand through the date of final judgment, at the lawful prejudgment interest rate, from Defendant Kibsgaard, as allowed by law.

109.    Katerra Inc. is also entitled to and requests the Court to award post-judgment interest on all amounts awarded, from the date of judgment, until the judgment is satisfied, at the lawful post-judgment interest rate, from Defendant Kibsgaard, as allowed by law.

## H.      PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court to enter a judgment against Defendant Kibsgaard:

(a)      determining Katerra Inc.'s Tax Reimbursement Transfer to Defendant Kibsgaard was a preferential transfer within the meaning of 11 U.S.C. § 547(b) and avoiding such transfer for the benefit of the Debtors' estate under 11 U.S.C. § 550(a);

(b)      determining the August 2020 Transactions by and between Katerra Inc. and Kibsgaard were actual fraudulent transfers and avoiding the Stock Repurchase transfer totaling $3.6 million, Loan Forgiveness transfer totaling $3,075,440.09, and Tax Reimbursement Transfer totaling $997,679.87 for the benefit of the Debtors' estate under 11 U.S.C. § 548(a)(1)(A), the Texas Fraudulent Transfer Act, and/or the California Voidable Transactions Act;

(c)     determining the August 2020 Transactions by and between Katerra Inc. and Kibsgaard were constructive fraudulent transfers and avoiding the Stock Repurchase transfer totaling $3.6 million, Loan Forgiveness transfer totaling $3,075,440.09, and Tax Reimbursement Transfer totaling $997,679.87 for the benefit of the Debtors' estate under 11 U.S.C. § 548(a)(1)(B), the Texas Fraudulent Transfer Act, and/or the California Voidable Transactions Act;

(d)     awarding Plaintiffs the amount or value of the avoided August 2020 Transactions together with accrued prejudgment interest and taxable costs pursuant to Bankruptcy Code section 550;

(e)     determining Katerra Inc.'s Retroactive Pay Adjustment transfer to Kibsgaard was a preferential transfer within the meaning of 11 U.S.C. § 547(b) and avoiding such transfer for the benefit of the Debtors' estate under 11 U.S.C. § 550(a);

(f)     awarding damages to Plaintiffs for Defendant Kibsgaard's material breach of the Note by failing to repay the indebtedness owed thereunder together with accrued prejudgment interests and taxable costs;

(g)     ordering Defendant Kibsgaard to turnover the actual amounts owed under the Note or the value thereof together with accrued prejudgment interest and taxable costs to the Plaintiffs; and

(h)     awarding any additional relief this Court deems is just and proper.

## I.      RESERVATION OF RIGHTS

Plaintiffs reserve the right to further amend this complaint, upon completion of their investigation and discovery, to assert any additional claims for relief against the Defendant as may be warranted under the circumstances allowed by law.

Dated: March 27, 2023

Respectfully submitted,

*/s/ Trey A. Monsour*
Trey A. Monsour, Esq. (Tex. Bar No. 14277200)
David G. Crooks, Esq. (Tex. Bar No. 24028168)
Adam T. Hamilton, Esq. (Tex. Bar No. 24087655)
Fox Rothschild LLP
Saint Ann Court
2501 North Harwood Street, Suite 1800
Dallas, TX  75201
Telephone:  (214) 231-5796
Facsimile:  (972) 404-0516
Mobile:  (713) 927-7469
E-mail: tmonsour@foxrothschild.com
E-mail: dcrooks@foxrothschild.com
E-mail: ahamilton@foxrothschild.com

-and-

Michael A. Sweet (admitted *pro hac vice*)
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:  (415) 364-5540
Facsimile:  (415) 391-4436
E-mail: msweet@foxrothschild.com

-and-

Gordon E. Gouveia (admitted *pro hac vice*)
321 North Clark Street, Suite 1600
Chicago, IL 60654
Telephone:  (312) 980-3816
Facsimile:  (312) 517-9201
E-mail: ggouveia@foxrothschild.com

-and-

Robert F. Elgidely (*pro hac vice* admission pending)
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131
Telephone: (305) 442-6543
Facsimile: (305) 442-6541
E-mail: relgidely@foxrothschild.com

*Counsel to the Plan Administrator*